TransUnion

September 11, 2025

**VIA ECF**

Hon. Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***Aliyah Silver v. Top Line Reporting Inc.***
Case No. 1:25-cv-04375-BMC
Supplement to Trans Union's PMC Letter

Dear Judge Cogan,

The undersigned is counsel for Defendant, Trans Union, LLC ("Trans Union"), in the above-referenced matter. Trans Union submits this letter in accordance with Your Honor's August 28, 2025 text order requesting a supplemental memorandum to its pre-motion conference letter to dismiss Plaintiff's First Amended Complaint.

In its original pre-motion conference letter,[1] Trans Union noted that Plaintiff must allege an inaccuracy in reporting that is objectively and readily verifiable. *See* Dkt. No. 6, at 2; *see also Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (clarifying the "objectively and readily verifiable" standard).

In response, Plaintiff elected not to engage with Trans Union's argument and instead filed an amended complaint. Dkt. No. 10; Dkt. No. 9. In Plaintiff's First Amended Complaint, she added six allegations regarding the dispute letter sent to Trans Union, and one allegation regarding a credit denial. Dkt. No. 9-1 (noting redlines to the original Complaint). Plaintiff did not change her theory of the case or do more than expand on her prior allegations.

Despite Plaintiff's attempts to salvage her claim, her amendment makes the alleged inaccuracy *less* objectively and readily verifiable. As such, Plaintiff's First Amended Complaint only bolsters Trans Union's argument and should be dismissed.

**The Court may review the dispute letter, as it is integral to and incorporated by reference in the Complaint**

[1] Per the Court's August 15, 2025, text order, that letter was deemed to constitute Trans Union's Motion to Dismiss, waiving the pre-motion conference requirement.

Courts may review documents on a Fed. R. Civ. P. 12(b)(6) motion when they are integral to the complaint or included by reference. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). For such a document to be "integral," a plaintiff must rely on the terms and effect of the document in drafting the complaint. *Id.*

In the instant matter, Plaintiff expressly relied on her December 5, 2024 dispute letter in drafting her First Amended Complaint. Dkt. No. 9-1. Plaintiff relies on this document to such an extent as to amend her complaint specifically to reference such, in hopes to avoid a motion to dismiss. *See* Dkt. No. 10.

As such, this document easily fits into the exception expressed above, and the Court may review the same in deciding the motion. Trans Union includes the dispute as **Exhibit A** herein and encloses with this supplemental letter.

**Plaintiff's alleged inaccuracy is not objectively and readily verifiable**

As a threshold matter in FCRA cases, Plaintiff must allege an inaccuracy in reporting that is objectively and readily verifiable to consumer reporting agencies. *Sessa v. Trans Union, LLC*, 74 F.4th, at 43.

Plaintiff admits that the dispute between herself and her landlord began when she broke her lease due to the landlord's alleged breach of the implicit warranty of habitability. Complaint, Dkt. No. 1, at ¶ 14; First Amended Complaint, Dkt. No. 9, at ¶ 14. After vacating the apartment, Plaintiff alleges that she told the landlord to use her security deposit to cover her last month's rent, as well as for further damages to the landlord under the lease. *Id.*, at ¶ 15, 22. This is explicitly not allowed, per the lease. Exhibit A, at 5 ("if You do not carry out all the agreements in this Lease, Owner may keep all or part of your security deposit…You cannot use your security deposit for last months rent."). Already, Plaintiff's view of the debt is at odds with both the lease and the landlord's apparent view of the debt or damages.

In her Complaint, Plaintiff alleges that she did not owe her landlord anything as of July 31, 2024. First Amended Complaint, Dkt. No. 9, at ¶ 17-18. However, in her dispute, Plaintiff apparently admits to making a payment on August 17, 2024 of $1,162.90 for monies that she owed at that time. Exhibit A, at 38. Both parties appear to have differing views of the damages caused by breach of the lease at different times, from the documents submitted in the dispute. *Id.*, at 31-39.

In further connection with the balance owed for damages for Plaintiff's breach of the lease, Plaintiff takes issue with a fee charged by the landlord, noting that it is not contained in the terms of the lease. First Amended Complaint, Dkt. No. 9, at ¶ 16-17, 27. However, per the lease, Plaintiff is responsible for all rent throughout the full term of the lease, until certain lease provisions are met. Exhibit A, at 9 ("In case of abandonment, your responsibility for rent will end only if Owner chooses to end this lease for default as provided in Article 17."). Further, Plaintiff owes the difference between the lease rent and the amount collected from the next tenant, if less, along with other fees. *Id.*, at 11.

Plaintiff alleges that the apartment was re-let on a specific date (Exhibit A, at 38), but does not allege whether the re-letting of the apartment was for more or less than required under her lease, or whether the same caused continuing damages per her breached lease. *Accord* First Amended Complaint, ¶ 15 *with* ¶ 18. The terms of the lease further contemplated multiple other fees and expenses that could be assessed after breach, including a catch-all fee provision. Exhibit A, at 13.

While there may be other inconsistencies between Plaintiff's story, the landlord's story, the lease terms, or any other fallout from either party's breach of the lease; the point is that from neither a quick glance, nor extensive review of the documents, can a consumer reporting agency easily determine which party is correct in the amount owed from the breach. Each of the above is independently enough to show that the inaccuracy alleged by Plaintiff in connection with her FCRA claims against Trans Union is not objectively and readily verifiable.

The FCRA does not, and is not intended to, require Trans Union to get to the bottom of the dispute between these two parties, or the damages resulting from a breach of the lease. This sentiment is evidenced by the doctrines advanced by *Mader* and *Sessa*, and those adopted in other Circuits. *See* Dkt. No. 6, at 2, n.1. In the instant matter the simple fact remains: Both parties appear to agree that a valid debt between the third parties exists or existed, and Plaintiff admits that Trans Union reinvestigated her dispute upon receipt. Dkt. No. 9, ¶¶ 28, 31. While it is hard to think of what more Trans Union may have done in this case, nothing more is required by the FCRA.

For the above reasons, and because the answers to the questions presented in this litigation are not objectively and readily verifiable, Plaintiff has not stated a claim for which relief may be granted, and her Complaint should be dismissed.

Respectfully,

Joshua Stiers, Esq.