EXHIBIT
A

Aliyah Silver
[redacted]

December 5, 2024

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19016-2000

Dear Sir or Madam:

My name is Aliyah Silver. My social security number is [redacted] My Date of Birth is [redacted] You are currently reporting an account from Top Line Reporting Inc as 60 days past due in the amount of $3,820. This is not accurate because at the time that this information was reported (on or before Aug 2, 2024) I was neither 60 days late for any payment, nor did I owe $3,820. I had paid all rent owed. This is my third attempt to dispute this false information.

The account being reported by TransUnion from Top Line Reporting Inc is in regard to a rental agreement with 101 Bruckner Realty LLC from when I was renting [redacted] 10454. Due to the apartment being uninhabitable due to a rodent infestation, unsanitary conditions and excessive noise, at the beginning of May, I left the apartment and immediately notified 101 Bruckner Realty LLC management, who ignored my e-mail. Per my lease, I was financially responsible for, *and only for*, rent at the apartment until a new tenant leased the apartment. I paid the month of May and told 101 Bruckner Realty LLC management to use my security deposit (equivalent to one month's rent) to cover the month of June and that if someone did not move in by the end of June I'd make the necessary payment. Per the enclosed ledger provided to me by Top Line Reporting Inc on August 22, 2024, it is evident that I have covered all owed rent on time while residing at [redacted] and that, as requested, 101 Bruckner Realty LLC applied my security deposit to cover the month of June. It is also evident that any balance that was reported as 60 days past due on or before Aug 2, 2024 was due to the $6,437.50 concession charge that was recorded on the ledger on May 29, 2024 – an amount I was not, and am not, contractually or legally obligated to pay.

Despite reporting this information to Top Line Reporting Inc on or before Aug 2, 2024, 101 Bruckner Realty LLC management knew that I did not owe this money. As evident from the enclosed e-mail from July 31, 2024 (on or about the same day the $3,820 false balance was reported to TransUnion via Top Line Reporting Inc), 101 Bruckner Realty LLC management sent me an e-mail claiming that I now had a balance of only $2,857.90 – a balance that they were unable explain upon request. While I also did not, and do not owe $2,857.90, this false amount is notably different from that false amount ($3,820) reported to TransUnion on or about the same day despite me having made no additional payments. This amount was also substantially lower than previous attempts to extract $8,790.90 from me on June 6, 2024 and $10,307.90 on July 3, 2024 – an implicit admission that I did not owe the concession money. As a reminder, this concession money, that I did not owe, is the only reason why I had any 60 days "overdue balance" reported on the ledger on or before Aug 2, 2024.

From publicly available information, I learned that [redacted] was re-rented in June (which 101 Bruckner Realty LLC denied). Due to 101 Bruckner Realty LLC management's lack of transparency and continued attempts to wrongfully extract money from me without explanation, I took the initiative to revisit [redacted] on the evening of August 16, 2024. Upon making direct contact with the current tenant of [redacted] ([redacted] Davis; [redacted]), I learned that her lease started on July 15, 2024. Per my lease, this would have ended my financial responsibility on July 14, 2024. 101 Bruckner Realty LLC never informed me of this and continued to wrongfully extract money from me. The false amount reported to TransUnion on or before Aug 2, 2024 was well after 101 Bruckner Realty LLC knew that I was not 60 days late for any payment as all rent was paid through June, I did not owe concessions and the end date of my financial

responsibility was already known. I informed 101 Bruckner Realty LLC management of this discovery on August 17, 2024, per the enclosed e-mail, effectively ending their wrongful attempts to extract money from me. I have not heard from them since. Notably, no additional reports have been made against my credit despite me not paying the money they have tried to extract from me – because I never owed that money.

In summary, in addition to the fact that I have covered all financial responsibility, the account that you are reporting is false and was part of an attempt by management to scare me into paying north of $10,000 that I never owed them as evident by the enclosed documentation and additional e-mails. I would also like to note that even though I did not, and do not, owe 101 Bruckner Realty LLC any money, for the amounts that they are claiming that I owed them I never received a bill or explanation and the enclosed ledger was provided to me only by Top Line Reporting Inc on August 22, 2024 as their "evidence" for why their report to TransUnion was accurate.

You are harming my reputation. Every time you continue to issue a credit report with this erroneous information on it you are telling people that I am someone who either refuses or is unable to pay my bills and should not be trusted to make future payments. I take that defamation to my character seriously and if you do not remove this charge or account from my report, I assure you I will pursue all legal remedies available to me to force you to comply with your obligations here and remove this charge from my reports.

I understand that the law requires you to not only inform Top Line Reporting Inc of my dispute, but to conduct your own separate reinvestigation of my dispute. Accordingly, even if Top Line Reporting Inc informs you these charges are accurate, I expect you to review the relevant documentation I am attaching with this letter and ask Top Line Reporting Inc why they are still saying I owe them money despite the evidence I have provided

I have enclosed the following documentation:

- A copy of my lease
- The ledger provided by Top Line Reporting Inc from 101 Bruckner Realty LLC on Aug, 22, 2024
- Implicit admission from 101 Bruckner Realty LLC that I did not owe concessions – e-mails showing they tried to wrongfully extract concession money from me on June 4, 2024 and July 3, 2024 but then the amount changed on July 31, 2024
- July 31, 2024 e-mail from 101 Bruckner Realty LLC property management / August 17, 2024 e-mail to 101 Bruckner Realty LLC property management

I have enclosed proof of identity (driver's license and most recent pay statement with my current address). If you need any further information or documentation from me to conduct your reinvestigation, please do not hesitate to reach out to me. You can call me at [redacted] or e-mail me at [redacted] I very much look forward to you removing this false information from my credit reports after reviewing all of the information I have provided here and truly appreciate your efforts to fix this problem.

Yours truly,

Aliyah Silver

## ADDITIONAL AGREEMENTS UPON SIGNING LEASE

DATED: 08/08/2023

LANDLORD: **101 Bruckner Realty LLC**

TENANT: **Aliyah Silver**

BUILDING: [redacted]

It is agreed and understood that the Tenant will be occupying and have full rights to the unit from 10/01/2023 through 12/15/2023 at no additional cost, provided the tenant fulfills all subsequent obligations under the lease.

X Aliyah Silver

X

X

X
**Property Manager**

AS

**101 Bruckner Realty LLC**
[redacted]

**"ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER THE RENT STABILIZATION LAW" (" LOS DERECHOS Y RESPONSABILIDADES DE INQUILINOS Y CASEROS ESTAN DISPONIBLE EN ESPANOL")**

**STANDARD FORM OF APARTMENT LEASE**

**PREAMBLE:** This lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all of its attached parts carefully. If you have any questions, or if you do not understand any words or statements, get clarification. Once you and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on **8/9/2023**
Between owner **101 Bruckner Realty LLC**
Whose address is [redacted]
And You, the Tenant **Aliyah Silver**

Whose address is [redacted]

**1. APARTMENT AND USE**

Owner agrees to lease to You [redacted] You shall use the Apartment for living purposes only. The apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with real property law 235-f

**2. LENGTH OF LEASE**

The term (that means the length) of this Lease is beginning on **9/11/2023** and ending on **4/30/2025** If you do not do everything you agree to do in this lease, owner may have the right to end it before the above date. If owner does not do everything that owner agrees to do in this lease, you may have the right to end the lease before ending date.

**3. RENT**

Your monthly rent for the Apartment is **$2,575.00** until adjusted pursuant to article 4 below. You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month' s rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when you sign this lease (1) the part of the rent from the beginning date of this Lease until the last day of the month and (2 ) the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

**4. RENT ADJUSTMENTS**

AS

If this lease is for a Rent Stabilized apartment, the rent herein shall be adjusted up or down during the lease term, including retroactively, to conform the rent guidelines. Where owner, upon application to the State Division of Housing and Community Renewal ("authorized agency") is found to be entitled to and increase in rent or other relief, you and owner agree: a. to be bound by such determination; b. were the authorized agency has granted an increase in rent, you shall pay such increase in the manner set forth by the authorized agency: c. except that in the event that an order is issued increasing the stabilization rent because of owner hardship, you may within thirty (30) days of your receipt of a copy of the order, cancel your lease on sixty (60) days written notice to owner. During said period you may continue in occupancy at not increase in rent.

**5. SECURITY DEPOSIT**

You are required to give Owner the sum of **$2,575.00,** when You Sign this lease as a security deposit, which is called in law a trust. Owner will deposit this security in the bank ___________. If the building contains six or more apartments, the bank account will earn interest. If you carry out all of your agreements in this lease, at the end of each calendar year owner or the bank will pay to owner 1% interest on the deposit for administrative costs and to you all other interest earned on the security deposit.

If you carry out all of your agreements in this lease and if you move out of the apartment and return it to owner in the same condition it was in when you first occupied, except ordinary wear and tear for damage caused by fire or other casualty, Owner will return to You the full amount of your security deposit to which You are entitled by mail only within 60 days after this Lease ends. However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit and any interest which has not yet been paid to You necessary to pay Owner for any losses incurred, including missed payments.

You cannot use your security deposit for last months rent. Last months rent needs to be paid in full. The Owner will refund you the security only after you move out and the apartment has been inspected and found to be in good condition. You are required to give a weeks notice prior to your move out date to gain access to your apartment for inspection and do the necessary repairs if needed. ALL tenants need to vacate apartment in order to get a refund on the security deposit. No security will be returned to any individual tenant until all the tenants named on the lease vacate the apartment .

If Owner sells or leases the building, Owner will turn over your security, with interest, either to You or to the person buying or leasing (lessee) the building within 5 days after the sale or lease. Owner will then notify you, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner or lessee will become responsible to You for the security deposit.

| AS | | |
|---|---|---|
| Initial | Initial | Initial |

initial here page 1

AS

**6. IF YOU ARE UNABLE TO MOVE IN**

A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages or expenses, and this Lease will remain in effect. However, in such case, this Lease will start on the date when You can move in. . You will not have to pay rent until the move-in date Owner gives You by written notice, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, You may tell Owner in writing, that Owner has 15 additional days to let You move in, or else the Lease will end. If Owner does not allow You to move in within those additional 15 days, then the Lease is ended. Any money paid by You on account of this Lease will then be refunded promptly by Owner.

**7. CAPTIONS**

In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

**8. WARRANTY OF HABITABILITY**

**A.** All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment and the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety. All basements are to be used as commercial space only. Basements can not be used for sleeping purposes.

**B.** You will do nothing to interfere or make more difficult Owner's efforts to provide You and all other occupants of the Building with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

**9. CARE OF YOUR APARTMENT-END OF LEASE-MOVING OUT**

**A.** You will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. If you have a backyard or a drain at the window you need to keep it clean from any garbage or litter.

If you choose not to renew your lease, You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty.

**B.** When this Lease ends (if you choose not to renew your lease), You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

**10. CHANGES AND ALTERATIONS TO APARTMENT**

You cannot build in, add to, change or alter, the Apartment in any way, including wallpapering, Painting, repainting, orother decorating, without getting Owner's written consent before You do anything. Without Owner's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by other tenants of the Building. Also, You cannot place in the Apartment water-filled furniture.

**11. YOUR DUTY TO OBEY AND COMPLY WITH LAWS, REGULATIONS AND LEASE RULES**

**A . Government Laws and Orders** you will obey and comply (1) with all present and future city, state and

AS

federal laws and regulations, including the rent stabilization law, which affect the Building or the Apartment, and (2) with all orders and regulations of Insurance Rating Organizations which affect the Apartment and the Building. You will not allow any windows in the Apartment to be cleaned from the outside, unless the equipment and safety devices required by law are used.

**B .Owner's Rules Affecting You**. You will obey all Owner's rules listed in this Lease and all future reasonable rules of Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building. Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law.

**C. Your Responsibility**. You are responsible for the behavior of yourself, of your immediate family, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, members of your immediate family, servants or people visiting You have not obeyed government laws and orders or the agreements or rules of this Lease.

**12. OBJECTIONABLE CONDUCT**

As a tenant in the Building, You will not engage in objectionable conduct. Objectionable conduct means behavior which makes or will make the Apartment or the Building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their Apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end this Lease.

No smoking in your apartment.

**13. SERVICE, FACILITIES ETC.**

**A . Required Services**. Owner will provide cold water and equipment only for heat and hot water as required by law, repairs the the apartment, as required by law, elevator service if the building has elevator equipment , and the utilities, if any, included in the rent, as set forth in sub-paragraph B. you are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

**B.** the following utilities are included in the rent ________.

**C. Electricity and other utilities.** if owner provides electricity or gas and the charge is included in the rent on page 1, or if you buy electricity or gas from owner for a separate (submetered) charge, your obligation are described in the rider attached to this lease. If electricity is not included in the rernt or is not charged separately by owner, You must arrange for the service of electricity and gas directly with the utility company. You must also pay directly for telephone service

**D. Appliances**. Appliances supplied by Owner in the Apartment are for your use. They will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse, You will pay Owner for the cost of such repair or replacement as additional rent. Storeroom Use. if owner permits you to use any storeroom, laundry or any other facility located in the building but outside of the apartment, the use of this storeroom or facility will be furnished to you free of charge and tat your own risk, except for loss suffered by you due to owner's negligence. you will operate at your expense any coin operated appliances located in such storerooms or laundries.

**E.** If the apartment is equipped with A/C it is the tenants responsibility to service the machine by changing the filter at least once every 2 months. It is not the Owners responsibility to repair the machines.

| AS | | |
|---|---|---|
| **Initial** | **Initial** | **Initial** |

initial here page 2

AS

**F**. If any part of the appliances breaks and we need to order a new part, it may take up to 7-10 business days to arrive.

**G**. If your apartment is equipped with blinds etc. management is not responsible in maintaining or fixing it if it breaks. It is the tenants responsibility to take care of blinds etc.

**H.** If the building is equipped with an elevator and it breaks down, If the elevator is fixed within a reasonable time period it does not warrant a rent reduction.

**14. INABILITY TO PROVIDE SERVICES**

Because of a strike, labor trouble, national emergency, repairs (If any part of the appliances breaks and we need to order a new part, it may take up to 7-10 business days to arrive), or any other cause beyond Owner's reasonable control, Owner may not be able to provide or may be delayed in providing any services or in making any repairs to the Building. In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

**5. ENTRY TO APARTMENT**

During reasonable hours and with reasonable notice, except in emergencies, Owner may enter the Apartment for the following reasons:

**(A)** To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs or changes Owner decides are necessary. Your rent will not be reduced because of any of this work, unless required by Law.

**(B)** To show the Apartment to persons who may wish to become owners or lessees of the entire Building or may be interested in lending money to Owner;

**(C)** For 60 days before the end of the Lease, to show the Apartment to persons who wish to rent it; Access must be provided 4 times a week for the last month of the lease.

**(D)** If during the last month of the Lease You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs, or redecorations. Your rent will not be reduced for that month and this Lease will not be ended by Owner's entry.

**(E)** If at any time You are not personally present to permit Owner or Owner's representative to enter the Apartment and entry is necessary or allowed by law or under this lease, Owner or Owner's representatives may nevertheless enter the Apartment. Owner may enter by force in an emergency. Owner will not be responsible to You.

**16. ASSIGNING; SUBLETTING; ABANDONMENT**

**(A)** Assigning and subletting. You cannot assign this Lease or sublet the Apartment without Owners advance written consent in each instance to a request made by You in the manner required by Real Property Law §226-b, and in accordance with the provisions of the rent stabilization code and law, relating to subletting. Owner may refuse to consent to a lease assignment for any reason or no reason, but if Owner unreasonably refuses to consent to request for a Lease assignment properly made, at your request in writing, Owner will end this Lease effective as of thirty days after your request. The first and every other time you wish to sublet the Apartment, You must get the written consent of Owner unless Owner unreasonably withholds consent following your request to sublet in the manner provided by Real Property Law §226-b. Owner may request a fee of $400 to assign the lease to a new name. Owner may impose a reasonable credit check fee on You in connection with an application to assign or sublet. If You fail to pay your rent Owner may collect rent from subtenant or occupant without releasing You from the Lease. Owner will credit the amount collected against the rent due from You. However, Owner's acceptance of such rent does not change the status of the subtenant or occupant to that of direct tenant of Owner and does not release You from this Lease.

**(B)** Abandonment If you move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended (except as provided by law following Owner's unreasonable refusal to consent to an assignment or subletting requested by You.) You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment, your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 17.

**17. DEFAULT**

**(1)** You default under the Lease if You act in any of the following ways:

**(a)** You fail to carry out any agreement or provision of this Lease;

**(b)** You or another occupant of the Apartment behaves in an objectionable manner;

**(c)** You do not take possession or move into the Apartment 15 days after the beginning of this Lease;

AS

**(d)** You and other legal occupants of the Apartment move out permanently before this Lease ends;
If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

**(2)** If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end six days after the date the second written notice is sent to You. At the end of the 6-day period, this Lease will end and You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease, the value of your occupancy, after the Lease ends, and damages caused to Owner after that time as stated in Article18

**(3)** If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within three days after a statutory written demand for rent has been made, or if the Lease ends, Owner may do the following: (a) enter the apartment and retake possession of it if You have moved out or (b) go to court and ask that You and all other occupants in the Apartment be compelled to move out. Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate or renew the Lease.

**18. REMEDIES OF OWNER AND YOUR LIABILITY**

If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner.

**(a)** You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls use and occupancy until You actually move out.

**(b)** Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new tenant at a lesser rent or may charge a higher rent than the rent in this Lease.

**(c)** Whether the Apartment is re-rented or not, You must pay to Owner as damages:

**(1)** the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease or leases of the Apartment for what would have been the remaining period of this Lease; and

**(2)** Owner's expenses for advertisements, broker's fees and the cost of putting the Apartment in good condition for re-rental; and

**(3)** Owner's expenses for attorney's fees.

**(d)** You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Owner's right to collect the damages for a later month by a similar action.
If the rent collected by Owner from a subsequent tenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You
cannot receive the difference. Owner's failure to re-rent to another tenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

**(e)** you are required to give at least 60 days prior to lease end written notice to landlord that you do not wish to renew this lease. Should you fail to provide the landlord with such written notice, You will be liable to the owner for damages including, but not limited to, lost rent, additional advertising costs and legal fess which the owner may sue to recover.

| AS | | |
|---|---|---|
| Initial | Initial | Initial |

initial here page 3

AS

**19. ADDITIONAL OWNER REMEDIES**

If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You have agreed to do, Owner has the right to ask a Court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 16 and 17 of this lease.

**20. FEES AND EXPENSES**

**A** .Owner Right. You must reimburse Owner for any of the following fees and expenses incurred by Owner

**(1)** Making any repairs to the Apartment or the Building which result from misuse or negligence by You or persons who live with You, visit You, or work for You;

**(2)** Repairing or replacing property damaged by Your misuse or negligence;

**(3)** Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organizations concerning the Apartment or the Building which You or persons who live with You, visit You, or work for You have caused;

**(4)** Preparing the Apartment for the next tenant if You move out of your Apartment before the Lease ending date;

**(5)** Any legal fees and disbursements for legal actions or proceedings brought by Owner of a Lease default by You or for defending lawsuits brought against Owner because of your actions;

**(6)** Removing all of your property after this Lease is ended;

**(7)** All other fees and expenses incurred by Owner because of your failure to obey any other provisions and
agreements of this Lease;

These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages.

**21. PROPERTY LOSS, DAMAGES OR INCONVENIENCES**

, Owner or Owner's agents and employees are not responsible to repay You for any of the following

**(1)** any loss of or damage to You or your property in the Apartment or the Building due to any accidental or intentional cause, like a flood, fire even a theft or another crime committed in the Apartment or elsewhere in the Building;

**(2)** any loss of or damage to your property delivered to any employee of the Building (i.e., doorman, superintendent, etc.,); or

**(3)** any damage or inconvenience caused to You by actions, negligence or violations of a Lease by any other tenant or person in the Building except to the extent required by law.

Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or on behalf of Owner. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner. Also, Owner will not be liable to You for such interference caused by the permanent closing, darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease.

Tenants are required to get renters insurance to have all damages covered.

**22.FIRE OR CASUALTY**

**A**. If the apartment becomes unusable, in part or totally, because of fire, accident other casualty, this lease will continue unless ended by owner under C below or by you under D below. but the rent will be reduced immediately. this reductions will be based upon the part of the apartment which is unusable.

**B.** owner will repair and restore the apartment, unless owner decides to take actions described in paragraph c below.

**C.** After a fire, accident or other casualty in the Building, Owner may decide to tear down the Building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease. Owner may do this even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is usable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

AS

**D.** If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in 30 days, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will refund your security deposit and the pro-rata portion of rents paid for the month in which the casualty happened.

**E.** Unless prohibited by the applicable insurance policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each applicable policy by way of subrogation.

**23. PUBLIC TAKING**

The entire building or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title and You shall have no claim against Owner for any damage resulting; You also agree that by signing this Lease, You assign to Owner any claim against the Government or Government agency for the value of the unexpired portion of this Lease.

You also agree to sign (if accurate) a written acknowledgment to any third party designated by owner that this lease is in effect, that owner is performing owners obligation under this lease and that you have not present claim against owner.

**24.SUBORDINATION CERTIFICATE AND ACKNOWLEDGMENT**

All leases and mortgages of the Building or of the land on which the Building is located, now in effect or made after this Lease is signed, come ahead of this Lease. In other words, this Lease is subject and subordinate to any existing or future lease or mortgage on the Building or land , including any renewals, consolidations modifications and replacements of these leases or mortgages. If certain provisions of any of these leases or mortgages come into effect, the holder of such lease or mortgage can end this lease. if this happens , you agree that You have no claim against Owner or such leases or mortgage holder. If Owner request, You will sign promptly an acknowledgment of the subordination in the form that Owner requires.

You also agree to sign if accurate a written acknowledgment to any third party designated by Owner that this Lease is in effect, that Owner is performing Owner's obligations under this Lease and that you have no present claim against Owner.

**25. TENANTS RIGHT TO LIVE IN AND USE THE APARTMENT**

If You pay the rent and any required additional rent on time and You do everything You have agreed to do in this Lease, your tenancy cannot be cut off before the ending date, except as provided for in Article 22, 23, and 24.

| AS | | |
|---|---|---|
| **Initial** | **Initial** | **Initial** |

initial here page 4

AS

**26. BILLS AND NOTICE**

**A.** Notices to You. Any notice from Owner or Owner's agent or attorney will be considered properly given to You if it (1) is in writing; (2) is signed by or in the name of Owner or Owner's agent; and (3) is addressed to You at the Apartment and delivered to You personally or sent by registered or certified mail to You at the Apartment. The date of service of any written notice by Owner to you under this agreement is the date of delivery or mailing of such notice.

**B** . Notices to Owner. If You wish to give a notice to Owner, you must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or at another address of which Owner or Agent has given You written notice.

**27.GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM**

**A.** Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counterclaim on any matters concerning this Lease, the relationship of You and Owner as Tenant and Landlord or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

**B.** If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Building.

**28. NO WAIVER OF LEASE PROVISIONS**

A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease, the failure of Owner to take action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You again do not do what You have agreed to do.

B. Only a written agreement between You and Owner can waive any violation of this Lease.

C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or a part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due.

D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by any employee, or agent, or Owner, this Lease is not ended.

**29.CONDITION OF THE APARTMENT**

When You signed this Lease, You did not rely on anything said by Owner, Owner's agent or superintendent about the physical condition of the Apartment, the Building or the land on which it is built. You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner or found in Owner's floor plans or brochure shown to You before You signed the Lease. Before signing this Lease, You have inspected the apartment and You accept it in its present condition . You agree that Owner has not promised to do any work in the Apartment except as specified in attached rider. You further agree that the apartment was in good condition (no holes etc) and the rooms are painted in dover white.

**30.DEFINITIONS**

A. Owner: The term means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner includes the owner of the
land or Building, a lessor, or sublessor of the land or Building and a mortgagee in possession. It does not include a former owner, even if the former owner signed this Lease.

B. You: The Term means the person or persons signing this Lease as Tenant and the successors and assigns of the signer. This Lease has established a tenant-landlord relationship between You and Owner.

**31. SUCCESSOR INTERESTS**

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest

AS

of Owner or You by law, by approved assignment or by transfer.
Owners Rules - a part of this lease - see page 6

**32. LATE CHARGE**
It is agreed that due to administrative inconvenience and costs incurred due to late payment of rent that, Tenants agree to pay late fee of $50 if 5 days late, or 5% of the monthly rent, whichever is less.

It is further agreed, that although, Landlord is accepting late fees the Landlord is not stopped from commencing any action or proceeding with regard to Tenant's failure to pay rent timely. This paragraph is not a waiver of the Landlord's right to collect or demand rent when it is due.

**33. COMMON AREAS**
Renter shall not store baby carriages, bicycles, shoes, rugs or any other property in or on fire escapes, roofs, sidewalks, entrances, driveways, elevators stairways, halls or any other public areas. Tenant understands that any items left in public areas can be discarded by management without notice. Public areas ways shall be used only for entering and leaving the apartment and the building.

**34. CONSTRUCTION/CONVENIENCE**
Neighboring building may be the subject of construction, renovation or demolition. Owner will not be liable to renter nor shall renter seek to hold owner liable for interference with views, light, air flow or ventilation the covenant of quiet enjoyment or breach or the warranty of habitability, whether such interference is temporary or permanent, if such interference results from activities conducted on adjoining properties.

**35. DISHONORED CHECK FEE**
If you pay your rent by check and your check is dishonored or not paid by the bank on which the check was drawn for any reason, you will be responsible to pay the Landlord a 'Dishonored Check Fee' of $35.00 This fee is additional rent and may be the subject of a non-payment summary proceeding.

| AS | | |
|---|---|---|
| Initial | Initial | Initial |

initial here page 5

AS

**36. NO PETS**

Dogs, cats or other animals shall not be harbored in the apartment. Failure to comply with this legal provision is sufficient reason for termination of the tenancy and lease.

**37. AirBNB**

Prospective tenant understands that it is illegal for a tenant to rent out this unit for temporary stays, less than 30 days, on Air BNB or other websites. This apartment is for my personal use only and will not to be re-rented for short term stays to others during my tenancy.

**38. OUTDOOR SPACES**

The apartment may have a terrace, balcony or backyard. The terms of this lease apply to the terrace or balcony as if the terrace, balcony or backyard are part of the apartment. Renter must keep all outdoor spaces in good repair and clean and free from snow, ice, leaves and garbage. No cooking is allowed in the terrace of balcony. Renter may not keep plants, install a fence, make any addition to any outdoor space or use it as storage without prior permission from management. Fire escapes are emergency exits and shall only be used in case of emergency.

**39. GYM Waiver (if there is a gym in your building)**

Because physical exercise can be strenuous and subject to risk of serious injury, we urge you to obtain a physical examination from a doctor before using any exercise equipment. You agree that by our physical exercise machines, you do so entirely at your own risk. You agree that you are voluntarily participating in these activities and use of these facilities and premises and assume all risks of injury, illness, or death. We are not held liable for any improper use of exercise machines or equipment that may result in injury or death. We are also not responsible for any loss of your personal property. You acknowledge that you have carefully read this "waiver and release" and fully understand that it is a release of liability. You expressly agree to release and discharge management or the building from any and all claims or causes of action and you agree to voluntarily give up or waive any right that you may otherwise have to bring a legal action against management or the building for personal injury or property damage. If any portion of this release from liability shall be deemed by a Court of competent jurisdiction to be invalid, then the remainder of this release from liability shall remain in full force and effect and the offending provision or provisions severed here from. By using the gym you accept the terms and conditions contained in this release. You acknowledge that you understand and agree to its content and that this release cannot be modified orally.

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

IF THE LEASE IS SIGNED BY MORE THEN ONE TENANT EACH AND EVERY ONE SHALL BE JOINTLY AND INDIVIDUALLY RESPONSIBLE FOR THIS AGREEMENT.

**X** ______________________________

**Landlord**

**101 Bruckner Realty LLC**

THIS IS A LEGAL DOCUMENT. BE SURE YOU UNDERSTAND IT BEFORE SIGNING.

X Aliyah Silver

X ____________________

X ____________________

GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Tenant of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Tenant so that Owner may sue Guarantor directly without first suing Tenant. The Guarantor further agrees that his guaranty shall remain in full effect even if the Lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any action, proceeding or counterclaim brought against the other on any matters
Concerning the attached Lease or the Guaranty.

Dated, New York City__________________

____________________________Witness
__________________Guarantor

__________________Address

AS


Doc ID: a5f229f03a3a4d37dbfc244d728cab755607ae8b

**101 Bruckner Realty LLC**
[redacted]

SMOKE/CARBON MONOXIDE DETECTOR

THIS FORM MUST BE RETURNED TO THE LANDLORD AS SOON AS POSSIBLE

YOU ARE REQUIRED BY LAW to have a smoke detector installed in your apartment. It's a violation of the law to refuse, interfere with the installation, or remove smoke detectors.

CHECK WHICHEVER APPLY:

_X___A SMOKE/CARBON MONOXIDE DETECTOR IS INSTALLED IN MY APARTMENT.

____ A SMOKE/CARBON MONOXIDE DETECTOR IS NOT INSTALLED IN MY APARTMENT.

____ THE SMOKE/CARBON MONOXIDE DETECTOR IS IN NEED OF MAINTENANCE OR REPAIR.

____ THE SMOKE/CARBON MONOXIDE DETECTOR IS IN GOOD WORKING ORDER AND IS NOT IN NEED OF MAINTENANCE OR REPAIR.

Note: The Landlord has the right to charge for the installation of a smoke detector.

Tenant is responsible for inspecting the smoke/carbon monoxide detector installed in the apartment and notifying the management when it is not operating properly.

X Aliyah Silver ____________________

X ____________________

X ____________________

OCCUPANT: KEEP FOR YOUR RECORDS
OWNER COPY/OCCUPANT COPY

AS


Doc ID: a5f229f03a3a4d37dbfc244d728ca5755607ae8b

**101 Bruckner Realty LLC**

[redacted]

N.Y.C DEPARTMENT OF HEALTH
NOTICE TO TENANT OR OCCUPANT

WINDOW GUARDS REQUIRED

YOU ARE REQUIRED BY LAW to have window guards installed in all windows if a child 10 years or younger lives in your apartment.

YOUR LANDLORD IS REQUIRED BY LAW to install window guards in your apartment:
* If a child 10 years of age or younger lives in your apartment.
OR
* If you ask him to install window guards at any time (you need not give a reason).

IT IS A VIOLATION OF THE LAW to refuse, interfere with the installation, or remove window guards where required, or FAIL TO COMPLETE AND RETURN THIS FORM TO YOUR LANDLORD. If this form is not returned promptly, an inspection by the landlord will follow.
(Except windows giving access to fire escapes or a window on the first floor that is a required means of egress from the dwelling unit.)

CHECK ONE:

______ CHILDREN 10 YEARS OF AGE OR YOUNGER LIVE IN MY APARTMENT

______ NO CHILDREN 10 YEARS OF AGE OR YOUNGER LIVE IN MY APARTMENT

______ I WANT WINDOW GUARDS EVEN THOUGH I HAVE NO CHILDREN 10 YEARS OF AGE OR YOUNGER

CHECK WHICHEVER APPLY:

______ WINDOW GUARDS ARE INSTALLED IN ALL WINDOWS

______X WINDOW GUARDS ARE NOT INSTALLED IN ALL WINDOWS

______ WINDOW GUARDS NEED MAINTENANCE/REPAIR

______ WINDOW GUARDS DO NOT NEED MAINTENANCE OR REPAIR

X Aliyah Silver ______________________

X ______________________

X ______________________

For Further Information Call:
Window Falls Prevention (212) 334-7771/7773

AS



Doc ID: a5f229f03a3a4d37dbfc244d728cab755607ae8b

# STOVETOP KNOB COVER NOTICE

If you have a child under six (6) years of age residing in your apartment, and if you have a gas powered stove, you are entitled to have stove knob covers for each knob located on the front of each stove; or, if you ask for the installation of stove top knob covers. Please check one option:

_______ Children younger than six ( 6) years of age live in my apartment.

_______ I want stovetop knob covers.

_______ I do not want stovetop knob covers.

__X____ No children under the age of six (6) live in my apartment.

______ I want stovetop knob covers even though I have no children under the age of six (6) living in my apartment.

X Aliyah Silver

X ____________________

X ____________________

AS

**NOTICE TO TENANT**
**DISCLOSURE OF BEDBUG INFESTATION HISTORY**

Pursuant to the NYC Housing Maintenance Code, an owner/managing agent of residential rental property shall furnish to each tenant signing a vacancy lease a notice that sets forth the property's bedbug infestation history.

Name of tenant(s): **Aliyah Silver**

Subject Premises: [redacted]

**BEDBUG INFESTATION HISTORY**
(Only boxes checked apply)

__X__ There is no history of any bedbug infestation within the past year in the building or in any apartment.

____ During the past year the building had a bedbug infestation history that has been the subject of eradication measures. The location of the infestation was on the__________floor(s).

____ During the past year the building had a bedbug infestation history on the_________floor(s) and it has not been the subject of eradication measures.

____ During the past year the apartment had a bedbug infestation history and eradication measures were employed.

____ During the past year the apartment had a bedbug infestation history and eradication measures were not employed.

____ Other:_______________________________________________

X Aliyah Silver ____________________

X ____________________

X ____________________

X ____________________
Landlord

DBB-N (DHCR 10/10)

AS

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

(i) ______ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

______________________________________________________________________

______________________________________________________________________

(ii) _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (check (i) or (ii) below):

(i) ______ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

______________________________________________________________________

______________________________________________________________________

(ii) _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment** (initial)

(c) ________ Lessee has received copies of all information listed above.

(d) ________ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment** (initial)

(e) ________ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

X ______________________

Landlord

X Aliyah Silver

X ______________________

X ______________________

AS

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | [redacted] Lease - Aliyah Silver |
| **File name** | [redacted] Free Months.pdf and 1 other |
| **Document ID** | a5f229f03a3a4d37dbfc244d728cab755607ae8b |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | • Signed |

**This document was requested from embedded.hellosign.com**

## Document history

| | | |
|---|---|---|
| SENT | **08 / 09 / 2023** 19:18:10 UTC | Sent for signature to Aliyah Silver [redacted] from [redacted] IP: [redacted] |
| VIEWED | **08 / 09 / 2023** 19:52:15 UTC | Viewed by Aliyah Silver ([redacted]) IP: [redacted] |
| SIGNED | **08 / 09 / 2023** 20:44:48 UTC | Signed by Aliyah Silver ([redacted]) IP: [redacted] |
| COMPLETED | **08 / 09 / 2023** 20:44:48 UTC | The document has been completed. |

# Transactions

Date Range: All

| Tenant | Account | Property | Unit | Active Start | Active End |
|---|---|---|---|---|---|
| Aliyah Silver | [redacted] | 101 Bruckner Realty LLC | [redacted] | 9/11/2023 | 7/31/2024 |

| Date | Reference | Description | Comment | Amount | Balance |
|---|---|---|---|---|---|
| 08/08/23 | | Security Deposits | | 2,575.00 | 2,575.00 |
| 08/17/23 | eft | Payment Received | [redacted] | -5,150.00 | -2,575.00 |
| 09/01/23 | | Rent Charge | | 1,716.60 | -858.40 |
| 10/01/23 | [redacted] | Rent Charge | [redacted] | 2,575.00 | 1,716.60 |
| 10/01/23 | | Move In Special Credit | | -2,575.00 | -858.40 |
| 11/01/23 | [redacted] | Rent Charge | [redacted] | 2,575.00 | 1,716.60 |
| 11/01/23 | | Move In Special Credit | | -2,575.00 | -858.40 |
| 11/30/23 | T090104 | Payment Received | [redacted] Aliyah Silver [redacted] | -470.70 | -1,329.10 |
| 12/01/23 | | Rent Charge | | 2,575.00 | 1,245.90 |
| 12/01/23 | [redacted] | Move In Special Credit | [redacted] | -1,287.50 | -41.60 |
| 01/01/24 | | Rent Charge | | 2,575.00 | 2,533.40 |
| 01/01/24 | T091654 | Payment Received | [redacted] Aliyah Silver [redacted] | -2,575.00 | -41.60 |
| 02/01/24 | | Rent Charge | | 2,575.00 | 2,533.40 |
| 02/01/24 | T092958 | Payment Received | [redacted] Aliyah Silver [redacted] | -2,575.00 | -41.60 |
| 03/01/24 | | Rent Charge | | 2,575.00 | 2,533.40 |
| 03/02/24 | T094187 | Payment Received | [redacted] Aliyah Silver [redacted] | -2,575.00 | -41.60 |
| 04/01/24 | | Rent Charge | | 2,575.00 | 2,533.40 |
| 04/01/24 | T095508 | Payment Received | [redacted] Aliyah Silver [redacted] | -2,575.00 | -41.60 |
| 05/01/24 | | Rent Charge | | 2,575.00 | 2,533.40 |
| 05/01/24 | T096812 | Payment Received | [redacted] Aliyah Silver [redacted] | -2,575.00 | -41.60 |
| 05/29/24 | | Rent Charge | Consession Charge | 6,437.50 | 6,395.90 |
| 06/01/24 | [redacted] | Rent Charge | [redacted] | 2,575.00 | 8,970.90 |
| 06/10/24 | | Late Charge | | 50.00 | 9,020.90 |
| 06/19/24 | [redacted] | Security Deposits | [redacted] | -2,575.00 | 6,445.90 |
| 07/01/24 | | Rent Charge | | 1,287.00 | 7,732.90 |
| 07/01/24 | [redacted] | Rent Charge | [redacted] | 2,575.00 | 10,307.90 |
| 07/10/24 | | Late Charge | | 50.00 | 10,357.90 |

DR 12/12/2024 (00MB69) 268.185133 07078268

# 101 Bruckner Realty LLC

[redacted]

6/4/2024

Dear Tenant,

This is just a friendly reminder that there is still an outstanding balance of $8,970.90 for apartment [redacted] Please submit payment online at www.jcsrealtyny.com

If your payment is en route, please disregard this notice; however, if payment has been overlooked, we understand that can sometimes happen and appreciate your immediate attention to this matter

Thank You

The Management

# 101 Bruckner Realty LLC

[redacted]

7/3/2024

Dear Tenant,

This is just a friendly reminder that there is still an outstanding balance of $10,307.90 for apartment #[redacted]. Please submit payment online at www.jcsrealtyny.com

If your payment is en route, please disregard this notice; however, if payment has been overlooked, we understand that can sometimes happen and appreciate your immediate attention to this matter

Thank You

The Management

Gmail Aliyah Silver <aliyahbsilver@gmail.com>

## [redacted] account balance

**Joseph Klein** [redacted] Wed, Jul 31, 2024 at 3:03 PM
To: Aliyah Silve[redacted]

HI

You still have a balance of 2,857.90 Plz let us know when you plan to pay it

**Joseph Klein**
**Property Manager, JCS Realty Group**
[redacted]

Gmail Aliyah Silver <aliyahbsilver@gmail.com>

# [redacted]account balance

**Joseph Klein** [redacted] Wed, Jul 31, 2024 at 3:03 PM
To: Aliyah Silve[redacted]

HI

You still have a balance of 2,857.90 Plz let us know when you plan to pay it

JCS REALTY

**Joseph Klein**
**Property Manager, JCS Realty Group**
[redacted]

**Aliyah Silver** [redacted] Thu, Aug 15, 2024 at 11:37 AM
To: Joseph Klei[redacted]

Hi Joseph, what is this balance for?

**Aliyah Silver** [redacted] Sat, Aug 17, 2024 at 11:31 AM
Cc: Kevin C <[redacted]

Hi Joseph,

I spoke with [redacted] She assumed financial responsibility for [redacted] on July 15th, when her lease started. My rent is paid through the end of June. I have therefore made my final payment to JCS today equal to the prorated rent for July 1 - July 14 ($1,162.90).

Best,

**Aliyah Silver** [redacted] Sat, Aug 17, 2024 at 11:32 AM
To: Joseph Kle[redacted]

**Kevin C** [redacted] Mon, Aug 19, 2024 at 9:36 AM
To: Aliyah Silver [redacted]
Cc: Esther Fisch[redacted]Joseph Klein [redacted]

Hi Aliyah,

Good morning,

I'll look into it.

On Sat, Aug 17, 2024 at 11:31 AM Aliyah Silver [redacted] wrote:
Hi Joseph,

I spoke with [redacted]. She assumed financial responsibility for [redacted] on July 15th, when her lease started. My rent is paid through the end of June. I have therefore made my final payment to JCS today equal to the prorated rent for July 1 - July 14 ($1,162.90).

Best,
Aliyah

On Thu, Aug 15, 2024 at 11:37 AM Aliyah Silver [redacted] wrote:
Hi Joseph, what is this balance for?

On Wed, Jul 31, 2024 at 3:03 PM Joseph Klein [redacted] wrote:

HI

You still have a balance of 2,857.90 Plz let us know when you plan to pay it

JCS REALTY

**Joseph Klein**
**Property Manager, JCS Realty Group**
[redacted]

--

Thanks,

JCS REALTY

**Kevin C.**
**Property Manager**
[redacted]

[redacted]

[redacted]

Aliyah Silver
[redacted]

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®
9589 0710 5270 1443 0266 30

Retail
U.S. POSTAGE PAID
FCM LG ENV
NEW YORK, NY 10020
DEC 05, 2024
19016
$7.72
RDC 99
S2324E502113-23

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19016-2000