**MALLON CONSUMER LAW GROUP, PLLC**
ATTORNEYS AT LAW
One Liberty Plaza
Suite 2301
New York NY 10006
(917) 734-6815
kmallon@consumerprotectionfirm.com

September 26, 2025

**VIA ECF**
Honorable Brian M. Cogan
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *Silver v. Top Line Reporting Inc., et al.* EDNY 1:25-cv-04375**

Dear Judge Cogan:

The undersigned is counsel for Plaintiff Aliyah Silver in the above-referenced matter. Plaintiff submits this letter in opposition to Defendant Trans Union, LLC's ("Trans Union") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Trans Union seeks dismissal by mischaracterizing Plaintiff's claims as a "legal dispute" over lease damages. But Plaintiff does not ask this Court to resolve a complicated landlord–tenant dispute. Rather, she alleges that Trans Union published a tradeline that was facially false, internally inconsistent, and unsupported by any record. She further alleges that despite receiving detailed documentation in her dispute, Trans Union conducted no meaningful reinvestigation, instead parroting Top Line's unverifiable response. These allegations state a plausible claim under both the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, and New York's FCRA, N.Y. GBL § 380-f.

## I. Plaintiff Has Alleged an Objectively and Readily Verifiable Inaccuracy

The Second Circuit has held that a consumer must allege an inaccuracy that is "objectively and readily verifiable." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023). But contrary to Trans Union's argument, this case involves factual inaccuracies, not legal interpretation.

- Trans Union reported that Plaintiff owed **$3,820**. FAC ¶ 20. Yet her landlord's July 31, 2024 email claimed she owed **$2,857**, and Top Line's own ledger reflected **$10,307**. FAC ¶¶ 23–26. No document ever supported the $3,820 figure.
- The tradeline also reported Plaintiff was "60 days past due" while simultaneously stating that Top Line had "no information" on payments from July through November 2024. FAC ¶ 32.

These contradictions are "objectively and readily verifiable" inaccuracies. See *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 93 (2d Cir. 2021) (tradeline internally inconsistent is actionable); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) (reporting amounts unsupported by records is a factual inaccuracy).

II. Plaintiff Has Adequately Pled an Unreasonable Reinvestigation

Under the FCRA, a consumer reporting agency ("CRA") like Trans Union must conduct a reasonable reinvestigation of disputed information, 15 U.S.C. § 1681i(a), and ensure the "maximum possible accuracy" of consumer reports, id. § 1681e(b). To state a claim, a plaintiff must allege an inaccuracy that is "objectively and readily verifiable." *Sessa v. Trans Union, LLC,* 74 F.4th 38, 43 (2d Cir. 2023). Critically, there is "no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." Id. at 40. Instead, the focus is on verifiability: CRAs must address inaccuracies that are "straightforward" and do not require "adjudicat[ing] intricate issues, legal or otherwise." *Kamrul Hossain v. Portfolio Recovery Assocs., LLC,* 693 F. Supp. 3d 358, 363 (E.D.N.Y. 2023); see also *Goldenberg v. TransUnion, LLC,* No. 1:23-cv-09514 (E.D.N.Y. Aug. 1, 2025) (denying judgment on pleadings where alleged inaccuracy in reporting forgiven charge was "objectively and readily verifiable" without legal adjudication).

Here, the Complaint alleges verifiable inaccuracies that Trans Union failed to reasonably investigate. First, the reported debt is factually baseless. Plaintiff alleges she paid all rent owed, including for May 2024, and instructed her landlord (101 Bruckner) to apply her security deposit to June, agreeing to cover July only if needed. Compl. ¶¶ 13, 15, 18. The landlord then claimed a $6,437 "concession charge" absent from the lease, later contradicted by a July 31, 2024 email stating only $2,857 owed (with no mention of the concession). Id. ¶¶ 16-17. Top Line Reporting Inc. ("Top Line") reported $3,820 owed and 60 days late without sending Plaintiff a bill or itemization. Id. ¶ 20.

These are verifiable facts: Trans Union could review the lease (no concession mentioned), landlord emails (conflicting amounts and inability to explain basis for the alleged debt), and payment records (showing full payment). See *Goldenberg*, slip op. at 12-13 (denying dismissal where reporting of forgiven charge was verifiable by checking account status, rejecting "legal" label as unpersuasive under Sessa). Asking Trans Union to review the lease agreement to confirm that it did not contain any mention of a "concession fee" is similar to *Sessa's* requirement that Trans Union review a vehicle lease agreement for evidence of a balloon payment.

Second, the tradeline itself is patently inaccurate and self-contradictory. It reports the account as 60 days past due in December 2024, but states Top Line had no knowledge of payments from July to November 2024. Compl. ¶ 26. If payments for those months are unknown, Top Line could not verify delinquency—a straightforward inconsistency Trans Union could resolve without adjudication. The FCRA specifically provides that if the consumer reporting agency is unable to verify the accuracy of disputed information it must modify or delete that information. 15 USC § 1681i(a)(5)(A)(i). This is not a complex legal dispute like bankruptcy discharge in *Mader*; it is an internal reporting error.

Third, Trans Union *admitted* it failed to conduct any reasonable reinvestigation. Plaintiff disputed the information in writing on December 5, 2024, with supporting documentation (lease, emails, payments). Compl. ¶ 21. Trans Union forwarded it to Top Line but "parroted" Top Line's verification without independent review. Id. ¶¶ 22-24. On December 23, 2024, a Trans Union representative admitted during a call that Trans Union performed "no type of investigation" and merely reported what Top Line said. Id. ¶ 28. Trans Union then refused further investigation. Id. ¶ 29. These allegations plausibly violate §§ 1681i(a)(1), (4), and (5) (failure to reinvestigate, review relevant information, and delete unverified data). Trans Union's admission alone raises an inference of negligence or willfulness, distinguishing this from cases where CRAs reasonably relied on furnishers. Trans Union's portrayal of this as a "breach of warranty of habitability" dispute ignores these verifiable elements. Plaintiff vacated due to rodents, but the core inaccuracies stem from unsupported charges and contradictory reporting—not an unresolved legal battle requiring judicial intervention. Dismissing here would contradict *Sessa's r*ejection of rigid factual/legal distinctions.

Fourth, Plaintiff submitted evidence to Trans Union that her landlord implicitly admitted that she did not owe a $6,000 "concession charge" when they emailed her on July 31, 2024 stating that she owed $2,857.90. When Plaintiff explained in that she did not owe anything and asked what the $2,857 charge was for Plaintiff's landlord was not able to provide an explanation for the charge, and instead responded that they would "look into it" on August 19, 2024. Accordingly, Plaintiff provided Trans Union with proof that **even her landlord did not know why it was seeking additional money from Plaintiff**. At the very minimum a jury could reasonably find that a "reasonable" investigation under the FCRA would have required Trans Union to follow up with Plaintiff's' landlord to see if they were still seeking to collect $3,820 from Plaintiff and if so, what was the basis for that amount. "Generally, the question of reasonableness in FCRA cases presents a fact question for the jury." *Rubin v. HSBC Bank,* 717 F.Supp.3d 266, 271 (E.D.N.Y. 2024) (citations omitted). Alternatively, if Trans Union did not wish to go through the "trouble" of contacting Plaintiffs' landlord (or taking any steps beyond sending an automated dispute form to Top Line), then it could simply have deleted the unverifiable information as required under the FCRA.

For these reasons, Trans Union's proposed motion fails, and Plaintiff respectfully requests denial of the motion in its entirety.

Respectfully submitted,

________________________
Kevin Mallon
Mallon Consumer Law Group, PLLC
One Liberty Plaza, Suite 2301
New York, NY 10006
(646) 713-1008
kmallon@consumerprotectionfirm.com
*Counsel for Plaintiff Aliyah Silver*