```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  ALIYAH SILVER,                                            :
                                                            :
                           Plaintiff,                       :    MEMORANDUM DECISION AND
                                                            :    ORDER
                  - against -                               :
                                                            :    25-cv-4375 (BMC)
                                                            :
  TOP LINE REPORTING INC. and TRANS                         :
  UNION, LLC,                                               :
                                                            :
                                                            :
                           Defendants.                      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Aliyah Silver brings this action for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. G.B.L. § 380 *et seq.*  She alleges that Top Line Reporting placed a false debt on her credit report, and that both Top Line and Trans Union failed to reasonably investigate her disputes concerning that alleged debt.[1]  Before the Court is Trans Union's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because Trans Union cannot be expected to act as a judge or a jury concerning plaintiff's dispute with her creditor, Trans Union's motion to dismiss is granted.

SUMMARY OF COMPLAINT

Plaintiff previously rented an apartment with non-party 101 Bruckner (the "landlord"). She made all her monthly payments on time.  In May 2024, she was forced to vacate her

---

[1] Several times throughout her complaint, plaintiff states that Trans Union failed to perform reasonable investigations of her disputes.  The FCRA charges furnishers with conducting investigations, and charges consumer reporting agencies, like Trans Union, with conducting reinvestigations.  Compare 15 U.S.C. § 1681s-2(b) (responsibilities of furnishers with respect to consumer disputes), with 15 U.S.C. § 1681i(a) (responsibilities of consumer reporting agencies with respect to consumer disputes).

apartment after it became infested with rodents. She paid her rent for that month, notified the landlord that she was vacating the apartment since it was no longer habitable, and told the landlord to use her security deposit to cover her June 2024 rent. She also told the landlord that if no one else moved in by July 2024, she would pay the July rent.

The landlord responded that plaintiff owed a $6,437 "concession charge," even though plaintiff's lease nowhere mentioned such a charge.[2] Then, on July 31, 2024, the landlord told plaintiff that she owed $2,857, no longer mentioning the concession charge. But plaintiff did not owe the landlord anything at that time, as she had already paid her May and June rent, plus her rent for the first two weeks of July.[3]

The landlord retained Top Line to collect the purported debt. Top Line did not send plaintiff a bill for any debt, but reported to Trans Union that plaintiff was 60 days late on a $3,820 payment.

Plaintiff mailed a detailed written dispute with supporting documentation to Trans Union on December 5, 2024. In that letter, she explained that, in her view, she had paid rent in full for May 2024 and that her landlord applied her security deposit to cover June 2024 rent. Plaintiff also pointed out inconsistencies between what her landlord told her she owed, what Top Line told her she owed, and what Trans Union ultimately reported. In particular, Top Line's July 3 ledger said plaintiff owed $10,307; the landlord's July 31 email said plaintiff owed $2,857; and Trans Union's credit report said she owed $3,820. Plaintiff noted that Top Line's $10,307 debt as

---

[2] Generally, a "concession charge" is a charge to recover a discount on the rent or other benefit a tenant receives upon entry into a lease agreement which she incurs if she subsequently breaches the lease.

[3] Although plaintiff does not specify, she presumably paid for only the first two weeks of July because a new tenant moved in.

2

of July 3 could not be reconciled with the landlord's $2,857 debt as of July 31 since she had not made any payments between those dates. Plaintiff attached a copy of the July 31 email from her landlord, a copy of the July 3 Top Line ledger, and a copy of her lease agreement – the latter making no mention of a concession charge.

Plaintiff received Trans Union's results of its reinvestigation on December 19, 2024, which stated that Top Line had verified the accuracy of Trans Union's reporting. The Trans Union credit report showed that the Top Line account was 60 days past due in December 2024 but did not contain payment history information for July through November 2024.

Plaintiff called Trans Union on December 23, 2024 to understand what Trans Union did to reinvestigate her dispute and to dispute the Top Line debt again. Trans Union told her that it did not do any type of investigation and instead reported what Top Line told it to report. Trans Union sent plaintiff a letter that day stating that it was refusing to conduct another investigation of her dispute and would not notify Top Line that she was again disputing the account.

Plaintiff claims that the inaccurate derogatory information listed on her consumer reports as a result of defendants' conduct caused her emotional distress, reputational damage, expenditure of time and resources, annoyance, aggravation, and frustration, and adversely impacted her credit rating. She states also that the inaccurate derogatory information was a substantial factor in Goldman Sachs denying her application for an Apple Credit Card on April 7, 2024. Specifically, she claims that Goldman Sachs reviewed her Trans Union credit report and, in denying her credit application, pointed to a "serious delinquency" and "amount past due on accounts"; the Top Line account was the only negative item on plaintiff's Trans Union credit report.

3

Plaintiff alleges that Trans Union violated the FCRA (namely, § 1681i) and NYFCRA by failing to conduct reasonable reinvestigations of plaintiff's disputes associated with the Top Line account and failing to delete or modify the disputed information after failing to verify its completeness and accuracy. Plaintiff further alleges that Top Line violated the FCRA by failing to conduct reasonable reinvestigations of plaintiff's disputes after receiving notification of plaintiff's disputes from Trans Union. Plaintiff finally alleges that Top Line also violated the FDCPA by communicating false credit information to Trans Union, using false representations and deceptive means to collect the disputed debt, and attempting to collect a debt that plaintiff did not owe.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

"Because the language of the NYFCRA and the FCRA is substantially similar, 'the two statutes must be construed in the same way.'" Mader v. Experian Info. Sols., Inc., 56 F.4th 264, 267 (2d Cir. 2023) (quoting Scott v. Real Est. Fin. Grp., 183 F.3d 97, 100 (2d Cir. 1999)).

4

Accordingly, the Court's discussion and disposition of plaintiff's claims under the FCRA also apply to plaintiff's claims under the NYFCRA.

In considering a challenge under § 1681i, "the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." Hossain v. Portfolio Recovery Assocs., LLC, 693 F. Supp. 3d 358, 362 (E.D.N.Y. 2023). A "credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" Mader, 56 F.4th at 269 (quoting Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021)).

The Second Circuit has held that for an alleged inaccuracy to be actionable under the FCRA, it must be "objectively and readily verifiable." Id. Determining "whether a debt is objectively and readily verifiable will *sometimes* ... involve an inquiry into whether the debt is the subject of a legal dispute." Sessa v. Trans Union, LLC, 74 F.4th 38, 43 (2d Cir. 2023) (emphasis in original); see also Mader, 693 F. Supp. 3d at 272 ("[I]f a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports."). However, "[t]he threshold question is not whether any purportedly inaccurate information is legal or factual in nature, but rather whether the information in dispute is 'objectively and readily verifiable.'" Spira v. TransUnion, LLC, No. 23-cv-4319, 2024 WL 2221662, at *3 (S.D.N.Y. May 16, 2024) (quoting Sessa, 74 F.4th at 43). To that end, consumer reporting agencies "are not required to adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report." Hossain, 693 F. Supp. 3d at 363.

5

There was clearly a factual dispute between plaintiff and her landlord. Plaintiff claims that she paid rent to her landlord for May 2024, June 2024, and the first two weeks of July 2024, and that she owed no debt to her landlord as a result. However, when plaintiff communicated this to Trans Union in her December 2024 dispute, she offered only her word in support. She did not attach, for example, a letter from Top Line or her landlord stating that she never owed the debt or had been released from her obligation to pay the debt.

The only way Trans Union could have objectively and readily verified the inaccuracy was to insert itself into plaintiff's dispute with her landlord. Contrary to plaintiff's argument, simply reviewing the lease (because it did not contain a reference to a concession charge), the landlord's emails (because they set forth conflicting amounts of liability to explain the basis for the alleged debt), and payment records (which, plaintiff contends, showed "full payment") would not have been enough. Trans Union would have had to, at the very least, compare plaintiff's payments from her bank account with the terms of the lease, or, more conclusively, reached out to the landlord and secured a release on plaintiff's behalf. Either is asking too much of a consumer reporting agency. Trans Union is neither an accounting firm nor a law firm, and it did not have to undertake that kind of intricate analysis.

Plaintiff admits that even though her landlord appeared to have abandoned the $6,437 concession charge, it was still seeking $2,857, making the justifiability of the concession charge irrelevant. And even if the landlord could not explain the basis for the alleged debt, the landlord had asserted that there was one; in turn, plaintiff's version of "full payment" necessarily differed from that of her landlord. In sum, plaintiff's dispute pointed to different positions between

herself, her landlord, Top Line, and Trans Union,[4] and identified no readily available document explicitly contradicting the existence of her debt. Although it may be true that plaintiff owed no money to her landlord, Trans Union could not have ascertained that fact with any certainty from plaintiff's dispute package – nor was it required to do so under the FCRA.

Plaintiff also claims that Trans Union's reporting was inaccurate because it did not contain payment history for July through November 2024, even while reporting a "60 days past due" payment. This claim is without merit. Plaintiff does not allege how this renders her credit report "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." See Mader, 56 F.4th at 269 (2d Cir. 2023) (internal quotation marks omitted). If anything, the lapse in reported payment history benefitted plaintiff by giving her a chance to get up to speed on her payments before a late payment notation appeared on her credit report.

## CONCLUSION

Trans Union's motion to dismiss is granted for the reasons set forth above.

**SO ORDERED.**



S/Brian M. Cogan

_____

U.S.D.J.

Dated: Brooklyn, New York
      October 16, 2025

---

[4] Plaintiff argues that Trans Union's reporting of the debt is inaccurate because the number it reported ($3,820) differed from the numbers Top Line and her landlord provided. The Court concludes the opposite. Although it may be odd that Trans Union, Top Line, and the landlord provided different numbers (albeit, at different times), these discrepancies show that the existence and amount of the debt was not objectively and readily verifiable.