**MALLON CONSUMER LAW GROUP, PLLC**
ATTORNEYS AT LAW
One Liberty Plaza
Suite 2301
New York NY 10006
(917) 734-6815
kmallon@consumerprotectionfirm.com

November 17, 2025

**VIA ECF**
Honorable Brian M. Cogan
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *Silver v. Top Line Reporting Inc., et al.* EDNY 1:25-cv-04375**

Dear Judge Cogan:

The undersigned is counsel for Plaintiff Aliyah Silver in the above-referenced matter. Plaintiff submits this letter in opposition to Defendant Top Line Reporting Inc.'s ("Top Line") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

1. Plaintiff Has Article III Standing to Pursue Her FCRA Claim Against Top Line

Top Line argues that Plaintiff lacks standing because she supposedly failed to allege that inaccurate information was disseminated to a third party and suffered no concrete harm. That assertion is flatly contradicted by the First Amended Complaint.

The Complaint expressly alleges that (1) the inaccurate Top Line tradeline appeared on Plaintiff's Trans Union report; and (2) that report was reviewed by a third-party creditor that then denied Plaintiff's credit application. Specifically, Plaintiff alleges that on April 7, 2024 she applied for an Apple Credit Card issued by Goldman Sachs, that Goldman Sachs reviewed her Trans Union credit report, and that it denied her application "in part because of a 'serious delinquency' and 'amount past due on accounts.'" She further alleges that the disputed Top Line account "was the only derogatory account on Plaintiff's Trans Union report and thus was, at a minimum, a substantial factor in that credit denial."

Those allegations are more than sufficient to establish concrete injury under *TransUnion LLC v. Ramirez*. There is no "no dissemination" group here. Plaintiff alleges dissemination of the inaccurate tradeline to a third-party creditor and an actual denial of credit flowing from that publication, in addition to reputational harm and emotional distress. That is precisely the kind of concrete harm *TransUnion* recognized as analogous to defamation and therefore sufficient for Article III jurisdiction.

Top Line's suggestion that Plaintiff "fails to allege that the alleged erroneous credit information was disseminated" simply overlooks paragraph 37 of the Complaint (quoted

above). At the pleading stage, Plaintiff's detailed allegations that the false tradeline was reported by Top Line, included on her Trans Union report, and then furnished to Goldman Sachs in connection with a real-world credit denial are more than enough to meet the "concrete harm" threshold.

2. The Complaint Plausibly Alleges that Top Line Is a "Debt Collector" and Engaged in Debt Collection Activity Under the FDCPA

Top Line's arguments as to the FDCPA are also without merit. First, the Complaint squarely alleges that "Top Line qualifies as a 'debt collector' within the meaning of 15 U.S.C. § 1692(a)(6)." At the pleading stage, that allegation—combined with the facts that Top Line was retained by Plaintiff's landlord "in an attempt to collect a debt it alleged Plaintiff owed on her apartment" and that it reported a specific past-due balance to Trans Union—adequately alleges that Top Line's principal purpose is the collection of debts or that it regularly attempts to collect debts owed another.

Top Line's reliance on Plaintiff's allegation that she "never received a bill from Top Line" is irrelevant. The FDCPA does not require that a debt collector contact the consumer directly via a "bill" or dunning letter for its conduct to be covered. Section 1692e(8), which Plaintiff invokes, specifically targets a debt collector's communications with consumer reporting agencies—i.e., "communicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C. § 1692e(8). Plaintiff alleges exactly that: Top Line communicated false credit information about her to Trans Union, despite having been put on notice through the dispute that the amount and delinquency status were wrong and contradicted by its own records and the landlord's email. That conduct falls squarely within the heartland of § 1692e(8). A debt collector cannot escape FDCPA liability simply by choosing to pressure the consumer indirectly—through derogatory credit reporting—rather than by mailing a traditional collection letter.

Courts have consistently held that placing or maintaining an item on a consumer's credit report is conduct undertaken in connection with the collection of a debt and therefore falls squarely within the scope of the FDCPA. These cases recognize the practical reality that credit reporting is one of the most powerful tools a debt collector can wield to pressure payment.

In *Escobar v. Midland Credit Management, Inc.*, 2019 WL 3752532 (D. Conn. Aug. 8, 2019), the court expressly held that a debt collector's decision to furnish information to a credit bureau is an attempt to induce payment**,** and therefore constitutes debt-collection activity: "[R]eporting debts to credit reporting agencies is one of the most commonly used arrows in the debt collector's quiver… This inducement of payment can amount to debt collection." (Id. at *4–5*.) The court concluded that the plaintiff had plausibly alleged that Midland's reporting was "a communication made in an attempt to collect a debt," id., directly rejecting the same argument Top Line makes here—that reporting credit information is somehow outside the FDCPA.

In *Plummer v. Atlantic Credit & Finance, Inc.*, 66 F. Supp. 3d 484 (S.D.N.Y. 2014), the court stated: "Because reporting a debt to a credit reporting agency can be seen as

a communication in connection with the collection of a debt**,** the reporting of such a debt in violation of § 1692e(8) can subject a debt collector to liability." (Id. at 489.) (citation omitted). Similarly, in *Sutton v. Associated Credit Services, Inc Sutton v. Associated Credit Services, Inc.*, 2020 WL 614968 (E.D.N.Y. Jan. 9, 2020), the Eastern District of New York denied summary judgment where a debt collector had reported disputed information to Equifax, holding that such reporting is a communication of credit information that falls within § 1692e(8).

The decision in *Fritz v. Resurgent Capital Services, LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013), reinforces that credit reporting is actionable under the FDCPA because it is a means of exerting pressure on consumers through third-party communications. The court held that misrepresentations made to CRAs "fall comfortably within the plain language of the FDCPA," and rejected the argument that the FCRA displaces FDCPA liability for false reporting. Id. at 172.

Second, the question whether Top Line's "principal purpose" is the collection of debts, or whether it "regularly" collects debts owed another, is a factual issue not suitable for resolution on a motion to dismiss. Top Line's attempt to introduce extra-record material about New York City licensing (i.e., that it allegedly does not hold a local debt collection license) is not only impermissible on a Motion to Dismiss, but underscores why this is not a pure facial challenge. Whether Top Line has complied with municipal licensing requirements says nothing about whether, as a matter of federal law, its business model meets the FDCPA's definition of "debt collector." In any event, those are factual matters outside the pleadings and cannot be considered on a Rule 12(b)(6) motion without converting it to a motion for summary judgment.

Finally, the Complaint specifically alleges that Top Line violated §§ 1692e(8), 1692e(10), and 1692f(1) by: (1) communicating false credit information to Trans Union regarding a debt Plaintiff did not owe; (2) using deceptive means to collect that disputed debt; and (3) attempting to collect amounts not authorized by agreement or law. Those allegations are concrete, non-conclusory, and more than sufficient to state a plausible FDCPA claim.

3. <u>At Minimum, Plaintiff Should Be Granted Leave to Amend</u>

Even if the Court were to identify any technical pleading defects in the FCRA or FDCPA claims against Top Line, the proper course would be to allow Plaintiff a short period to amend, not to dismiss at the pre-motion stage. Plaintiff can readily add further factual details should the Court wish for more specificity.

For all the foregoing reasons, Plaintiff respectfully submits that Top Line's motion to dismiss be denied in its entirety.

Respectfully submitted,

___________________________
Kevin Mallon
Mallon Consumer Law Group, PLLC
One Liberty Plaza, Suite 2301
New York, NY 10006
(646) 713-1008
kmallon@consumerprotectionfirm.com
*Counsel for Plaintiff Aliyah Silver*