UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X Case No.: 1:25-cv-04375-BMC

ALIYAH SILVER,

Plaintiff,

v.

TOP LINE REPORTING INC. and
TRANS UNION, LLC.,

Defendants.

----------------------------------------------------------X

**DEFENDANT TOP LINE REPORTING INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST CAUSE OF ACTION**

Defendant, Top Line Reporting, Inc. ("Top Line"), through undersigned counsel, hereby respectfully submits its Pre-Answer Motion to Dismiss Plaintiff's First Cause of Action for violation of the Fair Credit Reporting Act, pursuant to FRCP 12(b)(6). Top Line moves to dismiss the First Cause of Action only, as alleged in Plaintiff's First Amended Complaint. In support, Top Line submits the attached Memorandum of Law.

Dated: December 12, 2025
New York, New York

Respectfully Submitted,

Bhavleen Sabharwal
Law Office of Bhavleen Sabharwal
261 Madison Avenue, Suite 1063
New York, NY 10016
(917) 597-5984
Bsabharwal@bsablaw.com
Attorney for Defendant Top Line Reporting Inc.

**TABLE OF CONTENTS**

I INTRODUCTION ........................................................ 4

II LEGAL STANDARD ........................................................ 5

III ARGUMENT ........................................................ 6

THE UNDERLYING DISPUTE INVOLVES LEGAL DETERMINATIONS BEYOND FCRA'S SCOPE AS THE CLAIMED INACCURACY IS NOT READILY AND OBJECTIVELY VERIFIABLE AS REQUIRED FOR A PRIMA FACIE CASE .................... 6

THIS COURT HAS ALREADY HELD THAT THE CLAIMS MADE ARE NOT OBJECTIVELY VERIFIABLE........................................................ 9

V. CONCLUSION ........................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........ 5
*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010)........ 6
*Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)........ 7
*Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ........ 6
*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) ........ 6
*Kamrul Hossain v. Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 363 (E.D.N.Y. 2023)6
*Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023) ........ 6
*Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) ........ 6

**Statutes**

15 U.S.C. § 1681s-2(b) ........ 4
Federal Rule of Civil Procedure 12(b)(6) ........ 5, 6

## I INTRODUCTION

Plaintiff Aliyah Silver ("Plaintiff") alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), against Defendant Top Line Reporting Inc. ("Top Line")[1]. Plaintiff alleges that Top Line reported inaccurate information to Trans Union regarding a rental account balance from her former apartment at 101 Bruckner Boulevard, Unit 2-F, Bronx, New York (First Am. Compl. ¶¶ 2, 12-20). Specifically, Plaintiff alleges that Top Line reported she was 60 days late on a payment of $3,820, when she claims she did not owe this amount (First Am. Compl. ¶¶ 20, 23). Plaintiff further alleges that after she disputed the tradeline with Trans Union, Top Line failed to conduct a reasonable investigation and improperly verified the account as accurate despite allegedly possessing documents showing the underlying debt was disputed (First Am. Compl. ¶¶ 21-35, 44-45). The dispute centers on conflicting amounts claimed by the landlord—ranging from $2,857.90 to $10,307.90—a contested $6,437.50 "concession charge" that Plaintiff claims is not mentioned in her lease, questions about when her financial responsibility ended under the lease terms, and allegations that the apartment was uninhabitable due to rodent infestation (First Am. Compl. ¶¶ 14-18, 21-27). Plaintiff claims she suffered damages, including denial of an Apple Credit Card application by Goldman Sachs (First Am. Compl. ¶ 37).

Top Line is a "furnisher of information" as contemplated by 15 U.S.C. § 1681s(2), titled "Responsibilities of Furnishers of Information to Consumer Reporting Agencies." While the FCRA does not provide a standalone definition of "furnisher," the statute identifies entities subject to furnisher duties as any "person who regularly and in the ordinary course of business furnishes

[1] Trans Union, LLC is no longer a party to this action. By Memorandum Decision and Order dated October 16, 2025, this Court granted Trans Union's motion to dismiss Plaintiff's FCRA and NYFCRA claims under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 21),

information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer." 15 U.S.C. § 1681s-2(a)(2)(A). Section 1681s-2(b) establishes specific duties that are triggered only "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). These duties include correcting or delete inaccurate information: If the investigation finds information is "incomplete or inaccurate," the furnisher must "report those results to all other consumer reporting agencies" and must "modify," "delete," or "permanently block the reporting of" inaccurate information. U.S.C. § 1681s-2(b)(1)(D)-(E).

Plaintiff's claims fail as a matter of law because she has not plausibly alleged that Top Line furnished objectively and readily verifiable inaccurate information as required by controlling Second Circuit precedent. Indeed, this Court has already addressed this precise issue in its October 16, 2025, Memorandum and Order on Trans Union's pre-conference letter, which the Court treated as a pre-answer motion to dismiss (Dkt. 21). The Court held that the alleged inaccuracy regarding the rental debt was not objectively and readily verifiable due to the underlying landlord-tenant legal dispute. As demonstrated below, Top Line's motion should be granted for the same reasons this Court granted Trans Union's motion.

## II LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. In analyzing a motion under Rule 12(b)(6), the Court should determine whether the allegations contained in the complaint, construed in the light most favorable to the Plaintiff, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. 544, 555-56 (2007).

## III ARGUMENT

### THE UNDERLYING DISPUTE INVOLVES LEGAL DETERMINATIONS BEYOND FCRA'S SCOPE AS THE CLAIMED INACCURACY IS NOT READILY AND OBJECTIVELY VERIFIABLE AS REQUIRED FOR A PRIMA FACIE CASE

Alleged inaccuracies that turn on legal disputes are not cognizable under the FCRA, as they are collateral attacks on the legal validity of a debt, if they are not objectively and readily verifiable. *Mader v. Experian Info. Sols., Inc*., 56 F.4th 264, 270 (2d Cir. 2023); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (further clarifying that alleged inaccuracies are not cognizable unless "objectively and readily verifiable"); *Kamrul Hossain v. Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 363 (E.D.N.Y. 2023). This is so, because credit reporting agencies are not tribunals and are not equipped, or required by the FCRA, to resolve legal or contract disputes. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *accord Mader*, 56 F.4th, at 271.

Filed on the same day as her First Amended Complaint, Plaintiff filed a copy of her dispute letter to Trans Union dated December 5, 2024, which annexed copy of her rental agreement (Dkt. No. 10). Courts may review documents on a Fed. R. Civ. P. 12(b)(6) motion when they are integral to

the complaint or included by reference. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). For such a document to be "integral," a plaintiff must rely on the terms and effect of the document in drafting the complaint. *Id.* Here, the dispute letter and its attachments are plainly integral to Plaintiff's complaint and should be considered as Plaintiff's complaint expressly relies on and references the dispute letter. Plaintiff alleges that she "mailed a detailed written dispute with supporting documentation to Trans Union on December 5, 2024" and describes the contents of that dispute letter throughout the complaint (First Am. Compl. ¶¶ 21-30).

Plaintiff admits that the dispute between herself and her landlord began when she broke her lease due to the landlord's alleged breach of the implicit warranty of habitability. Complaint, Dkt. No. 1, at ¶ 14; First Amended Complaint, Dkt. No. 9, at ¶ 14. Complaint, Dkt. No. 1, at ¶ 14; First Amended Complaint, Dkt. No. 9, at ¶ 14. It is alleged in the First Amended Complaint that "Plaintiff was forced to vacate her apartment in May 2024 after it became infested with rodents and uninhabitable. Plaintiff informed 101 Bruckner that she was vacating the apartment since it was no longer habitable (First Amended Complaint ¶ 14). It is alleged that before Plaintiff vacated the apartment, she paid the rent due for that month and communicated to her landlord that her security deposit should be used to cover her rent for the month of June (First Amended Complaint ¶ 15). According to the dispute letter dated December 5, 2024, Plaintiff "learned that [the apartment] was re-rented in June (which 101 Bruckner Realty LLC denied)," and that "the new tenant's lease started on July 15, 2024." Plaintiff alleged that "per my lease, this would have ended my financial responsibility on July 14, 2024." (Dispute Letter, Dkt. No. 10). However, 101 Bruckner subsequently claimed Plaintiff owed various amounts, including a $6,437.50 "concession charge" that appeared on the May 29, 2024, ledger. Plaintiff alleges the lease "makes no mention of a 'concession charge,' and there was no legal basis whatsoever to seek those amounts

from Plaintiff." (First Amended Complaint ¶ 16). 101 Bruckner's demand letters claimed amounts ranging from $8,970.90 (June 4, 2024) to $10,307.90 (July 3, 2024) to $2,857.90 (July 31, 2024)—yet on or about that same July 31 date, Top Line reported to Trans Union that Plaintiff owed $3,820 and was 60 days past due (Dispute Letter, Dkt. No. 10).

The allegations demonstrate that verifying the alleged debt would require Top Line to adjudicate multiple complex legal disputes between Plaintiff and her landlord—precisely the type of intricate analysis the FCRA does not require. After vacating the apartment, Plaintiff alleges that she told the landlord to use her security deposit to cover her last month's rent, as well as for further damages to the landlord under the lease. *Id.*, at ¶ 15, 22. This is explicitly not allowed, per the lease. Exhibit A, at 5 ("if You do not carry out all the agreements in this Lease, Owner may keep all or part of your security deposit…You cannot use your security deposit for last months rent."). In order to determine whether Plaintiff breached the lease agreement, Top Line would have to launch an investigation and application of New York's warranty of habitability doctrine and review the terms of the lease to determine whether Plaintiff had a legal right to terminate her lease obligations. Top Line would also need to interpret whether the landlord had a right to initially assess a concession charge since Plaintiff alleges there is no reference to a concession charge in the lease (First Amended Complaint ¶ 14 ). Top Line would also need to determine when Plaintiff's financial responsibility ended under the lease which would in theory bar the ability of the landlord to assess any further charges to Plaintiff.

Top Line's duty was to verify the information with the creditor (101 Bruckner)—which it did (Dkt. 25) —not to adjudicate the underlying merits of the landlord-tenant dispute. The FCRA does not require furnishers to "adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report." *Hossain at 363*.

**THIS COURT HAS ALREADY HELD THAT THE CLAIMS MADE ARE NOT OBJECTIVELY VERIFIABLE**

This Court has already determined that these exact disputes are not objectively and readily verifiable in the Memorandum and Order dated October 16, 2025. In dismissing the FCRA claim against Trans Union, the Court held: "There was clearly a factual dispute between plaintiff and her landlord. Plaintiff claims that she paid rent to her landlord for May 2024, June 2024, and the first two weeks of July 2024, and that she owed no debt to her landlord as a result. However, when plaintiff communicated this to Trans Union in her December 2024 dispute, she offered only her word in support." "The only way Trans Union could have objectively and readily verified the inaccuracy was to insert itself into plaintiff's dispute with her landlord... Trans Union would have had to, at the very least, compare plaintiff's payments from her bank account with the terms of the lease, or, more conclusively, reached out to the landlord and secured a release on plaintiff's behalf. Either is asking too much of a consumer reporting agency. Trans Union is neither an accounting firm nor a law firm, and it did not have to undertake that kind of intricate analysis." (Dkt. 21). If Trans Union could not verify this debt without becoming an accounting firm and law firm, then Top Line—standing in the same position and receiving notice of the same dispute—certainly cannot be expected to do so.

## V. CONCLUSION

For these reasons, it is respectfully requested that the Court grant Defendant's motion to dismiss with prejudice.

Respectfully Submitted,

Bhavleen S

Bhavleen Sabharwal
Law Office of Bhavleen Sabharwal
261 Madison Avenue, Suite 1063
New York, NY 10016
(917) 597-5984

Bsabharwal@bsablaw.com
Attorney for Defendant
Top Line Reporting Inc.