UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X Case No.: 1:25-cv-04375-BMC

ALIYAH SILVER,

Plaintiff,

v.

TOP LINE REPORTING INC. and
TRANS UNION, LLC.,

Defendants.

---------------------------------------------------------X

**DEFENDANT TOP LINE REPORTING INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST CAUSE OF ACTION**

Defendant, Top Line Reporting, Inc. ("Top Line"), through undersigned counsel, hereby respectfully submits its Pre-Answer Motion to Dismiss Plaintiff's First Cause of Action for violation of the Fair Credit Reporting Act, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). Top Line moves to dismiss the First Cause of Action *only*, as alleged in Plaintiff's First Amended Complaint. In support, Top Line submits the attached Memorandum of Law.

Dated: December 29, 2025
New York, New York

Respectfully Submitted,

*Bhavleen Sabharwal*

Bhavleen Sabharwal
Law Office of Bhavleen Sabharwal
261 Madison Avenue, Suite 1063
New York, NY 10016
(917) 597-5984
Bsabharwal@bsablaw.com
Attorney for Defendant Top Line Reporting Inc.

**TABLE OF CONTENTS**


I INTRODUCTION .......... 5

II LEGAL STANDARD .......... 6

III ARGUMENT .......... 7

A. THE UNDERLYING DISPUTE INVOLVES LEGAL DETERMINATIONS BEYOND FCRA'S SCOPE AS THE CLAIMED INACCURACY IS NOT READILY AND OBJECTIVELY VERIFIABLE AS REQUIRED FOR A PRIMA FACIE CASE .......... 7

B. THIS COURT HAS ALREADY HELD THE CLAIMS MADE ARE NOT OBJECTIVELY VERIFIABLE .......... 12

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 7

*Bensch v. Est. of Umar*,
2 F.4th 70 (2d Cir. 2021) .................... 7

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .................... 7

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020) .................... 6

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) .................... 8

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) .................... 8

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .................... 6

*Kamrul Hossain v. Portfolio Recovery Assocs., LLC*,
693 F. Supp. 3d 358 (E.D.N.Y. 2023) .................... 7

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) .................... 6

*Mader v. Experian Info. Sols., Inc.*,
56 F.4th 264 (2d Cir. 2023) ....................7,8,11

*Sessa v. Trans Union, LLC*,
74 F.4th 38 (2d Cir. 2023) .................... 7,8,11

## STATUTES

15 U.S.C. § 1681e(b) .................... 8
15 U.S.C. § 1681i(a)(2) .................... 5
15 U.S.C. § 1681s(2) .................... 4
15 U.S.C. § 1681s-2(a)(2)(A) .................... 4

15 U.S.C. § 1681s-2(b) .......... 4
15 U.S.C. § 1681s-2(b)(1) .......... 4
15 U.S.C. § 1681s-2(b)(1)(D)-(E) .......... 5

**RULES**

Fed. R. Civ. P. 7(a) .......... 5
Fed. R. Civ. P. 12(b)(6) .......... 5, 8
Fed. R. Civ. P. 12(c) .......... 6

## I INTRODUCTION

Plaintiff Aliyah Silver ("Plaintiff") alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), against Defendant Top Line Reporting Inc. ("Top Line")[1]. Plaintiff alleges that Top Line reported inaccurate information to Trans Union regarding a rental account balance from her former apartment at 101 Bruckner Boulevard, Unit 2-F, Bronx, New York (First Am. Compl. ¶¶ 2, 12-20). Specifically, Plaintiff alleges that Top Line reported she was 60 days late on a payment of $3,820, when she claims she did not owe this amount (First Am. Compl. ¶¶ 20, 23). Plaintiff further alleges that after she disputed the tradeline with Trans Union, Top Line failed to conduct a reasonable investigation and improperly verified the account as accurate (First Am. Compl. ¶29). Plaintiff claims she suffered damages, including denial of an Apple Credit Card application by Goldman Sachs (First Am. Compl. ¶ 37).

Top Line is a "furnisher of information" as contemplated by 15 U.S.C. § 1681s(2), titled "Responsibilities of Furnishers of Information to Consumer Reporting Agencies." While the FCRA does not provide a standalone definition of "furnisher," the statute identifies entities subject to furnisher duties as any "person who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer" 15 U.S.C. § 1681s-2(a)(2)(A). Section 1681s-2(b) establishes specific duties that are triggered only "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" 15 U.S.C. § 1681s-2(b)(1). These duties include correcting

[1] Trans Union, LLC is no longer a party to this action. By Memorandum Decision and Order dated October 16, 2025, this Court granted Trans Union's motion to dismiss Plaintiff's FCRA and NYFCRA claims under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 21),

or delete inaccurate information: If the investigation finds information is "incomplete or inaccurate," the furnisher must "report those results to all other consumer reporting agencies" and must "modify," "delete," or "permanently block the reporting of" inaccurate information U.S.C. § 1681s-2(b)(1)(D)-(E).

Plaintiff's claims fail as a matter of law because she has not plausibly alleged that Top Line furnished objectively and readily verifiable inaccurate information as required by controlling Second Circuit precedent. Indeed, this Court has already addressed this precise issue in its October 16, 2025, Memorandum and Order on Trans Union's pre-conference letter, which the Court treated as a pre-answer motion to dismiss (Dkt. 21). The Court held that the alleged inaccuracy regarding the rental debt was not objectively and readily verifiable due to the underlying landlord-tenant legal dispute. As demonstrated below, Top Line's motion should be granted for the same reasons this Court granted Trans Union's motion.

## II LEGAL STANDARD

The standard for granting a motion for judgment on the pleadings pursuant to FRCP 12(c) is identical to the standard for a Rule 12(b)(6) motion to dismiss *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). The Court accepts as true all of the non-moving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Id.* To survive a motion for judgment on the pleadings, "the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge"

claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

**III ARGUMENT**

**THE UNDERLYING DISPUTE INVOLVES LEGAL DETERMINATIONS BEYOND FCRA'S SCOPE AS THE CLAIMED INACCURACY IS NOT READILY AND OBJECTIVELY VERIFIABLE AS REQUIRED FOR A PRIMA FACIE CASE**

Alleged inaccuracies that turn on legal disputes are not cognizable under the FCRA, as they are collateral attacks on the legal validity of a debt, if they are not objectively and readily verifiable *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (further clarifying that alleged inaccuracies are not cognizable unless "objectively and readily verifiable"); *Kamrul Hossain v. Portfolio Recovery Assocs., LLC*, 693 F. Supp. 3d 358, 363 (E.D.N.Y. 2023). This is so, because credit reporting agencies are not tribunals and are not equipped, or required by the FCRA, to resolve legal or contract disputes *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *accord Mader*, 56 F.4th, at 271.

The allegedly inaccurate information at issue in *Mader v. Experian Information Solutions*, Inc., 56 F.4th 264 (2d Cir. 2023) was related to a student loan debt (*Id*. At 266). The plaintiff in *Mader* had filed for bankruptcy and "the bankruptcy court issued a final decree of discharge, which stated that Mader was released from all dischargeable debts." Mader contended that this decree released his student loan debt; however, as an attachment to the decree noted, "debts for most student loans are not discharged." *Id at 266*. There was therefore a live legal dispute regarding whether Mader in fact still owed the student loan debt reported by the CRA. The Court found that the validity of that debt was not "objectively and readily verifiable," holding: "The bespoke

attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report ‘inaccurate’ under the FCRA.” Id. at 269, 270.

*Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) involved allegedly inaccurate information about a balloon payment reported on plaintiff's credit report. The Second Circuit found that determining the correct balloon payment involved a "readily verifiable and straightforward application of law to facts" rather than complex legal analysis. It was held that the district court erred by creating a bright-line rule distinguishing “legal” from “factual” inaccuracies”. The Second Circuit found this approach "improperly narrowed the scope of section 1681e(b) to only transcription errors." Instead, it held that reporting agencies may be “required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts” (*Mader*, at 269.)

Turning to the instant matter, filed on the same day as her First Amended Complaint, Plaintiff filed a copy of her dispute letter to Trans Union dated December 5, 2024, which annexed copy of her rental agreement (Dkt. No. 11-1). Courts may review documents on a Fed. R. Civ. P. 12(b)(6) motion (which applies the same standard utilized on a 12(c) motion) when they are integral to the complaint or included by reference. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). For such a document to be “integral,” a plaintiff must rely on the terms and effect of the document in drafting the complaint. *Id.* Here, the dispute letter and its attachments are plainly integral to Plaintiff's complaint and should be considered as Plaintiff's complaint expressly relies on and references the dispute letter. Plaintiff alleges that she "mailed a detailed written dispute with

supporting documentation to Trans Union on December 5, 2024" and describes the contents of that dispute letter throughout the complaint (First Am. Compl. ¶¶ 21-30).

Plaintiff admits that the dispute between herself and her landlord began when she broke her lease due to the landlord's alleged breach of the implicit warranty of habitability. (First Am. Compl., Dkt. No. 9, at ¶ 14). It is alleged in the First Amended Complaint that "Plaintiff was forced to vacate her apartment in May 2024 after it became infested with rodents and uninhabitable. Plaintiff informed 101 Bruckner that she was vacating the apartment since it was no longer habitable (First Am. Comp. ¶ 14). It is alleged that before Plaintiff vacated the apartment, she paid the rent due for that month and communicated to her landlord that her security deposit should be used to cover her rent for the month of June (First Am. Compl. ¶ 15).

The allegations demonstrate that verifying the alleged debt would require Top Line to adjudicate multiple complex legal disputes between Plaintiff and her landlord—precisely the type of intricate analysis the FCRA does not require. After vacating the apartment, Plaintiff alleges that she told the landlord to use her security deposit to cover her last month's rent, as well as for further damages to the landlord under the lease. *(*First Am. Comp. at ¶¶ 15, 22). This is explicitly not allowed, per the lease. Exhibit A, 11-1 at 5 ("If You do not carry out all the agreements in this Lease, Owner may keep all or part of your security deposit…You cannot use your security deposit for last months rent."). In order to determine whether Plaintiff breached the lease agreement, Top Line would have to launch an investigation and application of New York's warranty of habitability doctrine and review the terms of the lease to determine whether Plaintiff had a legal right to terminate her lease obligations.

Top Line would also need to interpret whether the landlord had a right to initially assess a concession charge of $6,437.50 where it is alleged by Plaintiff that there is no reference to a

concession charge in the lease (First Amended Complaint ¶ 16). This would require an analysis of contract law principles in New York state in order to determine whether an implied contract was created to allow the landlord to assess a concession charge. The $6,437.50 charge is thus not "objectively and readily verifiable" by Top Line.

Top Line would also need to determine when Plaintiff's financial responsibility ended under the lease which would in theory bar the ability of the landlord to assess any further charges to Plaintiff. It is alleged that Plaintiff learned that the apartment was re-rented in June "which 101 Bruckner Realty denied)" but despite this, "101 Bruckner Realty LLC management's lack of transparency and continued attempts to wrongfully extract money from me without explanation"… caused Plaintiff to revisit the apartment on August 16, 2024 (Dkt. 11-1). Plaintiff alleges she was "financially responsible for, and only for, rent at the apartment until a new tenant leased the apartment," and that a new tenant's lease started July 15, 2024, thereby ending her obligation on July 14, 2024 (Dkt. 11-1). Determining whether 101 Bruckner had the legal ability to continue assessing Plaintiff even after she vacated her apartment requires resolving multiple unsettled legal questions that are precisely the type of "bespoke legal analysis" and "unsettled legal questions" that are barred under *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023).

The Court in *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) held that the question of whether a debt is objectively and readily verifiable will sometimes, as it did in *Mader*, involve an inquiry into whether the debt is the subject of a legal dispute. There, the issue of whether Mader's debt had been discharged presented an "unresolved legal question" under bankruptcy law, which "render[ed] his claim non-cognizable under the FCRA." *Id*. at 270. But that does not mean that <u>any</u> dispute that might arguably turn on a question of law is non-cognizable under the FCRA. As the *Mader* Court explained, CRAs may be "required by the FCRA to accurately report

information derived from the readily verifiable and straightforward application of law to facts." *Id*.

Based on the above, the issues between the landlord and Plaintiff do not lend itself to a straightforward analysis discussed in *Mader* that Top Line can use to determine whether the debt is "objectively and readily verifiable" as the Court's in *Mader* and *Sessa* require. In fact, what Top Line must have had to do to determine whether the debt was objectively and verifiable is engage in a lengthy protracted process to determine rights and wrongs. The law simply does not require Top Line to engage in such analysis. Top Line's duty was to verify the information with the creditor (101 Bruckner)—which it did (Dkt. 25) —not to adjudicate the underlying merits of the landlord-tenant dispute in order to determine why the various amounts were assessed. The FCRA does not require furnishers to "adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report." *Hossain at 363*.

**THIS COURT HAS ALREADY HELD THAT THE CLAIMS MADE ARE NOT <u>OBJECTIVELY VERIFIABLE</u>**

This Court has already determined that these exact disputes are not objectively and readily verifiable in the Memorandum and Order dated October 16, 2025. In dismissing the FCRA claim against Trans Union, the Court held:

> There was clearly a factual dispute between plaintiff and her landlord. Plaintiff claims that she paid rent to her landlord for May 2024, June 2024, and the first two weeks of July 2024, and that she owed no debt to her landlord as a result. However, when plaintiff communicated this to Trans Union in her December 2024 dispute, she offered only her word in support. The only way Trans Union could have objectively and readily verified the inaccuracy was to insert itself into plaintiff's dispute with her landlord... Trans Union would have had to, at the very least, compare plaintiff's payments from her bank account with the terms of the lease, or, more conclusively, reached out to the landlord and secured a release on plaintiff's behalf. Either is asking too much of a consumer reporting agency. Trans Union is neither an accounting firm nor a law firm, and it did not have to undertake that kind of intricate analysis (Dkt. 21).

If Trans Union could not verify this debt without becoming an accounting firm and

law firm, then Top Line—standing in the same position and receiving notice of the same dispute—certainly cannot be expected to do so.

## V. CONCLUSION

For these reasons, it is respectfully requested that the Court grant Defendant's motion to dismiss the first cause of action against Top Line with prejudice.

Respectfully Submitted,

*Bhavleen Sabharwal*

Bhavleen Sabharwal
Law Office of Bhavleen Sabharwal
261 Madison Avenue, Suite 1063
New York, NY 10016
(917) 597-5984
Bsabharwal@bsablaw.com
Attorney for Defendant
Top Line Reporting Inc.