UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ALIYAH SILVER,                                              :
                                                            :
                       Plaintiff,                   : **MEMORANDUM DECISION AND**
                                                            : **ORDER**
               - against -                          :
                                                            : 25-cv-4375 (BMC)
TOP LINE REPORTING INC.,                                    :
                                                            :
                       Defendant.                   :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff Aliyah Silver brings this action against Top Line Reporting for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. She alleges that Top Line placed a false debt on her credit report and failed to reasonably investigate her disputes concerning that alleged debt. Before the Court is Top Line's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure only as to the FCRA claim. For the reasons that follow, Top Line's motion is granted.

## SUMMARY OF COMPLAINT

      Plaintiff previously rented an apartment with non-party 101 Bruckner (the "landlord"). She made all her monthly payments on time. In May 2024, she was forced to vacate her apartment after it became infested with rodents. She paid her rent for that month, notified the landlord that she was vacating the apartment since it was no longer habitable, and told the landlord to use her security deposit to cover her June 2024 rent. She also told the landlord that if no one else moved in by July 2024, she would pay the July rent.

The landlord responded that plaintiff owed a $6,437 "concession charge," even though plaintiff's lease nowhere mentioned such a charge.[1] Then, on July 31, 2024, the landlord told plaintiff that she owed $2,857, no longer mentioning the concession charge. But plaintiff did not owe the landlord anything at that time, as she had already paid her May and June rent, plus her rent for the first two weeks of July.[2]

The landlord retained Top Line to collect the purported debt. Top Line did not send plaintiff a bill for any debt but reported to Trans Union that plaintiff was 60 days late on a $3,820 payment.

Plaintiff mailed a detailed written dispute with supporting documentation to Trans Union on December 5, 2024. In that letter, she explained that, in her view, she had paid rent in full for May 2024 and that her landlord applied her security deposit to cover June 2024 rent. Plaintiff also pointed out inconsistencies between what her landlord told her she owed, what Top Line told her she owed, and what Trans Union ultimately reported. In particular, Top Line's July 3 ledger said plaintiff owed $10,307; the landlord's July 31 email said plaintiff owed $2,857; and Trans Union's credit report said she owed $3,820. Plaintiff noted that Top Line's $10,307 debt as of July 3 could not be reconciled with the landlord's $2,857 debt as of July 31 since she had not made any payments between those dates. Plaintiff attached a copy of the July 31 email from her landlord, a copy of the July 3 Top Line ledger, and a copy of her lease agreement – the latter making no mention of a concession charge.

---

[1] Generally, a "concession charge" is a charge to recover a discount on the rent or other benefit a tenant receives upon entry into a lease agreement which she incurs if she subsequently breaches the lease.

[2] Plaintiff explains in her opposition to Top Line's motion that a new tenant had moved in halfway through July.

Plaintiff received Trans Union's results of its reinvestigation on December 19, 2024, which stated that Top Line had verified the accuracy of Trans Union's reporting. The Trans Union credit report showed that the Top Line account was 60 days past due in December 2024 but did not contain payment history information for July through November 2024.

Plaintiff called Trans Union on December 23, 2024 to understand what Trans Union had done to reinvestigate her dispute and to dispute the Top Line debt again. Trans Union told her that it did not do any type of investigation and instead reported what Top Line told it to report. Trans Union sent plaintiff a letter that day stating that it was refusing to conduct another investigation of her dispute and would not notify Top Line that she was again disputing the account.

Plaintiff claims that the inaccurate derogatory information listed on her consumer reports as a result of Top Line and Trans Union's conduct caused her emotional distress, reputational damage, expenditure of time and resources, annoyance, aggravation, and frustration, and adversely impacted her credit rating. She states also that the inaccurate derogatory information was a substantial factor in Goldman Sachs denying her application for an Apple Credit Card on April 7, 2024. Specifically, she claims that Goldman Sachs reviewed her Trans Union credit report and, in denying her credit application, pointed to a "serious delinquency" and "amount past due on accounts"; the Top Line account was the only negative item on plaintiff's Trans Union credit report.

Plaintiff alleges that Top Line violated the FCRA by failing to conduct reasonable investigations of plaintiff's disputes after receiving notification of plaintiff's disputes from Trans

3

Union.[3]  Plaintiff also alleges that Top Line violated the FDCPA by communicating false credit information to Trans Union, using false representations and deceptive means to collect the disputed debt, and attempting to collect a debt that plaintiff did not owe.

## DISCUSSION

### I.   Standard of Review

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The Court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion for failure to state a claim.  See Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020).  To survive either motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."  See Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

### II.   Analysis

"As part of its objective to 'ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy,' the FCRA 'places distinct obligations on three

---

[3] Plaintiff also brought claims against Trans Union under the FCRA, § 1681i, and New York FCRA, N.Y. G.B.L. § 380 et seq.  The Court granted Trans Union's motion to dismiss both claims in October 2025.

types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.'" Ciment v. TransUnion, LLC, No. 24-cv-212, 2025 WL 307871, at *4 (S.D.N.Y. Jan. 27, 2025) (quoting Rosenberg v. LoanDepot, Inc., No. 21-cv-8719, 2023 WL 1866871, at *3 (S.D.N.Y. Feb. 9, 2023)). "An entity that reports credit information about consumers to credit reporting agencies is known as a furnisher," id. (citation omitted), and there is no dispute that Top Line is a furnisher.

Under § 1681s-2(b), a furnisher that "receives notice of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency ... must, among other things, '1) conduct an investigation with respect to the disputed information, 2) review all relevant information provided by the CRA, 3) report the results of the investigation to the CRA, and 4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information.'" Id. (quoting Potapova v. Toyota Motor Credit Corp., No. 23-cv-571, 2024 WL 4026216, at *1 (S.D.N.Y. Sept. 3, 2024)).

Accuracy is an essential element of a claim for violation of § 1681s-2(b) of the FCRA. Artemov v. TransUnion, LLC, No. 20-cv-1892, 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020). Because the accuracy of the disputed credit information is a threshold question, a plaintiff that fails to plead a cognizable inaccuracy fails to state a § 1681s-2(b) claim. See id. "A credit entry is inaccurate if it 'is patently incorrect, or [if] it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" Id. (quoting Kilpakis v. JPMorgan Chase Fin. Co., LLC, 229 F. Supp. 3d 133, 141 (E.D.N.Y. 2017)).

Top Line argues that the Court should grant its motion for judgment on the pleadings on the FCRA claim for the same reason that the Court granted Trans Union's motion to dismiss the

5

FCRA claim: the absence of an objectively and readily verifiable inaccuracy.  See Silver v. Top Line Reporting Inc., No. 25-cv-4375, 2025 WL 2959055, at *3 (E.D.N.Y. Oct. 16, 2025).  That ruling is the law of the case: absent "cogent and compelling reasons," the Court is not going to revisit it.  See In re Peters, 642 F.3d 381, 386 (2d Cir. 2011).  The Court thus rejects plaintiff's argument in opposition to Top Line's motion that she did, in fact, allege an objectively and readily verifiable inaccuracy.

The only way that the result will be different for Top Line than it was for Trans Union is if there is some important difference between Top Line, as a furnisher, and Trans Union, as a credit reporting agency, such that an alleged inaccuracy need not be objectively and readily verifiable to be actionable against a furnisher.  Importantly, when the Second Circuit clarified its construction of "inaccuracy," it was considering the duties of credit reporting agencies, not furnishers.  See Mader v. Experian Info. Sols., Inc., 56 F.4th 264, 269-71 (2d Cir. 2023); Sessa v. Trans Union, LLC, 74 F.4th 38, 42-44 (2d Cir. 2023).  The Second Circuit did not explicitly cabin its holdings to credit reporting agencies.  However, in Mader, the Second Circuit seemed to recognize that furnishers and credit reporting agencies are differently situated:

> Finally, we note that [plaintiff] is not without options to resolve the dispute that forms the basis for the derogatory note on his credit report.  Quite the contrary.  [Plaintiff] could dispute the debt directly with [the furnisher], which knows the nature of the loan program better than anyone else and is itself under an FCRA obligation to report accurately to credit reporting agencies.

Mader, 56 F.4th at 271.  Other circuits have found that furnishers are better positioned to investigate disputes than credit reporting agencies are to *re*investigate disputes, reasoning that a "furnisher's investigatory obligations will often be more extensive and more thorough" than a credit reporting agency's because credit reporting agencies "are third parties that lack any direct

6

relationship with the consumer." Gross v. CitiMortgage, Inc., 33 F.4th 1246, 1253 (9th Cir. 2022) (internal quotation marks and citation omitted); accord Denan v. Trans Union LLC, 959 F.3d 290, 295 (7th Cir. 2020). Thus, there is at least some reason to think that furnishers can investigate certain disputes that credit reporting agencies can't.

But absent a clear directive from the Second Circuit, this Court is not going to hold that furnishers are required to investigate inaccuracies which are not objectively and readily verifiable. Whether furnishers and credit reporting agencies have different investigatory burdens is informative from a policy perspective but is irrelevant to the issue of inaccuracy: accuracy is a threshold matter, so the alleged inaccuracy has to be the kind of thing that the FCRA requires a furnisher to investigate in the first place. And in fact, even the circuits that have recognized the higher investigatory burden on furnishers compared to credit reporting agencies were concerned with debts implicating legal disputes, not debts which evade objective verification. Gross, 33 F.4th at 1253 (the FCRA "will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance"); Denan, 959 F.3d at 295 (furnishers "are in a better position to determine the legal validity of a debt"); see also Roberts v. Carter-Young, Inc., 131 F.4th 241, 252 (4th Cir. 2025) ("[B]oth legal and factual disputes can form the basis of a § 1681s-2(b) claim, so long as they are objectively and readily verifiable."). This is consistent with Second Circuit law. See Sessa, 75 F.4th at 43 ("The question of whether a debt is objectively and readily verifiable will sometimes, as it did in Mader, involve an inquiry into whether the debt is the subject of a legal dispute. … But that does not mean that any dispute that might arguably turn on a question of law is non-cognizable under the FCRA." (Emphases in original)); Mader, 56 F.4th 264 at 272 ("[I]f a legal question is sufficiently settled so that the import on a particular

7

debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports.").

## CONCLUSION

As the Court has previously held, the existence and amount of the disputed debt was not objectively and readily verifiable. Further, there is no controlling authority stating that an alleged inaccuracy which is not objectively and readily verifiable is actionable as to a furnisher despite being inactionable as to a credit reporting agency. Plaintiff is probably right that Top Line's efforts to verify Trans Union's reporting of the disputed debt were cursory and insufficient. But because plaintiff fails to allege an actionable inaccuracy, the sufficiency of Top Line's investigation is irrelevant. Therefore, Top Line's motion for judgment on the pleadings as to the FCRA claim is granted.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
        January 28, 2026