**MALLON CONSUMER LAW GROUP, PLLC**
ATTORNEYS AT LAW
One Liberty Plaza
Suite 2301
New York NY 10006
(917) 734-6815
kmallon@consumerprotectionfirm.com

April 13, 2026

**VIA ECF**
Honorable Brian M. Cogan
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *Silver v. Top Line Reporting Inc., et al.* EDNY 1:25-cv-04375**

Dear Judge Cogan:

Plaintiff Aliyah Silver respectfully submits this letter in opposition to Defendant Top Line Reporting Inc.'s ("Top Line") request for a pre-motion conference in anticipation of a motion for summary judgment. Top Line's proposed motion would ask this Court to rule, as a matter of law, that Top Line is not a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6). That argument should be rejected for three independent reasons: (1) governing case law in this Circuit firmly establishes that using negative credit reporting as an instrument of debt collection subjects an entity to the FDCPA; (2) this Court has already ruled—from the bench, on the record—that Top Line is a debt collector, and that ruling constitutes law of the case; and (3) Top Line's own CEO admitted at deposition that negative credit reporting is explicitly marketed to landlords as a tool for collecting past-due rent, and that landlords routinely use the threat of a damaged credit report to pressure tenants into payment.

**I. The FDCPA Covers Entities That Use Credit Reporting as an Instrument of Debt Collection.**

The FDCPA defines "debt collector" to include any person who uses instrumentalities of interstate commerce in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, *directly or indirectly*, debts owed to another. 15 U.S.C. § 1692a(6) (emphasis added). The statute's coverage of indirect collection is not incidental. Section 1692e(8) — the specific provision Plaintiff invokes — expressly regulates a debt collector's communications with consumer reporting agencies, confirming that Congress understood credit reporting to be a recognized vehicle for debt collection activity.

Courts in this Circuit and nearby have consistently applied the FDCPA to entities that use credit reporting as a means of pressuring consumers to pay. In *Fritz v. Resurgent Capital Services, LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013), this Court's sister court recognized that a debt collector's furnishing of negative credit information to a CRA is actionable conduct under § 1692e(8). In *Plummer v. Atlantic Credit & Finance, Inc.*, 66 F. Supp. 3d 484 (S.D.N.Y. 2014), the court applied the FDCPA to an entity whose credit-reporting activities were intertwined with

efforts to collect a debt. In *Sutton v. Associated Credit Services, Inc.*, 2020 WL 614968 (E.D.N.Y. Jan. 9, 2020), the court held that reporting to a CRA with knowledge that the information was disputed — without noting the dispute — stated a valid § 1692e(8) claim. And in *Escobar v. Midland Credit Management, Inc.*, 2019 WL 3752532 (D. Conn. Aug. 8, 2019), the court likewise found that an entity's use of negative credit reporting to pressure payment was debt-collection activity cognizable under the FDCPA.

Top Line's argument that it is exempt from the FDCPA because it does not send dunning letters or directly demand payment is foreclosed by both the statute's text and this body of case law. A debt collector cannot immunize itself from FDCPA liability simply by choosing to pressure consumers through their credit reports rather than through traditional collection letters.

**II. This Court Has Already Determined That Top Line Is a Debt Collector.**

Top Line's proposed summary judgment motion is, at its core, an attempt to relitigate an issue this Court has already decided. During oral argument on Top Line's prior motion to dismiss, this Court addressed — directly and unambiguously — whether Top Line qualifies as a "debt collector" under the FDCPA. The Court stated:

> THE COURT: What's your purpose in furnishing the information to the CRAs? … It's to collect the debt.
>
> THE COURT: Well, that's why he retained you. He paid you money to go ahead and get that debt collected. He didn't retain you to give an objective evaluation of her credit because he was considering extending her a loan. He wanted one thing: His money paid. That makes you a debt collector, and it doesn't matter if you send her a letter or a phone call or if you have a license from New York City or not. … You definitely were retained here by the landlord to collect this debt and that makes you a debt collector. So I'm denying your motion on that ground as well.

Oral Argument Tr. (Nov. 24, 2025). The Court denied Top Line's motion on this basis. Top Line now asks the Court to reach the opposite conclusion on a fuller record. It cannot. The Court's prior ruling constitutes law of the case, and Top Line identifies no changed circumstances, intervening authority, or clear error that would warrant revisiting it.

**III. Top Line's Own CEO Admitted That Its Credit Reporting Is Used as a Debt Collection Instrument.**

Top Line's pre-motion letter selectively quotes its CEO's deposition testimony — specifically, his denials that Top Line "collects" or "demands" payment — while conspicuously omitting his admissions that directly contradict that characterization. Most damning is what Goldring said about Top Line's sales pitch to landlords: that one of the key selling points is that negative credit reporting will "help [you] collect on past rents because people don't want their credit getting messed up." Goldring Dep. 20:12-19. Goldring confirmed that having a negative mark on a credit report "is going to help the landlords collect on rent on a timely basis," and that this is expressly how Top Line markets itself to prospective landlord clients. Goldring Dep. 20:5-10. If Top Line's core sales pitch is that its reporting helps collect debts, it cannot credibly claim its principal purpose is something other than debt collection.

Goldring's deposition further confirms the debt-collection function through the "pay for deletion" practice — where landlords leverage negative tradelines to induce payment and then instruct Top Line to remove the entry. Goldring acknowledged that this occurs "very often" with Top Line's landlord clients, "specifically on, obviously, delinquent accounts":

Q. Okay. Have you ever heard the term "pay for deletion" or "pay to delete"?

A. **Yes.**

Q. What does that means?

A. **That means that a consumer has come to an agreement with the debtor, whoever they owe the money, and part of the agreement was that by paying the debt, the owner of the debt agrees to have the furnisher, whether they are the furnisher, or third party, to remove that tradeline.**

Q. But do you -- are you aware if that ever happens with customers of Top Line Reporting?

A. **Very often.**

Q. And --

A. **Not directly with Top Line Reporting.**

Q. Of course not directly, but the landlords will do that, right? They'll say, Listen, there's this --

A. **A hundred percent.**

Q. But let me finish. You're doing it again.

Pardon me.

Q. So, if the landlord says, You're delinquent. You have now negative marks on your credit. Thanks to our good friends at Top Line Reporting; however, if you pay us the money, we'll do you a favor, and we'll instruct Top Line to cease reporting this, right?

A. **Correct.**

Q. And that happens all the time?

A. **-- specifically on, obviously, delinquent accounts.**

Goldring Dep. 32:3–33:8.

These admissions—buried in the same deposition that Top Line partially quotes in its pre-motion letter—establish that Top Line's reporting serves an undeniably debt-collection function. Top Line is not a passive, neutral credit bureau. It is a tool landlords retain specifically to pressure delinquent tenants, and it actively markets itself as such. Goldring himself confirmed that the explicit pitch to landlords is that negative credit reporting "is going to help you collect on rents that are late." Goldring Dep. 18:9-19:24. Where an entity's own CEO describes its service as a mechanism for extracting past-due rent from tenants, that entity cannot disclaim FDCPA coverage by pointing to the absence of dunning letters. That is without doubt indirect debt collection under the FDCPA.

Plaintiff's own deposition testimony corroborates this conclusion. Top Line's final e-mail to Ms. Silver, sent on September 3, 2024, instructed her to "please call the management company to discuss your balance." Silver Dep. 76:9–19. When asked what she understood that directive to mean, Ms. Silver testified without hesitation: she took it as a demand to "call the management company to pay the amount that they verified and reported on my credit." Silver Dep. 75:20–25. That contemporaneous consumer perception—that Top Line's communication was a payment demand—is precisely the kind of evidence relevant to whether Top Line's conduct would mislead the least sophisticated consumer within the meaning of the FDCPA. It also directly rebuts Top Line's contention that its reporting had no connection to debt collection: Ms. Silver experienced it as exactly that.

**IV. Genuine Issues of Material Fact Preclude Summary Judgment.**

Even setting aside the Court's prior ruling and Goldring's admissions, summary judgment would be inappropriate because there are genuine disputes of material fact as to whether Top Line's principal purpose includes debt collection and whether it regularly facilitates the indirect collection of debts owed to its landlord clients. Under both prongs of the FDCPA's "debt collector" definition—the "principal purpose" test and the "regular collection" test—the determination turns on facts about how Top Line actually markets and operates its business, not merely on Goldring's characterization of it. Top Line's motion rests almost entirely on self-serving CEO denials that the company's own deposition record flatly contradicts. Where the same witness who denies debt collection acknowledges that using negative tradelines to extract payment is a routine and explicitly-marketed feature of Top Line's business model, that contradiction is for a factfinder — not this Court on summary judgment — to resolve. A pre-motion conference should be denied.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Top Line's request for a pre-motion conference and decline to authorize the proposed motion for summary judgment. The Court has already ruled that Top Line is a debt collector. The deposition record confirms it. The FDCPA was designed precisely to reach conduct of this kind.

Respectfully,

Kevin Mallon
Attorney for Plaintiff Aliyah Silver