UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ALIYAH SILVER,

Plaintiff,

-against-

TOP LINE REPORTING INC. and
TRANS UNION, LLC.,

Defendants.

---------------------------------------------------------------- X

Case No. 1:25-cv-04375-BMC

**DEFENDANT TOP LINE REPORTING INC.'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendant Top Line Reporting Inc. ("Top Line") submits this statement of undisputed material facts in support of its motion for summary judgment.

**A. Pleadings**

1. Plaintiff Aliyah Silver filed an Amended Complaint ("Complaint") on August 27, 2025. (Compl., Dkt. 9).

2. Top Line filed its Answer to the Third Cause of Action (FDCPA claim) on December 12, 2025. (Dkt. No. 31).

3. Plaintiff's claims against Trans Union under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the New York Fair Credit Reporting Act ("FCRA"), N.Y. G.B.L. § 380 et seq., were dismissed pursuant to a Memorandum Decision and Order on Trans Union's Rule 12(b)(6) motion to dismiss, entered October 16, 2025. (Dkt No. 21).

4. Plaintiff's claim against Top Line under the FCRA, 15 U.S.C. § 1681s-2(b), was dismissed pursuant to a Memorandum Decision and Order on Top Line's Rule 12(c) motion for judgment on

the pleadings, entered January 28, 2026. (Dkt No. 44). The claim against Top Line under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., is the sole remaining claim in this action.

5. Plaintiff alleges that 101 Bruckner "presumably retained Defendant Top Line Reporting in an attempt to collect a debt it alleged Plaintiff owed on her apartment." (Compl. ¶ 19.)

6. Plaintiff alleges that Top Line "qualifies as a 'debt collector' within the meaning of 15 U.S.C. § 1692(a)(6)." (Compl. ¶ 11).

7. Plaintiff alleges that Top Line violated the Fair Debt Collection Practices Act ("FDCPA") by: (i) communicating false credit information to TransUnion regarding the subject disputed debt, in violation of 15 U.S.C. § 1692e(8); (ii) using false representations and deceptive means to collect the subject disputed debt, in violation of 15 U.S.C. § 1692e(10); and (iii) attempting to collect a debt that Plaintiff did not owe, in violation of 15 U.S.C. § 1692f(1). (Compl. ¶¶ 58–61).

8. Plaintiff alleges that she "had never received a bill from Top Line, stating or itemizing the charges that were being collected from her". Instead, Top Line *merely reported* [emphasis added] that Plaintiff owed $3,820 and that she was 60 days late on that payment to Trans Union (Compl. ¶ 20).

9. The Complaint contains no factual allegations describing any specific conduct by Top Line directed at Plaintiff to demand, solicit, or collect a debt — including calls, letters, invoices, or other communications.

10. The Complaint's assertion that Top Line qualifies as a "debt collector" within the meaning of 15 U.S.C. § 1692(a)(6) is stated as a legal conclusion. (Compl. ¶¶ 11, 19, 58.)

**B. Relationship Between the Parties**

11. Plaintiff entered into a lease agreement with 101 Bruckner Realty LLC ("101 Bruckner") to rent Apartment 2F at 101 Bruckner Boulevard, Bronx, New York 10454. (Compl. ¶ 12 and lease agreement as Ex. A).

12. 101 Bruckner's property management company is JCS Realty Group. Top Line's client relationship with respect to Plaintiff's tenancy was with JCS Realty Group, the property management company for 101 Bruckner. (Goldring Dep. 21:3–6; Goldring Decl. ¶ 6).

13. Top Line contracted with 101 Bruckner's property management company to report rental payment data to consumer reporting agencies on behalf of the landlord. Top Line's compensation under that arrangement was a flat monthly fee per lease reported, regardless of whether tenants were current or delinquent on their rent. (Goldring Decl. ¶¶ 3–4).

14. Plaintiff did not have a rental agreement with Top Line (Silver Dep. 33:21–23); never signed a lease with Top Line (Silver Dep. 33:24–34:1), and Top Line was never her landlord. (Silver Dep. 34:2–3).

15. Plaintiff's communications with Top Line concerned what Top Line had reported on her credit, not collection of a rent balance. (Silver Dep. 27:2–7; 35:17–18).

16. Top Line and TransUnion operated under the Data Furnishers Reporting Agreement effective February 18, 2022 (the "Furnishing Agreement" as Ex. B)[1], under which Top Line furnished rental payment data to TransUnion as a data furnisher. The Furnishing Agreement identifies Top Line's purpose as follows: Top Line "desires to furnish information about consumers

[1] The TransUnion Data Furnishers Reporting Agreement is designated as confidential pursuant to the Protective Order entered in this matter. Accordingly, Top Line is not filing the Agreement on the public docket but is submitting a hard copy directly to the Court contemporaneously with this motion.

to TransUnion for inclusion into TransUnion's consumer reporting database(s) consistent with the furnisher responsibilities set forth in Section 623 of the FCRA." (Furnishing Agreement, § 1(C)).

17. The contractual relationship between Top Line and JCS Realty Group (the "Landlord") was established through The Rent Tracker Services Agreement dated July 26, 2022 (the "Rent Tracker Agreement"), entered into between The Rent Tracker, LLC ("TRT") and JCS Realty LLC. (Ex. C)[2]. The Rent Tracker, LLC is the exclusive sales company for Top Line Reporting Inc. and serves as the sole point of contact between Top Line and its landlord and property management clients. All client-facing sales and contracting with landlords and property management companies are conducted through The Rent Tracker, LLC on Top Line's behalf. As a result, the Rent Tracker Agreement is executed in TRT's name rather than Top Line's name, though it governs the credit reporting services provided by Top Line.

18. Under the Rent Tracker Agreement, the scope of services is defined exclusively as "tenant credit reporting of Client's tenants payment history" — specifically "monthly credit reporting for current payment history" to TransUnion and Equifax Client's tenants payment history" (Rent Tracker Services Agreement § 1.1).

19. The Rent Tracker Agreement provides for a flat fee per month for credit reporting services. TRT's compensation under the agreement is fixed and does not vary based on whether any tenant pays an outstanding balance. (Rent Tracker Services Agreement, Section 2.1 Rate Schedule).

20. Top Line does not collect debts on behalf of the landlord. Top Line's sole business is to function as a credit reporting data furnisher on behalf of property operators, owners, and

[2] The agreement between The Rent Tracker, LLC and JCS Realty LLC is designated as confidential pursuant to the Protective Order entered in this matter. Accordingly, Top Line is not filing the Agreement on the public docket but is submitting a hard copy directly to the Court contemporaneously with this motion.

management companies by reporting rental payment data to consumer reporting agencies (Goldring Dep. 10:4–12).

21. Top Line does not collect any money for the landlord. (Goldring Decl. ¶ 11; Goldring Dep. 62:15–19).

22. Top Line's compensation is not contingent on whether any debt is ultimately paid or on how much, if any, of the debt is paid by the tenant. (Goldring Decl. ¶ 4; Goldring Dep. 21:24–22:7).

23. Rather, Top Line is paid a single monthly subscription fee by the landlord based on the number of occupied leases being reported per month. This fee is the same regardless of whether any given tenant pays rent on time or is delinquent. Top Line receives no bonuses or additional compensation of any kind based on whether tenants pay their outstanding balances. (Goldring Decl. ¶ 4; Goldring Dep. 22:1–7.)

**C. <u>Top Line's Relationship with Plaintiff</u>**

24. Plaintiff did not have a rental agreement, lease, or any other contract with Top Line (Silver Dep. 33:21–34:3).

25. Top Line was not Plaintiff's landlord for her apartment (Silver Dep. 33:21–34:3).

26. After engaging in communications with JCS Realty regarding her rent balance, Plaintiff learned of Top Line's reporting when she reviewed her credit report and saw a tradeline reported by Top Line (Silver Dep. 22:10-16).

27. Plaintiff never received a bill from Top Line, stating or itemizing the charges that were being collected from her. (Compl. ¶ 20).

28. Top Line never called Plaintiff demanding payment for a debt. (Silver Dep. 33:1–3).

29. Top Line never sent Plaintiff an email or any other communication indicating that she owed money. (Silver Dep. 35:5–9).

30. Top Line never demanded payment from Plaintiff (Silver Dep. 38:14–16).

31. All written payment demands Plaintiff received came exclusively from 101 Bruckner Realty LLC and JCS Realty Group. (Silver Dep. 13:7–9; 34:4–9; correspondence with property management as Ex. D).

32. The only communications between Plaintiff and Top Line concerned Plaintiff's dispute of the tradeline Top Line had reported on her credit.

33. Plaintiff confirmed that her communications to Top Line were about disputing the information reported to TransUnion, not about collection of any rent balance. (Silver Dep. 27:2–7; 35:17–18; correspondence with Top Line as Ex. E)

**D. <u>Damages</u>**

34. Plaintiff claims $10,000 in economic damages. (Ex. F; Pl.'s Resp. to Top Line's Interrogatories, No. 8).

35. As of the February 11, 2026 deposition, Plaintiff's credit score had returned to "excellent" on the banking apps including Capital One app (Silver Dep. 41:5–8; 57:21–23).

36. The January 5, 2026 TransUnion credit report contains no Top Line tradeline and reflects only satisfactory accounts — American Express, Bank of America, and two Capital One accounts (Ex. G).

Dated: May 11, 2026
New York, New York

Respectfully submitted,

LAW OFFICE OF BHAVLEEN SABHARWAL

By: Bhavleen S
Bhavleen Sabharwal, Esq.
261 Madison Avenue, Suite 1063
New York, New York 10016
Telephone: (917) 597-5984
Bsabharwal@bsablaw.com
*Attorney for Defendant Top Line Reporting Inc.*

To:

Kevin C. Mallon, Esq.
Mallon Consumer Law Group, PLLC
One Liberty Plaza, Suite 2301
New York, New York 10006
Tel: (646) 713-1008
kmallon@consumerprotectionfirm.com

Brian L. Bromberg, Esq.
Bromberg Law Office, P.C.
99 Main Street
Nyack, New York 10960
Tel: (212) 248-7906
Brian@bromberglawoffice.com

*Attorneys for Plaintiff Aliyah Silver*