UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X Case No.: 1:25-cv-04375-BMC

ALIYAH SILVER,
Plaintiff,

v.

TOP LINE REPORTING INC. and
TRANS UNION, LLC,
Defendants.

----------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................ 5

ARGUMENT ........................................ 10

LEGAL STANDARD FOR SUMMARY JUDGMENT ........................................ 10

I PLAINTIFF'S FDCPA CLAIM FAILS BECAUSE THE COMPLAINT DOES NOT ALLEGE THE REQUIRED ELEMENTS AND INVOLVES CREDIT REPORTING ACTIVITY, NOT DEBT COLLECTION ........................................ 11

ELEMENT ONE: OBJECT OF DEBT COLLECTION EFFORTS ........................................ 11

ELEMENT TWO: DEBT COLLECTOR STATUS ........................................ 12

ELEMENT THREE: ACT OR OMISSION VIOLATING THE FDCPA ........................................ 13

II. TOP LINE IS NOT A "DEBT COLLECTOR" UNDER THE FDCPA AND PLAINTIFF'S FDCPA CLAIM MUST BE DISMISSED ........................................ 14

A. TOP LINE'S PRINCIPAL PURPOSE IS CREDIT REPORTING, NOT DEBT COLLECTION ........................................ 14

B. TOP LINE DOES NOT "REGULARLY COLLECT" DEBTS ON BEHALF OF OTHERS ........................................ 18

III. PLAINTIFF CANNOT ESTABLISH RECOVERABLE DAMAGES UNDER THE FDCPA ........................................ 18

IV. PLAINTIFF'S ALLEGED EMOTIONAL DISTRESS IS NOT CAUSALLY CONNECTED TO ANY CLAIMED DEBT COLLECTION CONDUCT ........................................ 19

CONCLUSION ........................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ........................................................ 10

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) .................................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ................................................................. 10

*Cohen v. Ditech Fin., LLC*, 342 F.Supp.3d 460, at 10 (S.D.N.Y. Sept. 21, 2018) ...................... 15

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)............................... 10

*Donahue v. NFS, Inc.*, 781 F. Supp. 188, 193 (W.D.N.Y. 1991).................................................. 19

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir.2004)..11, 14, 16

*Keswani v. Athwal*, No. 20-CV-10578, 2021 WL 4198235, at *3 (S.D.N.Y. Sept. 14, 2021)......11

*Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 820 (N.D. Iowa 2015) ............ 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).......................... 10

*Owoyemi v. Credit Corp Solutions Inc.*, 596 F. Supp. 3d 514, 520 (S.D.N.Y. 2022) ..................11

*Owusu v. New York State Insurance*, 655 F. Supp. 2d 308, 321 (S.D.N.Y. 2009)...................... 17

*Polanco v. NCO Portfolio Management, Inc.*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015)................ 17

*Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013).............................................. 10

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ........................................................................ 19

*Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010)...................... 17

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ............................................................ 19

*Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013) .................................................... 18

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ................................................................... 10

**Statutes**

15 U.S.C. § 1681 .......... 5

15 U.S.C. §§ 1692 .......... 5, 12, 13, 14, 18

Federal Rule of Civil Procedure 56(a) .......... 10

N.Y. G.B.L. § 380 .......... 5

Plaintiff Aliyah Silver ("Plaintiff") alleges that Top Line Reporting Inc. ("Top Line") violated the Fair Debt Collection Practices Act ("FDCPA") by reporting a delinquent rental balance to TransUnion. (ECF Dkt. No. 9, ¶ 1).

As discussed herein, Top Line is a data furnisher — a company whose entire business is reporting tenant rental payment history to credit bureaus on behalf of landlords. Its landlord clients pay a flat subscription fee, and Top Line receives the identical fee regardless of whether any tenant pays a penny toward an outstanding balance.

This is not the economic model of a debt collector; it is the model of a data vendor. Because debt collection is not Top Line's principal purpose — or any part of its business — it is not a "debt collector" under the FDCPA, and Plaintiff's sole remaining claim fails at the threshold.

For the reasons set forth below, summary judgment should be granted to Top Line in its entirety.

## FACTUAL BACKGROUND

Plaintiff's claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the New York Fair Credit Reporting Act ("NY FCRA"), N.Y. G.B.L. § 380 et seq., against TransUnion were dismissed by this Court on October 16, 2025. (ECF Dkt. No. 21). Plaintiff's FCRA claim against Top Line was subsequently dismissed on January 28, 2026. (ECF Dkt. No. 44). Plaintiff's Third Cause of Action — the sole remaining claim — alleges that Top Line violated 15 U.S.C. §§ 1692e(8), 1692e(10), and 1692f(1), and asserts as damages "damage to [her] [sic] credit and emotional distress". (ECF Dkt. No. 9, ¶ 62). The FDCPA cause of action does not assert a claim for statutory or punitive damages.

Top Line is a consumer data reporting company. Its sole business is to function as a credit reporting data furnisher on behalf of property operators, owners, and management companies by

reporting rental payment data to consumer reporting agencies. Top Line works exclusively with multi-family residential landlords and provides no other services. (Goldring Decl. ¶ 2).

Top Line operates on a subscription-based revenue model. Landlords pay Top Line a flat monthly fee based on the number of occupied leases being reported per month. This fee is the same regardless of whether any given tenant pays their rent on time or is delinquent. Top Line does not receive any bonuses, contingency payments, or additional compensation based on whether tenants pay their outstanding balances. Top Line earns the same flat fee every month whether it is reporting positively or negatively on any given tenant's account. (SOF ¶ 22). Under the Rent Tracker Services Agreement, the applicable fee is assessed each month for single-bureau reporting or per month for reporting to all three major credit bureaus. (Rent Tracker Services Agreement § 2.1)[1].

Top Line's reporting relationship with TransUnion is governed by the Data Furnishers Reporting Agreement effective February 18, 2022 (Ex. B). Under that agreement, Top Line agreed to furnish "information from its Property Owners about consumer tenants with whom the Property Owner has established leases for residential occupation of a dwelling." Top Line executed the agreement as a "Servicer" — defined as an organization that "collects rental payment data from Property Managers and/or Property Owners and/or otherwise manages the rental payment transaction on behalf of a Property Manager and/or Property Owner." Notably, Top Line did not check the boxes identifying it as a "Lender," "Collection Agency," or "Debt Purchaser." (Data Furnishers Reporting Agreement § 1(B) as Ex. B).[2]

---

[1] The Rent Tracker Services Agreement is designated as confidential pursuant to the Protective Order entered in this matter. Accordingly, Top Line is not filing the Agreement on the public docket but is submitting a hard copy directly to the Court contemporaneously with this motion.

[2] The TransUnion Data Furnishers Reporting Agreement is designated as confidential pursuant to the Protective Order entered in this matter. Accordingly, Top Line is not filing the Agreement on the public docket but is submitting a hard copy directly to the Court contemporaneously with this motion.

Top Line does not collect debts. Top Line does not contact consumers to demand or collect payment. Top Line does not accept payments from tenants, does not negotiate payment terms with tenants, does not send demand letters to tenants, and does not make collection calls to tenants. Top Line does not act as a third-party debt collector in any capacity and does not seek to induce any tenant to make a payment on any claimed balance. Top Line has no policies or procedures under the FDCPA because the FDCPA does not apply to Top Line's business. (Goldring Decl. ¶ 11).

Additionally, Top Line also does not negotiate debts, offer settlements, engage in "pay-for-delete" arrangements, or communicate with tenants regarding payment terms whatsoever. Any negotiation, settlement discussions, payment arrangements, or decisions regarding the removal of negative tradelines are handled exclusively by the landlord or property management company directly. If a landlord or management company independently reaches an agreement with a tenant and instructs Top Line to update or modify the reporting status accordingly, Top Line simply processes the reporting update as directed. (Goldring Decl. ¶ 12).

Top Line's model requires "transparent reporting": landlords who enroll in Top Line's services must report every tenant in the building — current, delinquent, and new tenants alike — each month. Landlords cannot pick or choose which tenants to report. They must report positive payment history in order to report negative payment history. Top Line does not selectively report only delinquent accounts. The reporting process is automated: property management software transmits tenant ledger data to Top Line's system, which then processes it and submits it to the credit bureaus. Top Line currently reports to TransUnion and Equifax and reports approximately 60,000 to 75,000 tradelines per month across all of its landlord clients. (Goldring Decl. ¶¶ 8–10).

The Rent Tracker, LLC ("TRT") is a separate limited liability company that serves as the exclusive sales and client-facing entity for Top Line. TRT is responsible for all sales activity,

landlord outreach, and client contracting on Top Line's behalf. TRT does not communicate with tenants or consumers in any capacity — its relationships are limited entirely to the landlord side of the transaction. (Ex. C; Goldring Decl. ¶ 5).

The Services Agreement governing Top Line's relationship with JCS Realty LLC — the property management company for 101 Bruckner Realty LLC — was executed by The Rent Tracker, LLC as Top Line's exclusive sales company. (Goldring Decl. ¶ 6). The agreement, executed July 26, 2022 between TRT and JCS Realty LLC, expressly defines the scope of services as "tenant credit reporting of Client's tenants payment history" — specifically "monthly credit reporting for current payment history". (§ 1.1 of Rent Tracker Services Agreement). The agreement contains no provision for debt collection, payment demands, or any communication with tenants (Rent Tracker Services Agreement §§ 1.1, 2.1). The agreement provides for a flat fee of per month, with no contingency, variable compensation, or incentive tied to whether any tenant pays an outstanding balance. (Goldring Decl. ¶ 7; Rent Tracker Services Agreement § 2.1 as Ex. C).

Plaintiff entered into a lease agreement with 101 Bruckner Realty LLC to rent an apartment at 101 Bruckner Boulevard, Bronx, New York. (Compl. ¶ 12). Plaintiff claims she vacated her apartment in May 2024 and that she paid the rent due for May 2024 and directed the landlord to apply her security deposit to June 2024 rent. (Compl. ¶¶ 14–15).

Plaintiff did not have a rental agreement, lease, or any other contract with Top Line (Silver Dep. 33:21–24). Top Line was never Plaintiff's landlord (Silver Dep. 34:2–3).

Top Line furnished a tradeline to TransUnion for Plaintiff's account and reported that Plaintiff owed $3,820 and that she was 60 days late on that payment to TransUnion. (Compl. ¶ 20). Plaintiff confirmed at her deposition that she understood Top Line had given information to

TransUnion reflecting that she was 60 days late as of end of July or early August, and that the amount reported was $3,820.60. (Plaintiff's deposition excerpt as Ex. H; Silver Dep. 26:11–13). At no time prior to this had Top Line ever contacted Plaintiff directly about an outstanding balance. Top Line never mailed Plaintiff a letter demanding payment, never called Plaintiff demanding payment, and never sent Plaintiff an email indicating that she owed money. (SOF ¶¶ 28–30)

All communications between Plaintiff and Top Line were limited to Plaintiff's dispute of the credit information Top Line had reported to TransUnion. Plaintiff emailed Top Line's disputes inbox beginning in August 2024, asking about the status of her dispute and contesting the accuracy of the reported tradeline. Top Line's responses were limited to requesting and providing ledger information in connection with the dispute investigation (Correspondence with Top Line as Ex. E).

Plaintiff testified that her e-mails to Top Line were "disputing what they reported" on her credit, and not a discussion of what her landlord claimed she owed. (Silver Dep. 27:2–4; 28:7–10). Plaintiff confirmed that Top Line never asked her to pay the rent balance or demanded payment for that balance. (Silver Dep. 38:12–16). Plaintiff testified that JCS Realty and 101 Bruckner were the only parties that emailed her claiming she had an outstanding balance. (SOF ¶ 29).

Plaintiff testified her credit score had returned to "excellent" as reflected on the Capital One app (Silver Dep. 41:5–8; 57:21–23). The January 5, 2026 TransUnion credit report lists only satisfactory accounts — American Express, Bank of America, and Capital One — all reflecting current status with no past due amounts. (Ex. G). The Top Line tradeline does not appear in the account section of the report. (SOF ¶ 36).

## ARGUMENT

### Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must construe all evidence in the light most favorable to the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on mere allegations or pleadings. *Anderson*, 477 U.S. at 248; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Statements that are devoid of any specific, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is appropriate where the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013).

## I PLAINTIFF'S FDCPA CLAIM FAILS BECAUSE THE COMPLAINT DOES NOT ALLEGE THE REQUIRED ELEMENTS AND INVOLVES CREDIT REPORTING ACTIVITY, NOT DEBT COLLECTION

The plaintiff in an FDCPA action bears the burden of proving that the defendant was a debt collector at the time it issued the challenged communication. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir.2004). To plausibly assert a claim under the FDCPA, a plaintiff "must allege that: 1) she is a 'consumer' who allegedly owes the debt, or a person who has been the object of efforts to collect a consumer debt; 2) that the defendant collecting the debt is a 'debt collector;' and 3) that the defendant has engaged in an act or omission in violation of FDCPA requirements." *Owoyemi v. Credit Corp Solutions Inc.*, 596 F. Supp. 3d 514, 520 (S.D.N.Y. 2022) (quoting *Keswani v. Athwal*, No. 20-CV-10578, 2021 WL 4198235, at *3 (S.D.N.Y. Sept. 14, 2021)).

In *Owoyemi*, the Southern District dismissed an FDCPA claim with prejudice — finding amendment futile — where, as here, a plaintiff alleged that a credit data furnisher wrongfully reported a derogatory tradeline to the national credit bureaus. The court held that "the FDCPA is directed to debt collection practices and therefore does not appear to encompass the subject of Owoyemi's allegations," and that the claim "involves credit reporting not efforts to collect a debt." *Owoyemi*, 596 F. Supp. 3d at 520, 522 (Ex. J as Caselaw). The same conclusion compels dismissal here.

**Element One: Object of Debt Collection Efforts**

The Complaint acknowledges that "Plaintiff had never received a bill from Top Line, stating or itemizing the charges that were being collected from her. Instead, Top Line merely reported that Plaintiff owed $3,820 and that she was 60 days late on that payment to Trans Union." (Compl. ¶ 20). By its own terms, the Complaint concedes that Plaintiff was never the object of any

effort by Top Line to collect a debt. Plaintiff confirmed this under oath: Top Line never mailed her a letter demanding payment, never called her demanding payment, never sent her an email indicating that she owed money, and did not even have her mailing address. (Silver Dep. 32:23–25; 33:1–9; 35:5–9). The relevant excerpts are copied below:

> Did Top Line ever mail you a letter demanding payment for a debt? A. No" **(**Ex. H, Silver Dep. 32:23–25).
>
> Did Top Line ever call you demanding payment for a debt? A. No. And I should say to the e-mail, to the mail that you — the question about the mail, they didn't have my address anyway . . . Top Line doesn't have your address? A. Correct" (Silver Dep. 33:1–9).
>
> Did Top Line ever send you an e-mail or send you any kind of communication indicating that you owed money? A. No. They never sent me an e-mail saying that I owed money" (Silver Dep. 35:5–9).

Just as in *Owoyemi*, where the plaintiff never alleged being the object of collection efforts — only that a derogatory report was filed — Plaintiff here cannot satisfy this threshold element. Reporting to a credit bureau is not a collection effort directed at a consumer. *Owoyemi*, 596 F. Supp. 3d at 520.

**Element Two: Debt Collector Status**

The Complaint offers only the bare legal conclusion that "Defendant Top Line Reporting Inc. is a debt collector as defined in 15 U.S.C. § 1692(a)(6)." (Compl. ¶ 58). This is precisely the type of conclusory assertion that is insufficient under *Iqbal* and *Twombly*. The Complaint pleads no facts supporting this characterization — no allegation that debt collection is Top Line's principal purpose, no allegation that Top Line regularly collects debts owed to another, and no allegation that Top Line engaged in any conduct directed at inducing payment from Plaintiff or any other consumer. To the contrary, Top Line's CEO testified under oath: "Top Line Reporting is not subject to FDCPA. We do not collect debt. We do not accept payments or demand payments. We

don't negotiate payments, nor do we seek to induce any kind of payments. We don't act as any kind of third-party collector" (Ex. I; Goldring Dep. 62:15–19; 62:21–22).

Top Line is a credit reporting data furnisher whose sole business is reporting rental payment data to consumer reporting agencies on behalf of landlords. (Goldring Decl. ¶ 2). As the *Owoyemi* court found in dismissing an identical bare-label allegation against a credit data furnisher, a conclusory assertion of debt collector status unsupported by factual allegations of collection conduct does not plausibly state the second element *Owoyemi*, 596 F. Supp. 3d at 520.

**Element Three: Act or Omission Violating the FDCPA**

Plaintiff's three allegations regarding the FDCPA violations are: communicating false credit information to TransUnion under 15 U.S.C. § 1692e(8); using false representations and deceptive means to collect the disputed debt under 15 U.S.C. § 1692e(10); and attempting to collect a debt Plaintiff did not owe under 15 U.S.C. § 1692f(1) (Compl. ¶¶ 59–61). Each of these alleged violations is premised on a single act: reporting information to TransUnion. The *Owoyemi* court directly addressed the same provision — § 1692e(8) — and held that credit reporting to a bureau is not an act cognizable under the FDCPA because "the FDCPA is directed to debt collection practices" *Owoyemi*, 596 F. Supp. 3d at 520.

Furnishing data to a credit bureau is regulated by the FCRA, not the FDCPA. Plaintiff already pursued FCRA claims against Top Line arising from precisely this conduct, and those claims were dismissed by this Court. Plaintiff is attempting to repackage dismissed FCRA conduct as FDCPA violations by relabeling the same act of credit bureau reporting as a "false representation" or "deceptive means."

## II. TOP LINE IS NOT A "DEBT COLLECTOR" UNDER THE FDCPA AND PLAINTIFF'S FDCPA CLAIM MUST BE DISMISSED

Even if Plaintiff had adequately pled the threshold elements of an FDCPA claim — which she has not — her claim independently fails because Top Line is not a "debt collector" within the meaning of the statute. The FDCPA defines "debt collector" as any person who uses "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute "establishes two alternative predicates for 'debt collector' status — engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2004). Top Line satisfies neither prong.

### A. Top Line's Principal Purpose Is Credit Reporting, Not Debt Collection

Under the "principal purpose" prong, a court must evaluate the overall business of the entity — not the purpose of a single communication or transaction — to determine whether debt collection is its "most important aim." As courts have consistently explained, the statute "plainly refers to the 'principal purpose' of the defendant's business, not the principal purpose of a particular communication." *Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 820 (N.D. Iowa 2015). The undisputed facts establish that Top Line's principal purpose is credit data reporting — not debt collection.

In Top Line's Data Furnishing Agreement with TransUnion (Ex. B), Top Line identified itself as a "Servicer" — defined as an organization that "collects rental payment data from Property Managers and/or Property Owners and/or otherwise manages the rental payment transaction on

behalf of a Property Manager and/or Property Owner" and expressly declined to check the boxes for "Collection Agency" or "Debt Purchaser."

Top Line's written services agreement with JCS Realty — the property management company for 101 Bruckner Realty LLC — describes the scope of services exclusively as "tenant credit reporting of Client's tenants payment history" and "monthly credit reporting for current payment history," with no provision whatsoever for debt collection, payment demands, or communication with tenants (Ex. C; Rent Tracker Services Agreement § 1.1).

Top Line's compensation structure confirms this. Landlord clients pay a flat subscription fee of per month — a fee that is identical regardless of whether any tenant pays a single dollar of rent owed. Top Line receives no bonuses, contingency payments, or incremental compensation tied to tenant payments or recovery of delinquent balances (Goldring Decl. ¶¶ 3–4; Rent Tracker Services Agreement § 2.1). Top Line profits identically whether a tenant is current or months past due. "Safeguard's compensation was not contingent on whether the debt is ultimately paid. . . . Safeguard is paid a single, flat fee for a contact attempt inspection" *Cohen v. Ditech Fin., LLC*, 342 F.Supp.3d 460, at 10 (S.D.N.Y. Sept. 21, 2018).

Indeed, if a landlord's principal goal in engaging Top Line were to collect a delinquent debt — as Plaintiff argues — a traditional third-party debt collection agency would be a far more cost-effective means of achieving that result. Debt collection agencies routinely operate on a contingency basis, meaning the landlord pays nothing unless and until a debt is actually recovered. By contrast, Top Line charges a flat monthly subscription fee, regardless of whether any tenant ever pays an outstanding balance. A landlord who retains Top Line for the purpose of debt collection would therefore be paying a guaranteed monthly fee to achieve an outcome that a contingency-based collection agency would pursue at no upfront cost. No rational economic actor

seeking to collect a debt would choose the more expensive, indirect, and uncertain route of credit bureau reporting over a no-cost contingency arrangement with a collection firm (Goldring Decl. ¶¶ 16–18).

Courts have found entities far more involved in debt-related activities than Top Line to fall outside the FDCPA's definition. In *Cohen,* the Court held that Safeguard Properties — a mortgage field services company that conducted contact inspections of properties on behalf of delinquent mortgage servicers, left door hangers directing borrowers to call their mortgage company, and performed over 3,000 such inspections — was not a "debt collector" because its "principle purpose is not debt collection" and its "compensation was not contingent on whether the debt is ultimately paid". (Ex. J). Top Line's connection to the debt-collection process is even more attenuated than Safeguard's: Top Line communicates with no tenants at all, leaves no door hangers, makes no contact attempts, and receives no information about the unpaid principal balance or amount of any debt at issue. Top Line simply receives automated ledger data from property management software and transmits it to credit bureaus. (Goldring Decl. ¶¶ 8–9).

In *Goldstein*, the Second Circuit focused the "principal purpose" inquiry on what the entity's business actually does, not on how consumers or creditors might subjectively perceive the entity's actions. The Court found sufficient evidence of debt-collector status where the law firm had issued 145 three-day payment demand notices to tenants within a single 12-month period, issued notices every single month — more than ten per month in at least seven of those months — maintained an ongoing client relationship specifically for the purpose of collecting rent arrears, assigned a paralegal to review each notice, and retained an outside computer service to generate them. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 63 (2d Cir. 2004) (Ex. J). Top Line has done none of those things and there is no evidence in the record to the

contrary. A data furnisher is not converted into a debt collector simply because negative credit reporting may, as an incidental consequence, motivate some tenants to pay debts owed to their landlords. Plaintiff cannot rescue her FDCPA claim by pointing to the fact that credit reporting may cause tenants to want to pay their debts to protect their credit scores.

In *Owusu v. New York State Insurance*, 655 F. Supp. 2d 308, 321 (S.D.N.Y. 2009), the Southern District held that an entity that reported customer information to a credit reporting agency was not a "debt collector" under the FDCPA because reporting customer information and collecting debts are legally and functionally distinct activities. Top Line's role is precisely analogous.

The principal-purpose analysis focuses on the defendant's business activities, not on downstream consequences to consumers. *See Goldstein*, 374 F.3d at 61. Top Line gains no financial benefit from any tenant paying rent on time or bringing a delinquent account current. (Goldring Decl. ¶ 15.)

By contrast, entities that courts have found to be debt collectors are engaged in categorically different activities. In *Polanco v. NCO Portfolio Management, Inc.*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015), the court found that "hiring a third party debt collection agency or law firm to assist in everyday debt collection activities falls squarely within" the definition of debt collector. In *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), an entity in the business of buying defaulted debts and filing over 100,000 collection lawsuits was plainly a debt collector. Neither case bears any resemblance to Top Line, which files no lawsuits, makes no collection calls, and has no mechanism for collecting debts.

**B. Top Line Does Not "Regularly Collect" Debts on Behalf of Others**

Top Line also fails to meet the "regularly collects" prong of the FDCPA's definition. Top Line never mailed Plaintiff a letter demanding payment, never called Plaintiff demanding payment for a debt, and never sent Plaintiff any email indicating that she owed money. (Silver Dep. 32:23–25; 33:1–3; 35:5–9).

The Second Circuit has held that "collecting debts does not mean any action no matter how slight" and that the term "debt collector" "must mean something more than any role, no matter how tangential, in the collection process". *Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013). Acting as a mere "conduit" for a collection process is not enough. *Id.* at 104. Top Line's automated, subscription-based data reporting to credit bureaus does not rise to this level, and falls squarely within the category of conduct that courts have found insufficient to constitute debt collection activity.

## III. PLAINTIFF CANNOT ESTABLISH RECOVERABLE DAMAGES UNDER THE FDCPA

Even if this Court were to find that Top Line is a "debt collector" — which it is not — Plaintiff's FDCPA claim independently fails because she cannot demonstrate recoverable actual damages proximately caused by Top Line's conduct.

Plaintiff's FDCPA cause of action seeks actual damages only — specifically "damage to [her] [sic] credit and emotional distress". (Compl. ¶ 62). The complaint asserts no claim for statutory or punitive damages in connection with the FDCPA cause of action.

To establish standing and sustain an actual damages award, Plaintiff must demonstrate a concrete injury traceable to Top Line's conduct. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("No concrete harm, no standing."). The record fails to support such a showing.

Plaintiff testified that her credit score had returned to "excellent" as reflected on the Capital One app. (Silver Dep. 57:22–23). The January 5, 2026 TransUnion credit report (Ex. G) lists only satisfactory accounts — American Express, Bank of America, and Capital One — all reflecting current status with no past due amounts. The Top Line tradeline does not appear anywhere in the account section of the report.

## IV. PLAINTIFF'S ALLEGED EMOTIONAL DISTRESS IS NOT CAUSALLY CONNECTED TO ANY CLAIMED DEBT COLLECTION CONDUCT

Even setting aside Top Line's threshold argument that it is not a debt collector, Plaintiff's emotional distress claim independently fails because she cannot establish the required causal nexus between Top Line's conduct and her claimed distress.

Courts have held that while a plaintiff need not satisfy the heightened showing of emotional distress required under state law to recover actual damages under the FDCPA, "there must be some reasonable nexus between the nature of the defendant's conduct and the emotional and physical distress which the plaintiff claims to have suffered." *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 193 (W.D.N.Y. 1991). In *Donahue*, the court awarded only $100 in actual damages where the plaintiff failed to show that her emotional distress was attributable specifically to the defendants' debt collection conduct, as opposed to the collection efforts of other agencies. *Id.* at 193–94. The nexus between the defendants' conduct and the plaintiff's claimed distress was, in the court's words, "strained at best." *Id.* at 193.

Here, that nexus is entirely absent — and Plaintiff's own testimony makes this plain. When asked to describe her emotional distress, Plaintiff testified: "From the moment that I got the credit report, like I get panic anxiety from that and that's very difficult". (Silver Dep. 48:24–25). She further testified that her stress stems from "trying to clear my name from misinformation, false

information is extremely anxiety inducing". (Silver Dep. 49 4-5)… and having to "dispute false information against my credit". (Silver Dep. 57:15-17).

It is clear that the testimony pertains to alleged anxiety induced because of credit reporting and the FDCPA damages paragraph in the Complaint is sparse as Plaintiff experienced no harm from alleged debt collection conduct.

## CONCLUSION

For the foregoing reasons, Top Line respectfully requests that the Court grant summary judgment in its favor in its entirety, and dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted,

Bhavleen Sabharwal
Bhavleen S
Law Office of Bhavleen Sabharwal
261 Madison Avenue, Suite 1063
New York, NY 10016
(917) 597-5984
Bsabharwal@bsablaw.com
Attorney for Defendant Top Line Reporting Inc.

TO:

Kevin C. Mallon, Esq.
Mallon Consumer Law Group, PLLC
One Liberty Plaza, Suite 2301
New York, New York 10006
Tel: (646) 713-1008
kmallon@consumerprotectionfirm.com

Brian L. Bromberg, Esq.
Bromberg Law Office, P.C.
99 Main Street
Nyack, New York 10960
Tel: (212) 248-7906
Brian@bromberglawoffice.com

*Attorneys for Plaintiff Aliyah Silver*