UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

ALIYAH SILVER,

Plaintiff,

-against-

TOP LINE REPORTING INC. and
TRANS UNION, LLC.,

Defendants.

---------------------------------------------------------------- X

Case No. 1:25-cv-04375-BMC

**DECLARATION OF HENRY GOLDRING IN SUPPORT OF DEFENDANT TOP LINE REPORTING INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

TZVI (HENRY) GOLDRING, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the CEO and Executive Director of defendant Top Line Reporting Inc. ("Top Line"), and, as such, I am fully familiar with the facts set forth, and circumstances described, herein. I submit this declaration in support of Top Line's motion for summary judgment to dismiss the complaint. I have held this position since the company's founding, approximately four years ago, and I oversee all departments and operations of the company, including compliance and legal matters.

2. Top Line is a consumer data reporting company. Its sole business is to function as a credit reporting data furnisher on behalf of property operators, owners, and management companies by reporting rental payment data to consumer reporting agencies ("CRAs"). Top Line works exclusively with multi-family residential landlords and provides no other services.

3. Top Line operates on a subscription-based revenue model. Landlords pay Top Line a flat monthly fee based on the number of occupied leases being reported per

month.

4. This fee is the same regardless of whether any given tenant pays their rent on time or is delinquent. Top Line does not receive any bonuses, contingency payments, or additional compensation based on whether tenants pay their outstanding balances. Top Line earns the same flat fee every month whether it is reporting positively or negatively on any given tenant's account.

5. The Rent Tracker, LLC is a separate limited liability company that serves as the exclusive sales and client-facing entity for Top Line. TRT is responsible for all sales activity, landlord outreach, and client contracting on Top Line's behalf.

6. Accordingly, the Services Agreement governing Top Line's relationship with JCS Realty LLC — the property management company for 101 Bruckner Realty LLC — was executed by The Rent Tracker, LLC as Top Line's exclusive sales company. A true and correct copy of the Rent Tracker Services Agreement with the landlord in this matter, JCS Realty dated July 26, 2022 is annexed hereto as Exhibit C.

7. The agreement expressly defines the scope of services as "tenant credit reporting of Client's tenants' payment history" — specifically "monthly credit reporting for current payment history" — and contains no provision for debt collection, payment demands, or any communication with tenants. The agreement provides for a flat fee of one dollar per unit per month, with no contingency, variable compensation, or incentive tied to whether any tenant pays an outstanding balance.

8. When a landlord subscribes to Top Line's service, Top Line automatically reports every tenant in the building to the applicable Credit Reporting Agencies

("CRAs") each month—current tenants, delinquent tenants, and new tenants alike. Top Line does not selectively report only delinquent accounts. A fundamental condition of Top Line's service, which is communicated to all landlord clients at the time of enrollment, is that landlords must engage in what is known as "transparent reporting": they cannot pick or choose which tenants to report. They must report positive payment history in order to report negative payment history. Accordingly, a tenant who pays rent on time every month is reported to the credit bureaus just like a tenant who is not paying on time.

9. Top Line and TransUnion operate under the "Transunion Data Furnishers Reporting Agreement" effective February 18, 2022 (the "Furnishing Agreement" as Ex. B), under which Top Line furnished rental payment data to TransUnion as a data furnisher. The Furnishing Agreement identifies Top Line's nature of business as a "Servicer" which is defined as "an organization that collects rental payment data from Property Managers and/or Property Owners and/or otherwise manages the rental payment transaction on behalf of a Property Manager and/or Property Owner." (Furnishing Agreement § 1(B)(vii).) Notably, Top Line did not check the box where it would identify itself as a "Collection Agency" or "Debt Purchaser" — the other available designations under the Agreement. The Furnishing Agreement further states that Top Line "desires to furnish information about consumers to TransUnion for inclusion into TransUnion's consumer reporting database(s) consistent with the furnisher responsibilities set forth in Section 623 of the FCRA." (Furnishing Agreement § 1(C).)

10. Top Line currently reports to TransUnion and Equifax and reports approximately 60,000 to 75,000 tradelines per month across all of its landlord clients.

11. Top Line is not a debt collector. Top Line does not collect debts. Top Line does not contact consumers to demand or collect payment. Top Line does not accept payments from tenants, does not negotiate payment terms with tenants, does not send demand letters to tenants, and does not make collection calls to tenants. Top Line does not act as a third-party debt collector in any capacity. Top Line does not seek to induce any tenant to make a payment on any claimed balance. Top Line has no policies or procedures under the Fair Debt Collection Practices Act ("FDCPA") because the FDCPA does not apply to Top Line's business.

12. Top Line does not stand to benefit, financially or otherwise, from any tenant paying or failing to pay rent. If a tenant has been reported negatively because of a delinquent account, and as a byproduct of that reporting the tenant subsequently pays the outstanding balance to the landlord, Top Line will not hear about it, will not receive any additional compensation, and will not be affected in any way. The financial relationship between Top Line and a landlord remains identical regardless of what transpires between the landlord and the tenant.

13. Importantly, Top Line does not negotiate debts, offer settlements, engage in "pay-for-delete" arrangements, or communicate with tenants regarding payment terms whatsoever. Any negotiation, settlement discussions, payment arrangements, or decisions regarding the removal of negative tradelines are handled exclusively by the landlord or property management company directly. If a landlord or management

company independently reaches an agreement with a tenant and instructs Top Line to update or modify the reporting status accordingly, Top Line simply processes the reporting update as directed by the data furnisher and property manager. Top Line itself is not a party to any such negotiations and does not offer, initiate, or participate in such arrangements.

14. The work Top Line performs is directly analogous to the credit reporting activities of credit card companies, mortgage servicers, and large retailers—such as BMW Financial Services—that routinely report consumer payment histories to credit reporting agencies. To furnish data to credit bureaus, a company must undergo software compliance review and follow the standards required by the Fair Credit Reporting Act ("FCRA"). Smaller landlords generally do not have the infrastructure or resources to satisfy these rigorous compliance requirements on their own, which is precisely why they engage Top Line. Top Line exists to enable landlords of all sizes to participate in consumer credit reporting in a compliant manner.

15. Top Line's pitch to prospective landlord clients is built around the benefits of the credit reporting ecosystem as a whole: the more landlords that report tenant payment data, the more information becomes available to other landlords for tenant screening purposes. This is particularly significant in markets like New York City, where the eviction process is lengthy and difficult, and where pre-tenancy screening data is therefore especially valuable. Top Line's role is to collect, process, and report accurate consumer data on behalf of landlords—nothing more.

16. Top Line does not contact tenants about unpaid balances, does not threaten

legal action, does not make repeated calls demanding payment, and does not engage in any of the coercive conduct the FDCPA was designed to prevent. Top Line gains no financial benefit from any tenant paying rent on time or bringing a delinquent account current.

17. If a landlord's principal goal in engaging Top Line were to collect a delinquent debt as Plaintiff Aliyah Silver argues, a traditional third-party debt collection agency would be a far more cost-effective means of achieving that result. Debt collection agencies routinely operate on a contingency basis — meaning the landlord pays nothing unless and until a debt is actually recovered — with the agency's compensation coming solely from a percentage of amounts collected.

18. By contrast, Top Line charges a flat monthly subscription fee, regardless of whether any tenant ever pays an outstanding balance. A landlord who retained Top Line for the purpose of debt collection would therefore be paying a guaranteed monthly fee to achieve an outcome that a contingency-based collection agency would pursue at no upfront cost to the landlord.

19. No rational economic actor seeking to collect a debt would choose the more expensive, indirect, and uncertain route of credit bureau reporting over a no-cost contingency arrangement with a collection firm. The fact that landlords pay Top Line a flat recurring fee to report all tenants — delinquent and current alike — reflects that the value proposition Top Line offers is data reporting and tenant screening ecosystem participation, not debt recovery.

20. For the reasons outlined herein and in the motion papers submitted by

counsel, it is respectfully requested that the Court dismiss the complaint in its entirety.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 05/11/2026, 2026.

Tzvi Goldring (May 11, 2026 09:26:06 EDT)

TZVI (HENRY) GOLDRING
CEO and Executive Director
Top Line Reporting Inc.



רבי ישעיה בן רבי משה