# Exhibit J

KeyCite Yellow Flag
Declined to Extend by Perry v. FirstKey Homes, LLC, N.D.Ga., February 12, 2025

596 F.Supp.3d 514
United States District Court, S.D. New York.

# Nicholas A. OWOYEMI, Plaintiff, v. CREDIT CORP SOLUTIONS INC. dba Tasman Credit, Defendant.

21-CV-8021 (GHW) (RWL)
|
Signed 03/31/2022

**Synopsis**

**Background:** Consumer brought state action against credit report furnisher, alleging that it wrongfully filed derogatory credit report with credit reporting agencies. Following removal, furnisher moved to dismiss.

**Holdings:** The District Court, Gregory H. Woods, J., adopted report and recommendation of Robert W. Lehrburger, United States Magistrate Judge, and held that:

[1] consumer did not state claim for violation of Fair Credit Reporting Act (FCRA);

[2] consumer did not state claim for violation of Fair Debt Collection Practices Act (FDCPA); and

[3] remand was not warranted.

Motion granted.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim; Motion for Remand.

West Headnotes (15)

**[1]** **Federal Civil Procedure** Pro Se or Lay Pleadings

Pro se complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest.

**[2]** **Federal Civil Procedure** Matters considered in general

For the purposes of considering a motion to dismiss for failure to state a claim, a court generally is confined to the facts alleged in the complaint; a court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. Fed. R. Civ. P. 12(b)(6).

3 Cases that cite this headnote

**[3]** **Federal Civil Procedure** Construction of pleadings
**Federal Civil Procedure** Matters deemed admitted; acceptance as true of allegations in complaint

If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true on motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

3 Cases that cite this headnote

**[4]** **Finance, Banking, and Credit** Liability for inaccurate or incomplete information

Consumer failed to allege that he filed dispute with credit reporting agency or that credit report furnisher received notice of any such dispute from credit reporting agency and, thus, did not state claim for violation of Fair Credit Reporting Act (FCRA). 15 U.S.C.A. § 1681s-2(b).

3 Cases that cite this headnote

[5] **Finance, Banking, and Credit**Credit reporting

Fair Credit Reporting Act (FCRA) does not provide for injunctive relief to consumers. Consumer Credit Protection Act §§ 616, 617, 15 U.S.C.A. §§ 1681n, 1681*o*.

2 Cases that cite this headnote

[6] **Federal Preemption**Credit reporting
**Finance, Banking, and Credit**Credit reporting

Fair Credit Reporting Act (FCRA) expressly preempts the New York Fair Credit Reporting Act (NYFCRA). Consumer Credit Protection Act § 625, 15 U.S.C.A. § 1681t(b); N.Y. General Business Law § 380-o.

3 Cases that cite this headnote

[7] **Finance, Banking, and Credit**Consumers and consumer debt
**Finance, Banking, and Credit**Debt collectors and debt collection in general

Consumer failed to allege that he owed debt or had been object of efforts to collect debt or that credit report furnisher was debt collector and, thus, did not state claim for violation of Fair Debt Collection Practices Act (FDCPA). Consumer Credit Protection Act § 807, 15 U.S.C.A. § 1692e(8).

1 Case that cites this headnote

[8] **Finance, Banking, and Credit**Debt Collection Practices

To plausibly assert a claim under the Fair Debt Collection Practices Act (FDCPA), a plaintiff must allege that: (1) she is a consumer who allegedly owes the debt, or a person who has been the object of efforts to collect a consumer debt; (2) that the defendant collecting the debt is a debt collector; and (3) that the defendant has engaged in an act or omission in violation of FDCPA requirements. Consumer Credit Protection Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

3 Cases that cite this headnote

[9] **Finance, Banking, and Credit**Debt collection practices

Injunctive relief is not an available remedy under Fair Debt Collection Practices Act (FDCPA). Consumer Credit Protection Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

2 Cases that cite this headnote

[10] **Removal of Cases**Want of jurisdiction or of cause for removal

Remand to state court was not warranted, in consumer's action against credit report furnisher, where claim under New York Fair Credit Reporting Act (NYFCRA) was preempted by Fair Credit Reporting Act

(FCRA). 15 U.S.C.A. § 1681s-2(b); N.Y. General Business Law § 380-o.

1 Case that cites this headnote
More cases on this issue

[11] **Federal Courts**Complete preemption
**Federal Preemption**Complete preemption

Under the "complete pre-emption doctrine," once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

[12] **Federal Civil Procedure**Pleading over

Generally, before a court dismisses a pro se complaint with prejudice, the court should afford the plaintiff the opportunity to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

1 Case that cites this headnote

[13] **Federal Civil Procedure**Effect

Dismissal with prejudice is appropriate where the problem with plaintiff's causes of action is substantive such that amendment would be futile.

3 Cases that cite this headnote

[14] **Federal Civil Procedure**Effect

District court would dismiss consumer's claims against credit report furnisher under Fair Credit Reporting Act (FCRA), New York Fair Credit Reporting Act (NYFCRA), and Fair Debt Collection Practices Act (FDCPA) with prejudice, where claims could not be cured by amendment. 15 U.S.C.A. § 1681s-2(a)(1); Consumer Credit Protection Act § 807, 15 U.S.C.A. § 1692e(8); N.Y. General Business Law § 380-o.

1 Case that cites this headnote
More cases on this issue

[15] **Federal Civil Procedure**Effect

District court would dismiss consumer's claim against credit report furnisher for violation of section of Fair Credit Reporting Act (FCRA) governing duty to investigate consumer dispute with credit reporting agency without prejudice, where claim potentially could be cured by amendment if consumer pled that furnisher received notice from one of the credit reporting agencies of dispute with consumer. 15 U.S.C.A. § 1681s-2(b).

2 Cases that cite this headnote
More cases on this issue

**Attorneys and Law Firms**

***515** Nicholas A. Owoyemi, S.I., NY, Pro Se.

Hilary Felice Korman, Scott Evan Wortman, Chenxi Jiao, Blank Rome, LLP, New York, NY, for Defendant.

ORDER ADOPTING REPORT & RECOMMENDATION

GREGORY H. WOODS, United States District Judge

Nicholas A. Owoyemi, proceeding *pro se*, brought this action against Credit Corp ***516** Solutions Inc. On March 7, 2022, Judge Robert W. Lehrburger filed a report and recommendation (the "Report") recommending that this Court dismiss Plaintiff's claims. The Plaintiff did not file any objections to Judge Lehrburger's report. Because I find no clear error, I adopt Judge Lehrburger's report in its entirety.

Plaintiff initially filed his complaint in New York state court on August 26, 2021. Dkt. No. 1. Defendant removed the case to federal court on September 27, 2021. *Id.* Plaintiff alleges that "Defendant wrongfully filed a derogatory credit report with the credit reporting agencies, namely, Experian, Equifax, and Transunion against Plaintiff." Dkt. No. 1, Ex. 1 ("Compl.") ¶ 3. This derogatory report has "damaged Plaintiff's credit worthiness" and led his employer to threaten to "terminate Plaintiff if the credit report remains unresolved." Compl. ¶¶ 5, 9. Because Defendant "has declined to remove such derogatory reports with the credit bureaus" Plaintiff filed this action asking that the court order "Defendant to remove the derogatory credit report from all the three national credit bureaus." Compl. ¶ 4 and at pg. 2.

On November 22, 2021, the defendant moved to dismiss the complaint. Dkt. No. 15. Judge Lehrburger issued his Report on March 7, 2022, recommending the dismissal of Plaintiff's action and denying Plaintiff leave to amend his claims, with the exception of his claim brought under the Fair Credit Reporting Act ("FCRA") § 1681s-2(b). Dkt. No. 26. Plaintiff did not file objections to Judge Lehrburger's Report.

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also*Fed. R. Civ. P. 72(b)(2). When a party timely objects to a magistrate's report and recommendation, a district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

Because Plaintiff did not file objections to Judge Lehrburger's Report, the Court reviews the Report only for clear error. The Court has reviewed Judge Lehrburger's recommendations for clear error and finds none. Therefore, the Court adopts Judge Lehrburger's report in its entirety. Accordingly, Plaintiff's claims brought pursuant to the New York Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and Section 1681s-2(a)(1) of the FCRA are dismissed with prejudice, as is Plaintiff's request for injunctive relief. In addition, the Court adopts Judge Lehrburger's recommendation that this case not be remanded to state court. Plaintiff's claim pursuant to Section 1681s-2(b) of the FCRA is dismissed without prejudice. Any amended complaint as to Plaintiff's FCRA § 1681s-2(b) claim must be filed no later than fourteen days from the date of this order.

SO ORDERED.

**REPORT AND RECOMMENDATION TO HON. GREGORY H. WOODS: MOTION TO DISMISS**

ROBERT W. LEHRBURGER, United States Magistrate Judge.

Plaintiff Nicholas A. Owoyemi ("Plaintiff" or "Owoyemi"), proceeding pro se, filed this action against Credit Corp Solutions ***517** Inc. d/b/a Tasman Credit ("Defendant" or "Credit Corp") alleging that Credit Corp wrongfully filed a derogatory credit report with credit reporting agencies. Although Owoyemi does not identify the statute or law under which he sues, his allegations implicate federal and state fair credit reporting acts. Credit Corp has moved to dismiss pursuant to Federal Rule Of Civil Procedure 12(b)(6), arguing that Owoyemi's state law claim is pre-empted and that he fails to state a claim under federal law. For the reasons that follow, I recommend that Defendant's motion be GRANTED, that Owoyemi's complaint be dismissed in its entirety, and that, with one exception, Owoyemi's claims be dismissed with prejudice.

**PROCEDURAL BACKGROUND**

Owoyemi filed his complaint in New York State court on August 26, 2021. Credit Corp removed the case to federal court on September 27, 2021. On November 22, 2021,

Credit Corp filed its motion to dismiss. Owoyemi filed his opposition on November 24, 2021. Credit Corp replied on December 22, 2021, at which point the motion was fully briefed. The matter has been referred to me for a report and recommendation.

## FACTUAL BACKGROUND

The facts are drawn from Owoyemi's Complaint. ("Compl." (Dkt. 1., Ex. 1).) As required on a motion to dismiss, the Court accepts as true all well-plead allegations of the Complaint and draws all reasonable inferences in favor of Owoyemi as the non-moving party.

The alleged facts are spare. On or about May 1, 2021, Credit Corp filed a derogatory credit report with the credit reporting agencies, Experian, Equifax, and Transunion. (Compl. ¶ 3, Ex. A.) Credit Corp declined to remove the report from the agencies. (Compl. ¶ 4.) As a result, Owoyemi's credit worthiness has been damaged, he has been declined credit, he has had to pay higher interest rates, and his employer, a financial broker-dealer, has threatened to terminate his employment if the credit report remains unresolved. (Compl. ¶¶ 5-9.) Owoyemi seeks injunctive relief requiring Credit Corp to remove the derogatory credit report from the three national credit bureaus. He also asks for costs and any other relief the Court deems just and proper. (Compl. "Wherefore" clause.)

**[1]**The Complaint does not identify any particular statute or law allegedly violated. Credit Corp asserts that, in substance, Owoyemi alleges violations of two statutes and possibly a third. Construing Owoyemi's Complaint liberally, as the Court must do for a pro se litigant,[1] the Court agrees. Those statutes are the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FRCA"), the New York Fair Credit Reporting Act, NY Gen. Bus. Law Ch. 20, Art. 25 ("NYFCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1975, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the ***518** defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level ... *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and brackets omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct at 1966.

**[2][3]**For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See**Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

## DISCUSSION

Owoyemi's Complaint does not state a plausible claim

under the FRCA, the NYFCRA, or the FDCPA. The Court discusses each statute in turn.

**A. No FRCA Claim**

The Complaint charges Credit Corp with having furnished false derogatory credit information to the national credit reporting agencies. The FRCA prohibits such conduct. 15 U.S.C. § 1681s-2(a)(1) (prohibiting furnishing false credit information that the furnisher knows or has reason to know is inaccurate, or for which the furnisher has been notified by the consumer that the information is inaccurate). While Section 1681s-2(a) may be enforced by federal and state authorities, however, it does not provide a private right of action to consumers such as Owoyemi. 15 U.S.C. § 1681s-2(d) (providing that subsection (a) "shall be enforced exclusively" by the Federal and State agencies and officials); *see* *Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95, 98 (2d Cir. 2020) (affirming dismissal of complaint with prejudice where plaintiff sought to assert private right of action under § 1681s-2(d)); ***519** *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("the statute plainly restricts enforcement of that provision to federal and state authorities ... Thus, the district court correctly concluded, as many other courts have held, that there is no private cause of action for violations of § 1681s-2(a)").

The statute does provide a private right of action under another section, which assigns certain duties to furnishers, such as the duty to investigate a consumer dispute with a credit reporting agency. 15 U.S.C. § 1681s-2(b)(1). No such duty arises, however, unless and until the furnisher receives notice of a dispute between a consumer and credit reporting agency as to the completeness or accuracy of information provided. *Id.*; *see also* 15 U.S.C. § 1681i(a)(2) (providing that once a "consumer reporting agency receives notice of a dispute from any consumer ... the agency shall provide notification of the dispute to any person who provided any item of information in dispute"); *Sprague*, 969 F.3d at 99 ("The statute is clear that the notice triggering these duties must come from a [consumer reporting agency], not the consumer").

[4]The Complaint does not allege that Owoyemi filed a dispute with a credit reporting agency, let alone that Credit Corp received notice of any such dispute from a credit reporting agency.[2] The Complaint therefore fails to state a claim under 15 U.S.C. § 1681s-2(b). *See* *Sprague*, 969 F.3d at 99 ("Appellants have alleged no facts indicating that [the furnisher] received notice from a [credit reporting agency] regarding the inaccuracies in the Report. The Amended Complaint alleges only that Appellants notified [the furnisher] about the erroneous information. This alone does not state a valid claim under Section 1681s-2(b)"); *Burns v. Bank of America*, No. 03-CV-1685, 2003 WL 22990065, at *2 (S.D.N.Y. Dec. 18, 2003), *vacated on other grounds*, 115 F. App'x 105 (2d Cir. 2004) (granting motion to dismiss complaint alleging claims under FCRA because "Plaintiffs d[id] not allege that Defendants ever received notice from a consumer reporting agency that imposed a duty to investigate").

[5]Additionally, Owoyemi requests injunctive relief. The FCRA, however, does not provide for injunctive relief to consumers. *See* 15 U.S.C. §§ 1681n, 1681***o***; *Arnold v. Navient Solutions, LLC*, No. 17-CV-1277, 2018 WL 6671542, at *3 n.6 (N.D.N.Y. Dec. 19, 2018) (dismissing FCRA claim and noting that "Plaintiff seeks only injunctive relief in this action. Although the FCRA explicitly provides for money damages in private actions, it does not provide for injunctive relief"); *White v. First America Registry, Inc.*, 378 F. Supp.2d 419, 424 (S.D.N.Y. 2005) ("the absence of any express provision for injunctive relief in Sections 1681n and 1681***o***, coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it").

Accordingly, the Complaint fails to state an actionable claim under the FRCA.

**B. No NYFCRA Claim**

[6]Like the FCRA, the NYFCRA delineates certain obligations of credit report furnishers. N.Y. Gen. Bus. Law § 380-o. The Complaint fails to state a claim under ***520** that statute, however, because the FCRA expressly preempts the NYFCRA pursuant to 15 U.S.C. § 1681t(b). *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 449 (2d Cir. 2015) (holding that § 1681t(b)(1)(F) preempts "those claims that concern a defendant's responsibilities as a furnisher of information under the FCRA"); *Ritchie v. North Leasing Systems, Inc.*, No. 12-CV-4992, 2016 WL 1241531, at *18 (S.D.N.Y. March 28, 2016), *aff'd sub nom.*, *Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017) ("Since section 380-o of the NYFCRA squarely addresses a furnisher's responsibilities, it is therefore preempted by the federal statute").

Because the NYFCRA is preempted by the FCRA with

respect to furnisher obligations, and because the Complaint fails to state a claim under the FCRA, the Complaint also fails to state a claim under the NYFCRA.

**C. No FDCPA Claim**

[7]The FDCPA is directed to debt collection practices and therefore does not appear to encompass the subject of Owoyemi's allegations. Credit Corp aptly points out that the closest potentially applicable provision would be 15 U.S.C. § 1692e(8), which addresses communicating "credit information which is known or which should be known to be false." The Complaint, however, fails to plausibly allege a claim under the statute.

[8]To plausibly assert a claim under the FDCPA, a plaintiff "must allege that: 1) she is a 'consumer' who allegedly owes the debt, or a person who has been the object of efforts to collect a consumer debt; 2) that the defendant collecting the debt is a 'debt collector;' and 3) that the defendant has engaged in an act or omission in violation of FDCPA requirements." *Keswani v. Athwal*, No. 20-CV-10578, 2021 WL 4198235, at *3 (S.D.N.Y. Sept. 14, 2021). The Complaint does not allege the required elements. In particular, it does not allege that Owoyemi owes a debt or has been the object of efforts to collect a debt, and it does not allege that Credit Corp is a debt collector. Accordingly, to the extent the Complaint can be read to assert an FDCPA claim, it fails to plausibly do so.

[9]And, as with Owoyemi's FCRA claim, injunctive relief is not an available remedy. *Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192, 2018 WL 4680023, at *6 (S.D.N.Y. Sept. 28, 2018), *reconsideration denied*, 2019 WL 4686529 (S.D.N.Y. Sept. 26, 2019); *Sparkman v. Zwicker And Associates, P.C.*, 374 F. Supp.2d 293, 298 (E.D.N.Y. 2005) (collecting cases and explaining that the FDCPA "contains no express provision for injunctive or declaratory relief in private actions").

**D. No Remand To State Court**

In opposition to Credit Corp's motion, Owoyemi does not counter any of Credit Corp's legal arguments. Instead, he essentially repleads his case (Opp. at 1-2) and offers conclusory statements (*e.g.*, Opp. at 3 ("Defendant, who knows it has the burden of proof to prevail, also knows it has no evidence to back its wrongful claim ... [and] continues to make a legal mumbo jumbo of this case ...").)

[10]Owoyemi also contends that the case should be remanded to state court. He argues that he "did not choose to litigate this case in federal court" and that "the state statutes relating to this case must apply instead of the federal laws." (Opp. at 3; *see also* Opp. at 5 (stating that Credit Corp invoked "national statutes" and urging that the Court should send the case back to state court rather than "reward" such tactics).)

***521**[11]In many instances, Owoyemi's remand argument would be viable.[3] Here, however, it is not because the NYFCRA is preempted by the FCRA. Under the "complete pre-emption" doctrine, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). *Arnold v. Navient Solutions* is squarely on point. There, the plaintiff expressly invoked only the NYFCRA in his complaint. The defendant removed the case, and the plaintiff moved to remand. The court denied the motion to remand, explaining in words no less apt here: "Plaintiff's allegations concern Defendant's responsibilities as a furnisher, including both reporting accurate information and complying with obligations to investigate disputed debts; therefore, the FCRA preempts these claims. Accordingly, the Court denies Plaintiff's motion to remand." 2018 WL 6671542 at *3 (internal citation omitted).

Accordingly, this case should not be remanded to state court.

**E. Dismissal With Or Without Prejudice**

[12][13]Credit Corp asks the Court to dismiss Owoyemi's claims with prejudice. Generally, before a court dismisses a pro se complaint with prejudice, the court should afford the plaintiff the opportunity to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). Dismissal with prejudice is appropriate; however, where "[t]he problem with [plaintiff's] causes of action is substantive" such that amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[14]Here, certain of Owoyemi's claims cannot be cured by amendment. Those include a claim under the FRCA § 1681s-2(a)(1) (as there is no private right of action); the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

NYFCRA, N.Y. Gen. Bus. Law § 380-o (due to pre-emption); the FDCPA (the claim involves credit reporting not efforts to collect a debt); and injunctive relief (which is not available under either the FCRA or the NYFCRA). Accordingly, those claims should be dismissed with prejudice.

[15]A claim under FRCA § 1681s-2(b), however, potentially could be cured by amendment – if facts to support it can be pled in good faith. To do that, Owoyemi would have to seek damages, not injunctive relief, and plead that Credit Corp received notice from one of the credit agencies of a dispute with Owoyemi. *See**Sprague*, 969 F.3d at 98, 100 (requiring "proper chain of notice"). It is doubtful that Owoyemi will be able to make such an allegation; as noted earlier, he states in opposition that he went directly to Credit Corp rather than first raising his dispute with the reporting agencies. (Opp. at 2.) But the Court cannot say there is no indication whatsoever of a potentially valid claim. Accordingly, Owoyemi's claim should be dismissed without prejudice to the extent it falls under FCRA § 1681s-2(b).

## CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Defendant's motion to dismiss and that Plaintiff's claims be dismissed with prejudice, except insofar ***522** as he seeks to assert a damages claim pursuant to FRCA § 1681s-2(b), which should be dismissed without prejudice.

## DEADLINE FOR OBJECTIONS AND APPELLATE REVIEW

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules Of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Gregory H. Woods, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 1007. **Failure to file timely objections will result in waiver of objections and preclude appellate review.**

### All Citations

596 F.Supp.3d 514

Footnotes

1 "Pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Sykes v. Bank Of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau Of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

2 To the contrary, Owoyemi's opposition suggests that he never contacted the credit reporting agencies; instead, "[t]he first point of action by Plaintiff was to contact Defendants and enjoin them to remove him from the national credit bureaus voluntarily." (Plaintiff's Opposition To Motion To Dismiss ("Opp.") (Dkt. 20) at 2.)

3 "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Distinguished by Walsh v. Mark S. Ricciardi, Esq., P.C., E.D.N.Y., June 4, 2021

374 F.3d 56
United States Court of Appeals, Second Circuit.

Sarah **GOLDSTEIN**,
Plaintiff–Appellant,
v.
**HUTTON**, **INGRAM**, **YUZEK**, **GAINEN**, **CARROLL** & **BERTOLOTTI**, Defendant–Appellee.

Docket No. 01–9085
|
Argued: June 19, 2003.
|
Decided: July 1, 2004.

**Synopsis**

**Background:** Consumer brought putative class action against law firm, alleging violations of Fair Debt Collection Practices Act (FDCPA). Following denial of the firm's motion to dismiss for failure to state claim, 39 F.Supp.2d 394, the firm moved for summary judgment. The United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, J., 155 F.Supp.2d 60, granted firm's motion on theory that it was not "debt collector" under the FDCPA, and consumer appealed.

**Holdings:** The Court of Appeals, Laura Taylor Swain, District Judge for the United States District Court for the Southern District of New York, sitting by designation, held that:

[1] to determine whether law firm "regularly" engaged in debt collection activity, so as to qualify as "debt collector" under the FDCPA, district court should have focused on regularity of firm's collection activity, rather than upon proportion its business devoted to debt collection; and

[2] fact issues precluded entry of summary judgment for firm in FDCPA action.

Vacated and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion to Dismiss for Failure to State a Claim.

West Headnotes (10)

**[1]** **Federal Courts** Summary judgment
**Federal Courts** Summary judgment

Court of Appeals reviews district court's grant of summary judgment de novo, construing all evidence in connection with motion in light most favorable to nonmoving party.

2 Cases that cite this headnote

**[2]** **Finance, Banking, and Credit** Attorneys and law firms; legal services

Fair Debt Collection Practices Act (FDCPA) applies to attorneys "regularly" engaging in debt collection activity. Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.

13 Cases that cite this headnote

**[3]** **Finance, Banking, and Credit** Attorneys and law firms; legal services

To determine whether law firm "regularly" engaged in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), district court should have focused on regularity of firm's collection activity, rather than principally on proportion its business devoted to debt collection. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

43 Cases that cite this headnote

[4] **Finance, Banking, and Credit**Debt collection practices

Plaintiff in Fair Debt Collection Practices Act (FDCPA) action bears burden of proving defendant's status as "debt collector." Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

33 Cases that cite this headnote

[5] **Finance, Banking, and Credit**Attorneys and law firms; legal services

Factors on which district court focused in attempt to determine law firm "regularly engaged" in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), which included what percentage of firm's revenues were derived from debt collection activity, and whether firm marketed itself as debt collector or had a regular client relationship with debt collecting business, while not irrelevant to "regularity" inquiry, were factors bearing chiefly on whether debt collection was firm's "principal business," an alternate basis for concluding that it was "debt collector" under the FDCPA. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

118 Cases that cite this headnote

[6] **Finance, Banking, and Credit**Debt collectors and debt collection in general

Person may "regularly" render debt collection services, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), even if these services are not a principal purpose of his business. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

47 Cases that cite this headnote

[7] **Finance, Banking, and Credit**Attorneys and law firms; legal services

Question of whether lawyer or law firm "regularly" engages in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), must be assessed on case-by-case basis in light of factors bearing upon issue of regularity. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

31 Cases that cite this headnote

[8] **Finance, Banking, and Credit**Attorneys and law firms; legal services

Among factors bearing on whether law firm "regularly engages" in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), are: (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over relevant time period(s); (2) frequency of such communications and/or of such litigation activity, including whether any patterns are discernable; (3) whether firm has personnel specifically assigned to work on debt collection activity; (4) whether firm has systems or contractors in place to facilitate such activity; and (5) whether activity is undertaken in connection with ongoing client relationship with entities that have retained firm to assist in collection of outstanding consumer debt obligations. Consumer Credit Protection Act, §

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

803(6), as amended, 15 U.S.C.A. § 1692a(6).

72 Cases that cite this headnote

[9] **Finance, Banking, and Credit** Attorneys and law firms; legal services

When deciding whether law firm "regularly engages" in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), court should consider, in addition to other relevant circumstances, facts relating to role that debt collection work plays in firm's practice as whole; whether firm seeks debt collection business by marketing itself as having debt collection expertise may also be relevant. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

49 Cases that cite this headnote

[10] **Finance, Banking, and Credit** Debt collection practices
**Summary Judgment** Debt collection activities

Genuine issue of material fact, as to whether law firm which had sent 145 notices of past due indebtedness to debtor-tenants in 12-month period, and which allegedly had system in place to issue such notices and had assigned a paralegal to review them, "regularly engaged" in debt collection activity, so as to qualify as "debt collector" under the Fair Debt Collection Practices Act (FDCPA), precluded entry of summary judgment for firm in FDCPA action. Consumer Credit Protection Act, § 803(6), as amended, 15 U.S.C.A. § 1692a(6).

9 Cases that cite this headnote

**Attorneys and Law Firms**

***58** Victor M. Serby, New York, NY, for Plaintiff–Appellant.

Laurel A. Wedinger, Barry, McTiernan & Moore, New York, N.Y. (Suzanne M. Halbardier on the brief), for Defendant–Appellee.
Before: B.D. PARKER and RAGGI, Circuit Judges, SWAIN, District Judge.*

**Opinion**

SWAIN, District Judge.

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), imposes, among other things, certain notice and timing requirements on efforts by "debt collectors" to recover outstanding obligations. The term "debt collector" is defined, subject to exclusions not relevant here, to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In this FDCPA action, the United States District Court for the Southern District of New York (Cedarbaum, J.) granted summary ***59** judgment for the defendant law firm, finding that it was not a debt collector within the meaning of the statute. Because we find that the evidence of record was sufficient to support a finding that the defendant was a debt collector, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

Background And Procedural History

Plaintiff-appellant Sarah **Goldstein** ("**Goldstein**") leased a Manhattan apartment from non-party Stahl York Avenue Co. ("Stahl") in 1992. Beginning in 1996, a number of disputes arose between Stahl and **Goldstein** concerning alleged lease violations and rent arrears. Defendant-appellee **Hutton**, **Ingram**, **Yuzek**, **Gainen**, **Carroll** & **Bertolotti** ("**Hutton**"), a New York City law firm, represented Stahl in connection with the landlord-tenant matters. Following state court proceedings in 1997 that ended with the settlement of allegations relating to illegal subletting and alterations but did not resolve issues concerning back rent, **Hutton** prepared, and caused **Goldstein** to be served with, a "three-day

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

notice" pursuant to the New York State Real Property Actions and Proceedings Law, demanding that all outstanding rent be paid within three days, or possession of the apartment relinquished within that period, and threatening summary dispossession proceedings in the event of noncompliance.[1] Hutton commenced a summary proceeding a week later, Goldstein filed the complaint in this FDCPA action a little more than five weeks thereafter. The summary proceeding was subsequently settled.

In her Amended Class Action Complaint, Goldstein alleges that Hutton's notice violated the requirements imposed on debt collectors by the FDCPA in that it (1) failed to include the 30–day validation notice required by 15 U.S.C. § 1692g; (2) failed, in violation of 15 U.S.C. § 1692e(11), to disclose that Hutton was attempting to collect a debt and that any information obtained would be used for that purpose; and (3) contained threats to take actions that could not legally be taken or were not intended to be taken, in violation of 15 U.S.C. § 1692e(5).[2]

Following the denial of a pre-answer motion to dismiss the complaint and two years of discovery, Hutton moved for summary judgment, arguing that its conduct, in the context of the parties' dealings, did not violate the FDCPA and that it was not a "debt collector" within the meaning of the FDCPA. The district court granted Hutton's motion on the latter ground. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 155 F.Supp.2d 60 (S.D.N.Y.2001).

Discussion

[1] We review a district court's grant of summary judgment *de novo,* construing all evidence in connection with the motion in the light most favorable to the nonmoving party. *Horvath v. Westport Library Ass'n,* 362 F.3d 147, 151 (2d Cir.2004). A grant of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***60** Fed.R.Civ.P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal citation and quotation marks omitted).

[2] The Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In *Romea v. Heiberger & Assocs.,* 163 F.3d 111, 116–17 (2d Cir.1998), we held that three-day notices issued by a law firm pursuant to N.Y. Real Prop. Acts Law section 711 constitute debt-related "communications," and that a lawyer's preparation of such notices constitutes debt collection activity, within the scope of the FDCPA. We have not until now, however, had the opportunity to address what constitutes the "regular" collection of debt within the meaning of the FDCPA's definition of "debt collector."

[3] Hutton's summary judgment motion was supported by evidence that it had derived only $5,000 in revenues from the issuance of three-day notices during the one-year period immediately preceding the commencement of this action, amounting to 0.05% of its $10,000,000 revenue over that period. (J.A. A–245, A–374–80.) Plaintiff countered with evidence that Hutton had sent 145 three-day notices within that period. (J.A. A–88 to A–238.) The district court held that the factors relevant to a determination as to whether a defendant "regularly" collects consumer debt include

> the percentage of revenue generated by debt collection activities, the sheer volume of debt collection activities, and whether defendants have an ongoing attorney-client relationship with a collection agency. *See, e.g., White [v. Simonson & Cohen P.C.,]* 23 F.Supp.2d ... [273,] 274 (E.D.N.Y.1998); *Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 102 (D.Conn.1997); *Cacace v. Lucas,* 775 F.Supp. 502, 504 (D.Conn.1990).

*Goldstein,* 155 F.Supp.2d at 64. The district court further observed that "[c]ourts have uniformly held as a matter of law that law firms for which debt collection activities constitute ... a small percentage of their revenues are not debt collectors under the FDCPA," citing a number of decisions from outside this Circuit. *Id.* Based on the low percentage of Hutton's revenues derived from the three-day notices, the fact that Hutton did not advertise itself as being in the business of debt collection or as maintaining a specialty in debt collection, the lack of evidence that Hutton represented traditional debt collection agencies, and its view that Hutton's volume of debt collection activity was "significantly less" than that

at issue in the two cases principally relied upon by **Goldstein**, the district court concluded that **Hutton** was not a debt collector within the meaning of the FDCPA. *Id.* at 65. As explained below, we believe that the decision below should have focused on the regularity of **Hutton's** debt collection activity rather than principally on the proportion its business devoted to debt collection

[4] The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status. **Goldstein** was thus required, in responding to **Hutton's** summary judgment motion, to make a showing sufficient to support a determination ***61** that **Hutton** was a debt collector at the time it issued the challenged communication. *See* *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). **Goldstein** proffered undisputed evidence that **Hutton** had issued 149 three-day notices between December 1996 and February 1998, including 145 such notices sent between February 27, 1997 and February 27, 1998. **Goldstein** also challenged the admissibility of **Hutton's** evidence concerning its revenues.

The FDCPA establishes two alternative predicates for "debt collector" status—engaging in such activity as the "principal purpose" of the entity's business and "regularly" engaging in such activity. 15 U.S.C. § 1692a(6). There is no contention here that debt collection was a principal purpose of **Hutton's** business. Rather, as the district court recognized, the issue is whether **Hutton** regularly engaged in such activity.

[5] [6] In analyzing the question of whether **Hutton** engaged regularly in debt collection work, the district court focused primarily on the percentage of its resources devoted to, and revenues derived from, such work, as well as whether the firm marketed itself as a debt collector or had a regular client relationship with a debt collecting business. These factors, while not irrelevant to a regularity inquiry (clearly, an entity devoting a substantial part of its resources, or deriving substantial revenues from, debt collecting, or actively soliciting such business, would likely perform such work with a degree of regularity), are more pertinent to the first prong of the statutory debt collector definition—debt collection as principal business—than to the question of whether the entity engages regularly in debt collection. As the Fifth Circuit has explained,

> a person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'

*Garrett v. Derbes,* 110 **F.3d** 317, 318 (5th Cir.1997) (citation omitted). Focusing a regularity inquiry primarily on the proportion of overall work or firm revenue, a factor easily affected by the size and service pricing determinations of the law practice, blurs the distinction between the "principal purpose" and "regularity" aspects of the statutory definition of debt collector.

To the extent that some courts confronted with the task of articulating an analytical framework for the regularity prong of the definition have suggested that such proportionality factors may alone be determinative, the facts of the particular cases often belie the implication. Where debt collector status was found lacking based on revenue or workload figures, other indicia of regularity often were also lacking; where debt collector status was found, the regularity and/or principal purpose criteria would in some cases easily have been met in any event. *Compare* *Schroyer v. Frankel,* 197 **F.3d** 1170, 1173, 1177 (6th Cir.1999) (where firm handled 50–75 collection cases annually, constituting less than 2% of overall practice, maintained no non-attorney staff or computer aids for debt collection, and debt collection activity came from non-collection business clients and was "incidental to, and not relied upon or anticipated in," firm's practice of law, firm was not debt collector); *White,* 23 F.Supp.2d at 278 (lawyer who sent 35 collection letters once as favor to personal client and filed no follow-up litigation was not debt collector); *Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 103–04 (D.Conn.1997) ***62** (law firm whose total three-year revenues from debt collection were less than $1,000 and had only one consumer credit client was not debt collector); *and* *Nance v. Petty, Livingston, Dawson, & Devening,* 881 F.Supp. 223, 225 (W.D.Va.1994) (collection work that constituted .61% of lawyer's personal practice and represented 1.07% of firm's cases over 18–month period did not render defendant law firm debt collector, where plaintiff provided no evidence of debt collection activity other than that complained of in action); *with* *Scott v. Jones,* 964 F.2d 314, 316–18 (4th Cir.1992) (principal purpose and regularity prongs satisfied where lawyer and firm had regular ongoing relationship with delinquent debt division of credit card issuer, 70–80% of revenues were generated by such work over relevant period and over 4,000 "warrants" had been issued annually in connection with such work over five-year period). *See also* *Garrett,* 110 **F.3d** at 317 (rejecting district court finding that collection activity was not "regular" where 639 demand letters were mailed in nine-month period, although revenues from activity were less than 0.5% of firm's total for period). In light of **Goldstein's** proffer of specific evidence of debt collection activity in the form of 145 three-day notices issued in a

one-year period, the district court's analysis was too narrow to support its determination that **Hutton** had not regularly engaged in debt collection.

**Goldstein** urges a different focus entirely. Citing the Third Circuit's quotation, in *Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989), of a law journal article positing that " 'any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA,' "[3] **Goldstein** argues that issuance of more than five notices should alone be conclusive of debt collector status. This proposition we reject, as **Goldstein's** "handful" standard has no precedential basis and, standing alone, lacks a meaningful nexus to the issue of regularity. Indeed, in *Crossley* itself, the defendant lawyer had admitted that debt collection was a principal part of his business during the relevant period; the Third Circuit held that his statement "established" the "regularity of [his] debt collection activity." *Id.* at 569–70. Court records introduced by the plaintiff in that case further showed that the lawyer had engaged in a significant volume of collection litigation, including 175 "mortgage foreclosures and other collection suits for financial institutions" in an 18–month period, and had represented at least four creditors as clients. *Id.* at 570 n. 2.

[7] We hold that the question of whether a lawyer or law firm "regularly" engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity. None of the following factors is alone dispositive of the issue; they are illustrative rather than exclusive.

[8] [9] Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, ***63** (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.[4] Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

[10] The record below included evidence that **Hutton** had issued 145 three-day notices within a 12–month period. The collection of notices before the court indicates that notices were issued in each month of that period, more than 10 notices were issued in each of at least 7 calendar months of that period, and more than 15 notices were issued in 3 calendar months of that period.[5] The large number of notices, taken together with the repetitive pattern of issuance of multiple notices each month, clearly could support a determination that **Hutton's** debt collection practices were regular. Furthermore, more than 140 of the notices in the record were issued on behalf of entities whose names included the word "Stahl."[6] **Hutton's** ongoing relationship with apparently affiliated entities for which it repeatedly sent collection notices within the one-year period under scrutiny further indicates regularity of collection work as part of the firm's business.

There was also evidence before the district court that **Hutton** had a system in place for preparing and issuing the notices: it relayed tenant arrears information to an outside computer service which generated the notices, assigned a paralegal to review them for consistency with the information provided by the landlord's managing agent, and sent the notices to a process server for delivery to the tenant. (*Id.,* A–266–67, A–379–80.) The firm's name was shown on the notice and on the mailing envelope "to provide a contact person for the recipients of the notices if the recipients had questions or wished to pay their rent." (*Id.,* A–380.)

A rational factfinder could easily conclude from this evidence, when viewed in the light most favorable to **Goldstein**, that **Hutton** was a debt collector within the meaning of the FDCPA at the relevant time. Accordingly, **Hutton's** summary judgment motion should have been denied insofar as it was predicated on the issue of debt collector status.

***64** We have reviewed the parties' remaining contentions and find them to be without merit.

Conclusion

Weighed in light of the standard announced today and when viewed in the light most favorable to **Goldstein**, the evidence before the district court was sufficient to support a finding that **Hutton** was a debt collector within the meaning of the FDCPA. The judgment entered by the district court is, accordingly, vacated, and the matter is remanded for further proceedings consistent with this opinion.

**All Citations**

374 F.3d 56

Footnotes

* The Honorable Laura Taylor Swain of the United States District Court for the Southern District of New York, sitting by designation.

1 Issuance of a three-day notice is a statutory prerequisite to the commencement of summary proceedings to recover possession of property for non-payment of rent. N.Y. Real Prop. Acts Law § 711.

2 Joint Appendix ("J.A.") A–18–25.

3 *Id.* at 569 (quoting R. Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law,* X Pa.J.L.Rptr., No. 46, 3 (Nov. 21, 1987)).

4 Client relationships that may be relevant in this connection are not limited to ones with traditional debt collection businesses; the case law and common sense suggest that lenders or other creditors, landlords or other lessors, and service providers are among the types of businesses that may regularly engage legal assistance in consumer debt collection. *See, e.g., Romea,* 163 **F.3d** at 115–16 (back rent is debt within meaning of FDCPA); *Garrett,* 110 **F.3d** at 317 (delinquent telephone bill collection work for Bell South Mobility); *Von Schmidt,* 9 F.Supp.2d at 101–03 (apparent attempt to establish debt collection business with rehabilitation center client); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 321 (E.D.Mich.1992) (representation of Chrysler Credit Corporation in litigation for delinquent accounts).

5 J.A. A–88–238.

6 *Id.*

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

342 F.Supp.3d 460
United States District Court, S.D. New York.

Aaron **COHEN**, Plaintiff,
v.
**DITECH** FINANCIAL, **LLC** f/k/a, Green Tree Servicing, **LLC**, and Safeguard Properties **LLC**, Defendant.

15 Civ. 07124 (NSR)
|
Signed 09/**21**/**2018**

**Synopsis**
**Background:** Mortgagor brought action against company contracted by mortgage loan servicer to conduct occupancy inspection at initiation of foreclosure proceedings, alleging that company violated Fair Debt Collection Practices Act (FDCPA) when it left a doorhanger on his doorknob asking it to call the servicer. Company moved for summary judgment.

**[Holding:]** The District Court, Nelson S. Román, J., held that company was not a "debt collector" subject to FDCPA.

Motion granted.

**Procedural Posture(s):** Motion for Summary Judgment.

West Headnotes (11)

[1] **Finance, Banking, and Credit** Debt collection practices

A violation of the Fair Debt Collection Practices Act (FDCPA) protections is a concrete injury in fact for standing purposes. Consumer Credit Protection Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

[2] **Finance, Banking, and Credit** Practices prohibited or required in general

Fair Debt Collection Practices Act (FDCPA) prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses, or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692.

[3] **Finance, Banking, and Credit** Debt Collection Practices

To prove a violation under the Fair Debt Collection Practices Act (FDCPA), a plaintiff (1) must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692.

6 Cases that cite this headnote

[4] **Finance, Banking, and Credit** Debt Collection Practices

Courts should construe the Fair Debt Collection Practices Act (FDCPA) text liberally to effectuate the overriding statutory purpose. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

[5] **Finance, Banking, and Credit**Debt collectors and debt collection in general

Fair Debt Collection Practices Act (FDCPA) applies only to debt collectors. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692.

8 Cases that cite this headnote

[6] **Finance, Banking, and Credit**Debt collectors and debt collection in general

Fair Debt Collection Practices Act (FDCPA) establishes two alternative predicates for "debt collector" status—engaging in such activity as the principal purpose of the entity's business, and regularly engaging in such activity; a company can fall under the scope of the definition if (1) its principle purpose is debt collection or (2) it regularly attempts to collect debts directly or indirectly. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

2 Cases that cite this headnote

[7] **Finance, Banking, and Credit**Creditors and lenders; assignees and loan servicers

Actions by company contracted by mortgage servicer to perform occupancy inspections of property upon initiation of foreclosure proceedings did not meet the first prong of "debt collector" definition under Fair Debt Collection Practices Act (FDCPA), because company's principle purpose was not debt collection, but rather, to inspect, preserve, and protect properties on behalf of their client, which were servicers, mortgage companies, investors, credit unions, and land banks. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

[8] **Finance, Banking, and Credit**Debt collectors and debt collection in general

Regarding the second prong of the Fair Debt Collection Practices Act (FDCPA) definition of "debt collector," whether a company regularly collects or attempts to collect debts directly or indirectly, collecting debts does not mean any action no matter how slight; rather, the term "debt collector" must mean something more than any role, no matter how tangential, in the collection process. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

3 Cases that cite this headnote

[9] **Finance, Banking, and Credit**Debt collectors and debt collection in general

Acting as a mere conduit for a collection process is not enough to satisfy Fair Debt Collection Practices Act's (FDCPA) definition of "debt collector." Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

[] **Finance, Banking, and Credit**Creditors and lenders; assignees and loan servicers

An entity that attempts to collect debts in default and does not service the debt, even though it nominally owns the debt and is collecting it for itself falls within Fair Debt Collection Practices Act's (FDCPA) definition of "debt collector." Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

7 Cases that cite this headnote

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

[11] **Finance, Banking, and Credit**—Creditors and lenders; assignees and loan servicers

Company contracted by mortgage servicer to perform occupancy inspections of property upon initiation of foreclosure proceedings was not a "debt collector" subject to Fair Debt Collection Practices Act (FDCPA) as result of its actions in leaving a doorhanger on mortgagor's door advising him to call the servicer at a specific number and stating "WE ARE EXPECTING YOUR CALL TODAY," where doorhanger did not include demand for payment, doorhanger made no specific reference to the debt other than to give servicer's name and phone number, and only contact between company and mortgager was that company left the doorhanger on consumer's doorknob. Consumer Credit Protection Act § 802, 15 U.S.C.A. § 1692(a)(6).

**Attorneys and Law Firms**

***462** Emiliya Gumin Farbstein, Tiffany Nicole Hardy, Edleman, Combs, Latturner & Goodwin, **LLC**, Chicago, IL, Ryan Leyland Gentile, Law Offices of Gus Michael Farinella, PC, Shimshon Wexler, The Law Offices of Shimshon Wexler, PC, New York, NY, for Plaintiff.

Panos Thomas Topalis, Tribler Orpett & Meyer, P.C., Chicago, IL, Diane Beckman Carvell, Rawle & Henderson, LLP, New York, NY, Sylvia Lee, Rawle & Lenderson LLP, Scarsdale, NY, for Defendant.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Aaron **Cohen** initiated this three-count complaint against Defendant **Ditech** Financial **LLC**, formerly known as Green Tree Servicing, **LLC** ("Green Tree" or "**Ditech**"),[1] and Defendant Safeguard Properties **LLC** ("Safeguard" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiff alleges that Defendant violated § 1692c under Count 1, § 1692e under Count 2 and § 1692g under Count 3. Presently before the Court is Defendant Safeguard's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (the "Defendant's Motion"). For the following reasons the Defendant's Motion is granted.

**BACKGROUND**

All facts are taken from the Amended Complaint (the "Am. Compl."), ECF. No 17, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1"), ECF No. 83, Plaintiff's Response to Safeguard's Statement of Material Facts ("Plf. Resp.") and Plaintiff's Statement of Additional Material Facts ("Plf. Add. Resp."), both at ECF No. 88, and Safeguard's Response to Plaintiff's Statement of Additional Material Facts ("Def. Resp."), ECF No. 86, are uncontested except where indicated.

Safeguard is a mortgage field services company that inspects, preserves and protects properties on behalf of their client, which are servicers, mortgage companies, investors, credit unions and land banks. (Plf. Resp., ¶ **10**.) Plaintiff has a residential mortgage loan on his home serviced by **Ditech**. (*Id.*, ¶¶ 20-24.)

In March 2015, doing business as Green Tree Servicing **LLC**, **Ditech** commenced a foreclosure filing, claiming that Plaintiff's loan had been in default since 2010. (*Id.*) **Ditech** retained Safeguard to conduct a "contact inspection" of Plaintiff's home (*Id.*, ¶ 15.) According to Green Tree, the purpose of the contact inspection is to verify who is occupying the property and to verify the condition and status of the collateral (*Id.*, ¶ 27). Safeguard performed some 3,000 inspections in the year and 20 days after Plaintiff filed this action. (Def. Resp., ¶ 8.)

Shortly before August 12, 2015, Safeguard left a door hanger on Plaintiff's door (Plf. Resp., ¶ 2) which advised Plaintiff to call Green Tree Mortgage at a specific number, to be prepared to give his account number, and said: "WE ARE EXPECTING YOUR CALL TODAY." (*Id.*, ¶ 7.) ***463** The door hanger was left as part of the contact inspection on Plaintiff's home. (*Id.*, ¶ 26.) The

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

door hanger had no indication that it was a communication from Safeguard. (*Id.* ¶ 69.) Plaintiff admitted that "he could not recall if he ever called the number on the door hanger." (*Id.* at ¶ 71.) Plaintiff stated that he could not recall "ever having a conversation with anyone at Safeguard." (*Id.* at ¶ 72.) Based on this record, Plaintiff did not have any other form of communication with Safeguard.

Safeguard conducted the work at Plaintiff's property on behalf of **Ditech** pursuant to a Master Property Services Agreement. (*Id.*, ¶¶ 11, 12.) Safeguard is required to perform all services in compliance with applicable FHA, VA, HUD, Fannie Mae, Freddie Mac, GNMA, private investor and private mortgage insurer regulations, guidelines and requirements as stipulated in its agreement with **Ditech**. (Def. Resp., ¶ **10**.) When Safeguard receives an order from a client, Safeguard receives the loan number, the mortgagor information, the type of loan and the type of inspection that Safeguard is to complete. (Plf. Resp., ¶ 16.) The order file for Plaintiff's property from Green Tree did not include the unpaid principal balance or the amount of the mortgage. (*Id.*, ¶ 47.) Safeguard does not collect debt nor does it collect any money for **Ditech**. (Def. 56.1, ¶ 48, ¶ 49.) Safeguard does not have infrastructure in place to collect a debt. (*Id.*, ¶ 51.) Safeguard does not hold or collect any funds for Green Tree. (*Id.*, ¶¶ 46, 48.) Safeguard does not hold title to property for Green Tree at any point. (*Id.*, ¶ 55.) Safeguard is not authorized by Green Tree to discuss the debt with the borrower (*Id.*, ¶ 64.) Plaintiff admits Safeguard does not hold or collect any funds for Green Tree (*Id.*, ¶ 54.)

Plaintiff states that Defendant is aware that a contact attempt inspection is being made to contact delinquent borrowers as part of the servicer's debt collection efforts. (*Id.*, ¶ 56.) Plaintiff points to evidence that Defendant advertises its services for contacting "delinquent borrowers." (*Id.*) As further evidence of this disputed fact, Plaintiff submits that the door hanger left during the contact inspection makes no mention of occupancy and does nothing to direct the recipient to provide information about the status of the property. (*Id.* ¶ 27.) Plaintiff further submits the phone number on the doorhanger does nothing to assist **Ditech** in learning about the status of the collateral. (*Id.*) Rather, Plaintiff states that calls to the number on the doorhanger are routed to **Ditech's** general customer service line, where **Ditech** attempts to collect the outstanding mortgage debt. (Plf. Add. Resp., ¶ 2.) Plaintiff points to evidence that Safeguard inspectors are directed to personally tell debtors to call their mortgage company. (*Id.*, ¶ 3.) Plaintiff also points to language on Safeguard's website, describing the contact inspection (*Id.* ¶ 1).[2] Defendant replies that the contact inspection is only one of many services provided. (*Def. Resp.*, ¶ 2.) Defendant denies that the phone number on the door hanger directs the recipient to a specific line from which **Ditech** specifically attempted to collect an outstanding mortgage debt. (*Id.*, ¶ 2). Furthermore, Safeguard's compensation is not ***464** contingent on whether the debt is ultimately paid or how much, if any of the debt is paid. (Plf. Resp., ¶ 61.) Safeguard is paid a single, flat fee for a contact attempt inspection. (Plf. ¶ 63.)

## STANDARD OF REVIEW

Summary judgement is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Courts must construe "all the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences." *Anderson News **L.L.C**. v. American Media, Inc.*, 899 F.3d 87 (2d. Cir. **2018**).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for a non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; accord *Gen. Star. Natl. Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Benn v. Kissane*, 510 Fed.Appx. 34, 36 (2d. Cir. 2013) (summary order). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specific, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d. Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

**DISCUSSION**

**I. Plaintiff Has Standing to Bring This Lawsuit.**
Defendant contends that Plaintiff has not alleged any particularized concrete injury that he has sustained as a result of Safeguard leaving the door hanger on his doorknob during the contact Inspection. (Defendant's Memorandum of Law ("Def. Mem."), Ex. 84, at 24.) Therefore, Defendant argues Plaintiff lacks standing to sue under *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 L.Ed.2d 635, 643 (2016).

[1]A violation of the FDCPA protections is a concrete injury in fact. *Papetti v. Does 1-25*, 691 Fed.Appx. 24 (2nd Cir. 2017). Relying on *Spokeo*, ––– U.S. ––––, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), the *Papetti* defendant argued, similarly to the defendant in the present case, that plaintiff did not suffer an injury in fact because he alleged only "procedural violations" of the FDCPA." The Second Circuit noted that "*Spokeo* does not 'categorically ... preclude[ ] violations of statutorily mandated procedures from qualifying as concrete injuries.' " *Papetti*, 691 Fed.Appx. at 26 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ). The Court explained that " 'some violations of statutorily mandated procedures may entail the concrete injury necessary for standing.' " *Id.* The Court further said that there is "no dispute" that Section 1692e of the FDCPA protects "concrete interests" or ***465** protection from abusive debt collection. *Id.* Although *Papetti* is a summary order and not controlling, numerous district courts have followed that decision. *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 1:17-cv-04525, 2018 WL 2247206 at *9 (S.D.N.Y. May 16, 2018); *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17CV4554ARRCLP, 2018 WL 451637, at *4 (E.D.N.Y. Jan. 17, 2018); *Roth v. Solomon & Solomon, P.C.*, No. 17-CV-0868(JS)(AKT), 2018 WL 718402, at *3 (E.D.N.Y. Feb. 5, 2018); *Degrasse v. Financial Recovery Services, Inc.*, No. 16-CV-3727 (KAM), 2018 WL 2214651 at *3 (E.D.N.Y. March 5, 2018).

For these reasons, plaintiff has standing to assert claims under the FDCPA.

**II. Violation of the FDCPA.**
Plaintiff has three main positions. First, Plaintiff argues that in placing the doorhanger on behalf of Ditech on plaintiff's door, Safeguard was attempting to collect a debt within the meaning of 15 U.S.C. § 1692a(5). (Plaintiff's Response to Safeguard's Motion for Summary Judgement ("Plf. Mem. Resp. to MSJ"), ECF No. 85, at 2-3.) Second, Plaintiff argues that placing the doorhanger on behalf of Ditech is tantamount to indirect debt collection within the meaning of the FDCPA. (*Id.* at 4-7.) Third, Plaintiff argues that Safeguard violated the FDCPA because it did not provide the disclosures required of debt collectors pursuant to 15 U.S.C. § 1692g, § 1692e(11) and § 1692e(14). (Am. Comp. ¶¶ 23, 38.) All of these claims depend on Safeguard being a debt collector under the FDCPA.

[2]Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to curb "abusive, deceptive, and unfair debt collection practices by debt collectors." 15 U.S.C. § 1692 (**Westlaw through P.L. 115-223**). The FDCPA prohibits debt collectors from engaging in "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). "Specifically, the FDCPA 'prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures.' " *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) (citing *Acosta v. Campbell*, No. 6:04 Civ. 761, 2006 WL 146208 at *12 (M.D. Fla. Jan. 18, 2006) ).

[3]To prove a violation under the Act, a plaintiff "(1) must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Management Inc.*, 132 F.Supp.3d 567 (S.D.N.Y. 2015)(quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484, 488 (S.D.N.Y. 2014) (internal citation omitted) ).

The first requirement, that the consumer owes a debt, is not in dispute here. Plaintiff admits that he is past due on mortgage payments.

[4] [5]The second requirement concerns the question, is the defendant a "debt collector" under the FDCPA? When construing a statute, the Second Circuit has instructed us to begin with the "plain language, giving all undefined terms their ordinary meaning." *Vangorden v. Second Round Limited Partnership*, 897 F.3d 433, 437 (2d Cir. 2018)(citing *Federal Hous. Fin. Agency v. UBS Ams.*

*Inc.*, 712 F.3d 136, 141 (2d Cir. 2013) ). Courts should ***466** construe FDCPA text liberally to effectuate the overriding statutory purpose." (*Id.* at 437.) Here, it is clear that 15 U.S.C. § 1692 aims to curb unfair and abusive debt collection practices by debt collectors. The statute, however, places a limitation on the scope of law's application: is applies only to debt collectors. *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d. Cir. 1998); *Carlson v. Long Island Jewish Medical Center*, 378 F.Supp.2d 128, 131 (E.D.N.Y. 2005); *Harrison v. NBD Inc.*, 968 F.Supp. 837, 841 (E.D.N.Y. 1997).

[6]A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692 (a)(6). The "FDCPA establishes two alternative predicates for "debt collector" status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d. Cir. 2004). Thus, a company can fall under the scope of the definition if (1) its principle purpose is debt collection or (2) it regularly attempts to collect debts directly or indirectly.

[7]Here, Safeguard's activity does not meet the first prong of the "debt collector" definition because its principle purpose is not debt collection. Plaintiff admits that Safeguard is a "mortgage field services company that inspects, preserves and protects properties on behalf of their client, which are servicers, mortgage companies, investors, credit unions and land banks." (Plf. Response, ¶ **10**.) Plaintiff also concedes that Safeguard does business with Green Tree to provide services such as "inspections, securing, winterization, grass cuts, snow plows, boarding of windows, clearing boarded windows and registering properties." (Plf. Resp., ¶ 43).

[8] [9]Regarding the second prong of the definition—whether a company regularly collects or attempts to collect debts *directly or indirectly* – collecting debts does not mean any action no matter how slight. *Vincent v. The Money Store*, 736 F.3d 88, 101 (2d. Cir. 2013). Rather, the term "debt collector," "must mean something more than *any* role, no matter how tangential, in the collection process." (*Id.*) Thus, an outside law firm was not a debt collector simply because it was "generating and mailing the breach letters." (*Id.* at 101.) Acting as a mere "conduit" for a collection process is not enough. *Id.* at 104. *Accord White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000) (FDCPA is not aimed at "companies that perform ministerial duties for debt collectors, such as stuffing and printing debt collector's letters"); *see also White v. Simonson & **Cohen** P.C.*, 23 F.Supp.2d 273 (E.D.N.Y. 1998)(law firm that sent 35 debt collection letters on behalf of a client, litigating none of them, was not a "debt collector" within the meaning of the FDCPA).

[**10**]In some circumstances, of course, persons who assist in debt collection can be liable as "debt collectors." *See Polanco*, 132 **F.Supp**.**3d** 567, 580 ("hiring a third party debt collection agency or law firm to assist in everyday debt collection activities falls squarely within this definition, particularly where, as here, the third party entities worked pursuant to governing procedures provided by the debt collector.") *See also Cacace v. Lucas*, 775 F.Supp. 502 (D. Conn. 1990) (holding attorney was in the debt collection business within the meaning of the FDCPA even though debt collection did not form a principal part of his practice, where the volume of his collection ***467** activities was substantial); *Tragianese v. Blackmon*, 993 F.Supp. 96 (D. Conn. 1997) (private detective who sent 60 collection letters for one client over a period of a few weeks was a "debt collector" under the FDCPA). An "entity that attempts to collect debts in default and does not 'service' the debt, even though it nominally owns the debt and is collecting it for itself" falls within definition of "debt collector"; *Sykes v. Mel Harris and Associates, **LLC***, 757 F.Supp.2d 413 (**S.D.N.Y**. 2010)(entity in the business of buying defaulted debts meets the definition of "debt collector").

[11]Thus, the question of what constitutes "debt collection" hinges on the nature of the contacts with a debtor, including the objective purpose and intent of an entity's actions as well as the specific communications at issue. In this case, there is no genuine dispute that Safeguard is not a debt collector. Safeguard placed a door hanger on the plaintiff's front door. There was no direct contact of any kind between Safeguard and the plaintiff. Safeguard did not know how much was owed in unpaid principal balance or the amount of the mortgage from Green Tree pertaining to Plaintiff's property. Safeguard did not discuss the debt with the borrower. Safeguard did not collect any money or attempt to collect any money from the plaintiff. Safeguard's compensation was not contingent on whether the debt is ultimately paid. Leaving a doorhanger on Plaintiff's doorknob was in and of itself not invasive enough that Defendant should be regarded a debt collector.

Safeguard's activities simply do not rise to the level of "debt collecting" under the FDCPA, which requires a greater degree of contact with debtors, a more forceful and clear purpose to recoup the money owed on behalf of

the creditor as well as more intimate knowledge of the debtors' financial situation. Plaintiff argues that Safeguard's advertising of its contact inspection service suggests it knows it is conducting an inspection on delinquent borrowers on behalf of creditors, and betrays the real purpose of the inspection. But, assuming the source of the website advertisement is Safeguard (Defendant points out that the source of the advertisement is not verified), the advertisement expresses only very generalized information. The advertisement may suggest Defendant knows Green Tree clients are in default, but does not suggest much beyond that or that Safeguard has any baseline knowledge or role in collection of the debt, as our case law requires.

Plaintiff also raises the issue of whether placing the doorhanger is indirect debt collection. The Court of Appeals has stated "that whether a 'communication is in connection with the collection of a debt' is a question of fact to be determined by reference to an objective standard." *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (citing language in 16 U.S.C.A. § 1692g; *see also* *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009) ). The communication "need not itself be a collection attempt; it need only be 'connected to one.' " *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011) (quoting the extent of § 1692e). It is not necessary for the communication to have an "explicit demand for payment" to trigger the protections of the FDCPA. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).

Safeguard's conduct here does not rise to the level of "indirect" debt collection. *Schlaf v. Safeguard Property*, 899 F.3d 459 (7th Cir. **2018**), a case with remarkably similar facts as here, concluded that simply placing a doorhanger on a debtor's knob did not rise to the level of indirect debt collection. (*Id.* at 466.) The *Schlaf* court ***468** acknowledged that in "a very broad, theoretical sense, it is possible to characterize facilitating the reestablishment of communication between homeowner and Green Tree as a preliminary step in Green Tree's own debt-collection process." (*Id.*) Nonetheless, it "is difficult to say, however, that such limited and very limited action even indirectly implicates the specific statutory concerns set forth in the language." (*Id.*) Of particular important, the leaving of a doorhanger did not include a demand for payment, and made no specific reference to the debt other than to give Green Tree's name and phone number. (*Id.* at 467.) Here, too, the only contact between Plaintiff and Safeguard was that Safeguard left a doorhanger on plaintiff's doorknob. That single act is not as a matter of law enough needed to hold Safeguard liable for a violation of the FDCPA.

The Court concludes that there is no genuine dispute as to the fact that Safeguard is not a debt collector. Because status as a debt collector is required for liability under the FDCPA, all of plaintiff's claims fail as a matter of law. Therefore, the Court grants Safeguard's motion for summary judgment on all counts of the complaint.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is GRANTED and Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is respectfully requested to enter judgment in Defendant Safeguard Properties **LLC** favor. The Clerk of the Court is further respectfully requested to terminate the motion at ECF No. 82 and terminate the action.

SO ORDERED.

**All Citations**

342 F.Supp.3d 460

Footnotes

1 By so-ordered Stipulation of Partial Dismissal dated February 6, **2018**, **Ditech** Financial **LLC** was terminated as Defendant in this action. (*See* ECF No. 79.)

2 Defendant's website said in part: "Through contact inspections, inspectors will make up to three attempts on behalf of mortgage servicers and lenders to provide contact information to delinquent borrowers ... the inspector will leave a door hanger that contains the client's contact information, in an effort to have the mortgagor contact the client." (*See* ECF No. 41, ¶ 12.) However, despite Plaintiff's submission, the Court does not agree that this language sufficiently supports the argument that Defendant is a "debt collector."

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.