UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
ALIYAH SILVER,                          :
                                        :
                        Plaintiff,      :     **<u>MEMORANDUM DECISION AND</u>**
                                        :     **<u>ORDER</u>**
            - against -                 :
                                        :     25-cv-4375 (BMC)
TOP LINE REPORTING INC.,                :
                                        :
                        Defendant.      :
--------------------------------------------------------- X

**COGAN**, District Judge.

Since the inception of this case, Top Line has fervently maintained that it is not a debt collector for purposes of the Fair Debt Collection Practices Act ("FDCPA"). With the record now before it, the Court agrees. Top Line's motion for summary judgment is granted as set forth below.

## BACKGROUND

Top Line provides credit reporting services to multi-family residential landlords. Landlords who contract for Top Line's services pay Top Line a flat monthly fee based on the number of occupied leases being reported each month. That fee is not contingent on whether tenants pay their rent on time or at all. For example, Top Line does not receive bonuses or additional compensation of any kind when tenants pay their outstanding balances.

Top Line has a "Data Furnishers Reporting Agreement" with Trans Union that outlines the terms under which Top Line furnishes rental payment data to Trans Union to report. In that agreement, Top Line certified itself as a "Servicer," which the agreement defines as, among other things, an organization that "collects rental payment data from Property Managers and/or

Property Owners and/or otherwise manages the rental payment transaction on behalf of a Property Manager and/or Property Owner."

On July 26, 2022, JCS Realty LLC ("JCS") contracted with Top Line (through Top Line's client-facing sales company, The Rent Tracker LLC) for Top Line to provide credit reporting services for the properties that JCS managed. JCS's agreement is consistent with Top Line's typical agreements with landlords: JCS pays a flat monthly fee for credit reporting services based on the number of occupied leases being reported each month, and the fee is not contingent on whether rents are paid.

Roughly a year after JCS engaged Top Line, plaintiff began renting an apartment with 101 Bruckner Realty LLC (the "landlord"), one of the properties that JCS manages. In May, 2024, plaintiff was forced to vacate her apartment due to a rodent infestation. She paid her rent for that month, notified the landlord that she was vacating the apartment, and told the landlord to use her security deposit to cover her June 2024 rent. JCS's property manager informed plaintiff that she would be responsible for her rent until someone else moved in, and someone apparently did move in mid-July 2024. Notwithstanding, plaintiff and her landlord/JCS continued to disagree on how much plaintiff owed.

Sometime in August 2024, plaintiff discovered that Top Line was reporting to Trans Union that plaintiff was 60 days late on a $3,820 payment relating to her broken lease. Shortly thereafter, plaintiff emailed Top Line to request that a representative contact her "about a dispute for a fraudulent report on [her] credit." A representative from Top Line's dispute department provided her with the ledger that Top Line received from her landlord and asked plaintiff to provide documentation so that they could further investigate. Plaintiff provided documentation

2

and explained the purported inaccuracies in her credit report, then asked whether Top Line would

be able to remove the negative reporting.  To this, the Top Line representative responded:

> We have reached out to the management company and they provided a copy of
> the ledger which shows a balance due.  Please call the management company to
> discuss your balance.

These emails were the only communications that Top Line and plaintiff ever exchanged.

## DISCUSSION

**I.**     <u>**Standard of Review**</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is

warranted where the "movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must

view all facts in the light most favorable to the nonmoving party.  <u>See</u> <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144,

158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party."  <u>Lovejoy-Wilson v.</u>

<u>NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 212 (2d Cir. 2001) (citing <u>Matsushita Elec. Indus. Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported

assertions" or conjecture.  <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d

Cir. 1995).  Rather, "'[t]he nonmoving party must come forward with specific facts showing that

there is a genuine issue for trial.'"  <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002)

(quoting <u>Matsushita</u>, 475 U.S. at 586-87); <u>see also</u> <u>Scott v. Coughlin</u>, 344 F.3d 282, 287 (2d Cir.

2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for

3

summary judgment when the moving party has set out a documentary case."); Rexnord

Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party

must offer "concrete evidence from which a reasonable juror could return a verdict in [her]

favor."  Anderson, 477 U.S. at 256.

**II.    Analysis**

Astonishingly, Top Line's first argument is that the complaint fails to state an FDCPA

claim; the Court already rejected this very argument on November 24, 2025, when it denied Top

Line's motion to dismiss.  The Court has previously cautioned the parties that "absent 'cogent

and compelling reasons,' the Court is not going to revisit" a prior ruling.  See Silver v. Top Line

Reporting Inc., No. 25-cv-4375, 2026 WL 221308, at *3 (E.D.N.Y. Jan. 28, 2026) (quoting In re

Peters, 642 F.3d 381, 386 (2d Cir. 2011)).  Top Line has pointed to no such reasons.  Rather, it

contends that the Court *never held* that the complaint adequately pleaded the elements of an

FDCPA claim.  Top Line is flat out wrong – all it needed to do was consult the docket to figure

that out.  Besides, Top Line's counsel was at the hearing, so she should have known the right

answer.  All that being said, it is outright sanctionable for Top Line's counsel to make such a

clearly wrong and easily disprovable argument.[1]

Top Line next argues, as it has argued since coming onto the scene, that it is not a "debt

collector" within the meaning the FDCPA.  The reason that the Court denied the motion to

dismiss the FDCPA claim is because plaintiff pleaded enough to merit some discovery on the

matter.  Notwithstanding Top Line's persistence, the Court couldn't come to any conclusions

---

[1] Plaintiff incorrectly points to the Court's January 28, 2026 ruling as foreclosing Top Line's argument for failure to state an FDCPA claim.  The Court's January 28 ruling disposed of only plaintiff's FCRA claim and said nothing of the FDCPA claim.

4

about Top Line's status as a debt collector until the conclusion of discovery.  But that time has now arrived.

The FDCPA defines "debt collector" as, among other things, any person or entity (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Plaintiff argues that Top Line meets both definitions.  For the "principal purpose" definition, plaintiff argues that Top Line uses derogatory credit reporting to market itself to landlords as a way for landlords to collect on past-due rents.  For the "regularly collects" definition, plaintiff argues that credit reporting is an indirect collection activity in which Top Line regularly engages, as it reports 60,000 to 75,000 tradelines per month for 130 to 140 landlords.

To determine whether Top Line is a debt collector, let's start with what Top Line does and does not do and how it gets paid.  Top Line furnishes rental data from multi-family residential landlords to credit reporting agencies ("CRAs").  It does not contact tenants and ask them to pay their outstanding rents and apparently does not contact tenants at all unless they contact it first.  Further, it does not get a cut of rents that are paid, nor does it get a bonus when rents are paid.  Rather, it gets paid a flat monthly fee based on the number of leases for which it furnishes information.

Next, let's evaluate how Top Line gets business.  A *tenant* stands to benefit from Top Line's services when she pays her rents on time: Top Line will furnish the positive payment data to the CRAs, and the tenant's credit score with those CRAs may improve.  Presumably that's

5

Case 1:25-cv-04375-BMC    Document 66    Filed 06/23/26    Page 6 of 7 PageID #: 864

how the landlords frame Top Line's services to their tenants so as to not scare them off.  But the tenants aren't the ones paying for Top Line's services – the *landlords* are.  And why would the landlords pay for Top Line's services?  To ensure that tenants pay their rents on time, and that there are repercussions for those who don't.

A reasonable juror could find that Top Line is able to get business with landlords only because tenants sometimes don't pay their rents.  After all, if tenants universally paid their rents on time, landlords wouldn't need the specter of negative credit reporting to keep them in line.  A reasonable juror could also find that by furnishing negative payment history to the CRAs, Top Line indirectly causes tenants to pay their outstanding rents (or to not miss payments in the first place).

However, there is no evidence from which a reasonable juror could find that Top Line's "principal purpose" is to collect debts, or that Top Line "regularly collects" debts.  Top Line has no stake in any particular landlord's rents getting paid on time or at all.  Even when Top Line furnishes negative payment history to CRAs, it does not demand payment from the tenants or even notify them of their outstanding payments.  The only reason that plaintiff spoke to a Top Line representative was because she was lodging a dispute, and Top Line, unhelpfully but neutrally, directed her to take it up with her landlord.

Top Line's furnishing may scare tenants into paying on time or indirectly punish tenants for paying late, but those facts alone do not make Top Line a debt collector.  Plainly put, Top Line isn't collecting debts.  If the Court were to read the FDCPA as expansively as plaintiff wants it to, then basically all furnishers would become debt collectors.

6

## CONCLUSION

Top Line's motion for summary judgment is granted.  This case is dismissed.


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.


Dated:  Brooklyn, New York
       June 23, 2026